# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| SVETLANA KOKAREVA, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  v.<br><br>BRISTOW GROUP INC., JONATHAN E. BALIFF, and L. DON MILLER,<br><br>        Defendants. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Svetlana Kokareva ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Bristow Group Inc. ("Bristow" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Bristow; and (c) review of other publicly available information concerning Bristow.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Bristow securities between February 8, 2018 and February 12, 2019, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Bristow is an industrial aviation services provider with major transportation operations in the North Sea, Nigeria and the Gulf of Mexico, and in most other major offshore energy producing regions of the world.

3. On February 11, 2019, after the market closed, the Company filed a Form 8-K with the SEC disclosing that it "did not have adequate monitoring control processes in place related to non-financial covenants within certain of its secured financing and lease agreements."

4. On this news, the Company's share price fell $1.22, or nearly 40%, to close at $1.84 per share on February 12, 2019, on unusually heavy trading volume.

5. On February 12, 2019, the Company filed a Form 8-K with the SEC to announce: (i) that it had terminated its agreement to purchase Columbia Helicopters, Inc.; and (ii) that Jonathan E. Baliff would retire as Chief Executive Officer and would resign from the Board of Directors, effective February 28, 2019.

6. On this news, the Company's share price fell $0.64, or nearly 35%, to close at $1.20 per share on February 13, 2019, on unusually heavy trading volume.

7.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company lacked adequate monitoring processes related to non-financial covenants within its secured financing and lease agreements; (2) that, as a result, the Company could not reasonably assure compliance with certain non-financial covenants; (3) that, as a result, the Company was reasonably likely to breach certain agreements; (4) that, as a result, the Company had understated its short-term debt; (5) the required corrections would materially impact financial statements; (6) that there was a material weakness in the Company's internal controls over financial reporting; and (7) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's principal executive offices are located in this district.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the

United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13. Plaintiff Svetlana Kokareva, as set forth in the accompanying certification, incorporated by reference herein, purchased Bristow securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14. Defendant Bristow is incorporated under the laws of Delaware with its principal executive offices located in Houston, Texas. Bristow's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "BRS."

15. Defendant Jonathan E. Baliff ("Baliff") was the Chief Executive Officer ("CEO") and a Director of the Company at all relevant times.

16. Defendant L. Don Miller ("Miller") was the Chief Financial Officer of the Company at all relevant times.

17. Defendants Baliff and Miller, (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18. Bristow is an industrial aviation services provider with major transportation

operations in the North Sea, Nigeria and the Gulf of Mexico, and in most other major offshore energy producing regions of the world.

## Materially False and Misleading Statements Issued During the Class Period

19. The Class Period begins on February 8, 2018. On that day, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended December 31, 2017 (the "3Q18 10-Q"). Therein, the Company reported $360.7 million revenue, $9.937 million net loss, $1.102 billion long-term debt, and $93.137 million short-term borrowings.

20. In the 3Q18 10-Q, the Company reported that management had concluded its internal controls over financial reporting was effective as of December 31, 2017.

21. On May 23, 2018, the Company filed its annual report on Form 10-K with the SEC for the period ended March 31, 2018 (the "2018 10-K"). Therein, the Company reported $1.444 billion revenue, $198.08 million net loss, $1.429 billion long-term debt, and $56.7 million short-term borrowings.

22. The 2018 10-K disclosed certain risks relating to the Company's level of indebtedness that affected its operations. The Company stated, in relevant part:

> ***Failure to comply with covenants contained in certain of our lease agreements could limit our ability to maintain our leased aircraft fleet and could adversely affect our business.***
>
> We have a significant amount of fixed obligations related to operating leases, including aircraft leases. The terms of our aircraft lease agreements contain covenants that impose certain limitations on us. Such lease agreements limit, among other things, our ability to utilize aircraft in certain jurisdictions and/or to sublease aircraft, and may contain restrictions upon a change of control. A breach of lease covenants could result in an obligation to repay amounts outstanding under the lease, including rent. A breach of lease covenants with respect to the return of aircraft to our lessors could also result in an obligation to pay holdover rent beyond the scheduled lease expiration date for such aircraft and/or increased maintenance and repair costs. If any such event occurs, we may not be able to pay all amounts due under the leases or to refinance such leases on terms satisfactory to us or at all, which could have a material adverse effect on our business, financial condition and results of operations.

23. Moreover, the 2018 10-K stated that management had concluded that the Company's internal control over financial reporting was effective as of March 31, 2018.

24. On August 2, 2018, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2018, in which it reported $367.89 million revenue, $32.04 million net loss, $1.410 billion long-term debt, and $53.7 million short-term borrowings.

25. On November 9, 2018, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2018, in which it reported $350.65 million revenue, $143.67 net loss, $1.399 billion long-term debt, and $50.79 million short-term borrowings.

26. The same day, the Company announced that it had entered an agreement to combine with privately-held Columbia Helicopters, Inc. for $560 million.

27. The above statements identified in ¶¶19-26 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company lacked adequate monitoring processes related to non-financial covenants within its secured financing and lease agreements; (2) that, as a result, the Company could not reasonably assure compliance with certain non-financial covenants; (3) that, as a result, the Company was reasonably likely to breach certain agreements; (4) that, as a result, the Company had understated its short-term debt; (5) the required corrections would materially impact financial statements; (6) that there was a material weakness in the Company's internal controls over financial reporting; and (7) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

28. On February 11, 2019, after the market closed, the Company disclosed that management had identified a material weakness in its internal controls over financial reporting. In a Form 8-K filed with the SEC, the Company stated, in relevant part:

> As part of management's assessment of the Company's internal controls over financial reporting as of December 31, 2018, a control deficiency was identified by the Company related to the Company's processes for monitoring compliance with certain non-financial covenants in certain of the Company's secured financing and lease agreements. . . .
>
> Management has concluded that the Company did not have adequate monitoring control processes in place related to non-financial covenants within certain of its

secured financing and lease agreements, and this control deficiency identified represents a "material weakness" in internal controls over financial reporting. Accordingly, the Company's internal control over financial reporting was ineffective at March 31, 2018 and the reporting periods thereafter. As such, both management's assessment and the report of KPMG on internal control over financial reporting as of March 31, 2018 should no longer be relied upon. In addition, because of the material weakness described above, in February 2019, the Company's management has determined that the Company's disclosure controls and procedures were not effective at a reasonable assurance level as of March 31, 2018 and the reporting periods thereafter.

29. Moreover, the Company stated that it was evaluating whether the material weakness resulted in a misstatement in its financial statements. Specifically, the Company was evaluating "whether certain debt balances should be reclassified from long-term to short-term in those financial statements, whether related waivers can be obtained from lenders, if necessary, and the resulting impact on the assessment of the Company's ability to continue as a going concern."

30. On this news, the Company's share price fell $1.22, or nearly 40%, to close at $1.84 per share on February 12, 2019, on unusually heavy trading volume.

31. On February 12, 2019, the Company filed a Form 8-K with the SEC to announce that it had terminated its agreement to purchase Columbia Helicopters Inc. and that it had paid $20 million to Columbia in exchange for a release of claims associated with the purchase agreement and/or its termination.

32. In the same filing, the Company also announced that its Defendant Baliff had retired as CEO and resigned from the Company's Board of Directors, effective February 28, 2019.

33. On this news, the Company's share price fell $0.64, or nearly 35%, to close at $1.20 per share on February 13, 2019, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Bristow securities between February 8, 2018 and February 12, 2019, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are

Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

35. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Bristow's common shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Bristow common stock were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by Bristow or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

38. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Bristow; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

39. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

40. The market for Bristow's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Bristow's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Bristow's securities relying upon the integrity of the market price of the Company's securities and market information relating to Bristow, and have been damaged thereby.

41. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Bristow's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Bristow's business, operations, and prospects as alleged herein.

42. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Bristow's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period

resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

43. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

44. During the Class Period, Plaintiff and the Class purchased Bristow's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

45. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Bristow, their control over, and/or receipt and/or modification of Bristow's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Bristow, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

46. The market for Bristow's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Bristow's securities traded at artificially inflated prices during the Class Period. On

May 17, 2018, the Company's share price closed at a Class Period high of $18.72 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Bristow's securities and market information relating to Bristow, and have been damaged thereby.

47. During the Class Period, the artificial inflation of Bristow's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Bristow's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Bristow and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

48. At all relevant times, the market for Bristow's securities was an efficient market for the following reasons, among others:

(a) Bristow shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Bristow filed periodic public reports with the SEC and/or the NYSE;

(c) Bristow regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Bristow was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly

available and entered the public marketplace.

49. As a result of the foregoing, the market for Bristow's securities promptly digested current information regarding Bristow from all publicly available sources and reflected such information in Bristow's share price. Under these circumstances, all purchasers of Bristow's securities during the Class Period suffered similar injury through their purchase of Bristow's securities at artificially inflated prices and a presumption of reliance applies.

50. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

51. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or

misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Bristow who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

52. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

53. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Bristow's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

54. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Bristow's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

55. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Bristow's financial well-being and prospects, as specified herein.

56. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Bristow's value and performance and continued substantial growth, which included the making of, or the

participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Bristow and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

57. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

58. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Bristow's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover

whether those statements were false or misleading.

59. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Bristow's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Bristow's securities during the Class Period at artificially high prices and were damaged thereby.

60. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Bristow was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Bristow securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

61. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

63. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

64. Individual Defendants acted as controlling persons of Bristow within the meaning

of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

66. As set forth above, Bristow and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 14, 2019

By: */s/ Joe Kendall*

Joe Kendall
Texas Bar No. 11260700
Jamie J. Gilmore
Texas Bar No. 24045262
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
Telephone: 214-744-3000
Facsimile: 214-744-3015
Email: jkendall@kendalllawgroup.com
Email: jgilmore@kendalllawgroup.com

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff Svetlana Kokareva*