# Exhibit 10

# FINANCIAL ACCOUNTING SERIES



ACCOUNTING STANDARDS UPDATE

No. 2014-15
August 2014

## Presentation of Financial Statements— Going Concern (Subtopic 205-40)

### Disclosure of Uncertainties about an Entity's Ability to Continue as a Going Concern

An Amendment of the *FASB Accounting Standards Codification*®

**Financial Accounting Standards Board**

The *FASB Accounting Standards Codification®* is the source of authoritative generally accepted accounting principles (GAAP) recognized by the FASB to be applied by nongovernmental entities. An Accounting Standards Update is not authoritative; rather, it is a document that communicates how the Accounting Standards Codification is being amended. It also provides other information to help a user of GAAP understand how and why GAAP is changing and when the changes will be effective.

For additional copies of this Accounting Standards Update and information on applicable prices and discount rates contact:

Order Department
Financial Accounting Standards Board
401 Merritt 7
PO Box 5116
Norwalk, CT 06856-5116

*Please ask for our Product Code No. ASU2014-15.*

FINANCIAL ACCOUNTING SERIES (ISSN 0885-9051) is published quarterly by the Financial Accounting Foundation. Periodicals postage paid at Norwalk, CT and at additional mailing offices. The full subscription rate is $242 per year. POSTMASTER: Send address changes to Financial Accounting Standards Board, 401 Merritt 7, PO Box 5116, Norwalk, CT 06856-5116. | **No. 404**

Copyright © 2014 by Financial Accounting Foundation. All rights reserved. Content copyrighted by Financial Accounting Foundation may not be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of the Financial Accounting Foundation. Financial Accounting Foundation claims no copyright in any portion hereof that constitutes a work of the United States Government.

# FASB Accounting Standards Update

No. 2014-15
August 2014

## Presentation of Financial Statements— Going Concern (Subtopic 205-40)

## Disclosure of Uncertainties about an Entity's Ability to Continue as a Going Concern

An Amendment of the *FASB Accounting Standards Codification*®

**Financial Accounting Standards Board**

Accounting Standards Update 2014-15

Presentation of Financial Statements—Going Concern (Subtopic 205-40)

Disclosure of Uncertainties about an Entity's Ability to Continue as a Going Concern

August 2014

## CONTENTS

|  | Page Numbers |
|---|---|
| Summary | 1–4 |
| Amendments to the *FASB Accounting Standards Codification®* | 5–18 |
| Background Information and Basis for Conclusions | 19–32 |
| Amendments to the XBRL Taxonomy | 33 |

# Summary

## Why Is the FASB Issuing This Accounting Standards Update (Update)?

Under generally accepted accounting principles (GAAP), continuation of a reporting entity as a going concern is presumed as the basis for preparing financial statements unless and until the entity's liquidation becomes imminent. Preparation of financial statements under this presumption is commonly referred to as the going concern basis of accounting. If and when an entity's liquidation becomes imminent, financial statements should be prepared under the liquidation basis of accounting in accordance with Subtopic 205-30, Presentation of Financial Statements—Liquidation Basis of Accounting.

Even if an entity's liquidation is not imminent, there may be conditions or events that raise substantial doubt about the entity's ability to continue as a going concern. In those situations, financial statements should continue to be prepared under the going concern basis of accounting, but the amendments in this Update should be followed to determine whether to disclose information about the relevant conditions and events.

Currently, there is no guidance in GAAP about management's responsibility to evaluate whether there is substantial doubt about an entity's ability to continue as a going concern or to provide related footnote disclosures. U.S. auditing standards and federal securities law require that an auditor evaluate whether there is substantial doubt about an entity's ability to continue as a going concern for a reasonable period of time not to exceed one year beyond the date of the financial statements being audited. U.S. auditing standards also require an auditor to consider the possible financial statement effects, including footnote disclosures on uncertainties about an entity's ability to continue as a going concern for a reasonable period of time (the American Institute of Certified Public Accountant's Codification of Statements on Auditing Standards Section AU-C 570, *The Auditor's Consideration of an Entity's Ability to Continue as a Going Concern*, or the Public Company Accounting Oversight Board's AU Section 341, *The Auditor's Consideration of an Entity's Ability to Continue as a Going Concern*). The U.S. Securities and Exchange Commission (SEC) also has guidance on disclosures that it expects from an entity when an auditor's report includes an explanatory paragraph that reflects substantial doubt about an entity's ability to continue as a going concern for a reasonable period of time (The Codification of Financial Reporting Policies, Section 607.02).

The Board received input indicating that because of the lack of guidance in GAAP and the differing views about when there is substantial doubt about an entity's ability to continue as a going concern, there is diversity in whether, when, and how an entity discloses the relevant conditions and events in its footnotes.

1

The amendments in this Update provide guidance in GAAP about management's responsibility to evaluate whether there is substantial doubt about an entity's ability to continue as a going concern and to provide related footnote disclosures. In doing so, the amendments should reduce diversity in the timing and content of footnote disclosures.

## Who Is Affected by the Amendments in This Update?

The amendments in this Update apply to all entities.

## What Are the Main Provisions?

In connection with preparing financial statements for each annual and interim reporting period, an entity's management should evaluate whether there are conditions or events, considered in the aggregate, that raise substantial doubt about the entity's ability to continue as a going concern within one year after the date that the *financial statements are issued* (or within one year after the date that the *financial statements are available to be issued* when applicable).

Management's evaluation should be based on relevant conditions and events that are known and reasonably knowable at the date that the *financial statements are issued* (or at the date that the *financial statements are available to be issued* when applicable).

Substantial doubt about an entity's ability to continue as a going concern exists when relevant conditions and events, considered in the aggregate, indicate that it is probable that the entity will be unable to meet its obligations as they become due within one year after the date that the financial statements are issued (or available to be issued). The term *probable* is used consistently with its use in Topic 450, Contingencies.

When management identifies conditions or events that raise substantial doubt about an entity's ability to continue as a going concern, management should consider whether its plans that are intended to mitigate those relevant conditions or events will alleviate the substantial doubt. The mitigating effect of management's plans should be considered only to the extent that (1) it is probable that the plans will be effectively implemented and, if so, (2) it is probable that the plans will mitigate the conditions or events that raise substantial doubt about the entity's ability to continue as a going concern.

If conditions or events raise substantial doubt about an entity's ability to continue as a going concern, but the substantial doubt is alleviated as a result of consideration of management's plans, the entity should disclose information that enables users of the financial statements to understand all of the following (or refer to similar information disclosed elsewhere in the footnotes):

2

    a. Principal conditions or events that raised substantial doubt about the entity's ability to continue as a going concern (before consideration of management's plans)

    b. Management's evaluation of the significance of those conditions or events in relation to the entity's ability to meet its obligations

    c. Management's plans that alleviated substantial doubt about the entity's ability to continue as a going concern.

If conditions or events raise substantial doubt about an entity's ability to continue as a going concern, and substantial doubt is not alleviated after consideration of management's plans, an entity should include a statement in the footnotes indicating that there is *substantial doubt about the entity's ability to continue as a going concern* within one year after the date that the financial statements are issued (or available to be issued). Additionally, the entity should disclose information that enables users of the financial statements to understand all of the following:

    a. Principal conditions or events that raise substantial doubt about the entity's ability to continue as a going concern

    b. Management's evaluation of the significance of those conditions or events in relation to the entity's ability to meet its obligations

    c. Management's plans that are intended to mitigate the conditions or events that raise substantial doubt about the entity's ability to continue as a going concern.

## How Do the Main Provisions Differ from Current Generally Accepted Accounting Principles (GAAP) and Why Are They an Improvement?

Currently, there is no guidance in GAAP about management's responsibility to evaluate whether there is substantial doubt about an entity's ability to continue as a going concern or to provide related footnote disclosures. The amendments in this Update provide that guidance. In doing so, the amendments should reduce diversity in the timing and content of footnote disclosures.

The amendments require management to assess an entity's ability to continue as a going concern by incorporating and expanding upon certain principles that are currently in U.S. auditing standards. Specifically, the amendments (1) provide a definition of the term *substantial doubt*, (2) require an evaluation every reporting period including interim periods, (3) provide principles for considering the mitigating effect of management's plans, (4) require certain disclosures when substantial doubt is alleviated as a result of consideration of management's plans, (5) require an express statement and other disclosures when substantial doubt is not alleviated, and (6) require an assessment for a period of one year after the date that the financial statements are issued (or available to be issued).

3

## When Will the Amendments Be Effective?

The amendments in this Update are effective for the annual period ending after December 15, 2016, and for annual periods and interim periods thereafter. Early application is permitted.

## How Do the Provisions Compare with International Financial Reporting Standards (IFRS)?

IFRS addresses the preparation of financial statements as a going concern and disclosures when there is a material uncertainty about an entity's ability to continue as a going concern. IFRS and the amendments to GAAP both emphasize that management is responsible for evaluating and disclosing uncertainties about an entity's ability to continue as a going concern with some differences.

Under IFRS, financial statements are prepared on a going concern basis "unless management either intends to liquidate the entity or to cease trading [operations], or has no realistic alternative but to do so" (paragraph 25 of IAS 1, *Presentation of Financial Statements*). When an entity does not prepare its financial statements on a going concern basis, IFRS requires that the entity disclose the basis of preparation used. IFRS does not provide guidance on the liquidation basis of accounting. Under GAAP, an entity applies the going concern basis of accounting unless and until its liquidation becomes imminent, at which time the entity applies the liquidation basis of accounting in accordance with Subtopic 205-30.

Under IFRS, disclosures are required when management is aware of material uncertainties related to events and conditions that may cast significant doubt about an entity's ability to continue as a going concern. Under the amendments to GAAP, disclosures are required when there is substantial doubt about an entity's ability to continue as a going concern or when substantial doubt is alleviated as a result of consideration of management's plans.

Under IFRS, the assessment period is at least one year from the financial statement date (balance sheet date) with no upper time limit. Under the amendments to GAAP, the assessment period is within one year after the date that the financial statements are issued (or available to be issued).

4

# Amendments to the
# *FASB Accounting Standards Codification*®

## Introduction

1.    The Accounting Standards Codification is amended as described in paragraphs 2–4. Terms from the Master Glossary are in **bold** type. Added text is underlined, and deleted text is struck-out. **[For ease of readability, the newly added Subtopic is not underlined.]**

## Amendments to Master Glossary

2.    Add the following new Master Glossary term, with a link to transition paragraph 205-40-65-1, as follows:

### Substantial Doubt about an Entity's Ability to Continue as a Going Concern

Substantial doubt about an entity's ability to continue as a going concern exists when conditions and events, considered in the aggregate, indicate that it is {add glossary link to 2nd definition}probable{add glossary link to 2nd definition} that the entity will be unable to meet its obligations as they become due within one year after the date that the financial statements are issued (or within one year after the date that the financial statements are available to be issued when applicable). The term *probable* is used consistently with its use in Topic 450 on contingencies.

## Addition of Subtopic 205-40

3.    Add Subtopic 205-40, with a link to transition paragraph 205-40-65-1, as follows:

**Presentation of Financial Statements—Going Concern**

**Overview and Background**

**General**

5

**205-40-05-1** Continuation of an entity as a going concern is presumed as the basis for financial reporting unless and until the entity's **liquidation** becomes imminent. Preparation of financial statements under this presumption is commonly referred to as the going concern basis of accounting. If and when an entity's liquidation becomes imminent, financial statements are prepared under the liquidation basis of accounting in accordance with Subtopic 205-30 on the liquidation basis of accounting.

**205-40-05-2** Even if an entity's liquidation is not imminent, there may be conditions and events, considered in the aggregate, that raise **substantial doubt about the entity's ability to continue as a going concern.** In those situations, financial statements continue to be prepared under the going concern basis of accounting, but the guidance in this Subtopic should be followed to determine whether to disclose information about the relevant conditions or events.

**205-40-05-3** This Subtopic provides guidance for evaluating whether there is substantial doubt about an entity's ability to continue as a going concern and about related footnote disclosures.

## Scope and Scope Exceptions

### General

**> Entities**

**205-40-15-1** The guidance in this Subtopic applies to all entities.

## Glossary

**Financial Statements Are Available to Be Issued**

Financial statements are considered available to be issued when they are complete in a form and format that complies with GAAP and all approvals necessary for issuance have been obtained, for example, from management, the board of directors, and/or significant shareholders. The process involved in creating and distributing the financial statements will vary depending on an entity's management and corporate governance structure as well as statutory and regulatory requirements.

**Financial Statements Are Issued**

Financial statements are considered issued when they are widely distributed to shareholders and other financial statement users for general use and reliance in a form and format that complies with GAAP. (U.S. Securities and Exchange

6

Commission [SEC] registrants also are required to consider the guidance in paragraph 855-10-S99-2.)

**Liquidation**

**Note:** The following definition is Pending Content; see Transition Guidance in paragraph 205-30-65-1.

The process by which an entity converts its assets to cash or other assets and settles its obligations with creditors in anticipation of the entity ceasing all activities. Upon cessation of the entity's activities, any remaining cash or other assets are distributed to the entity's investors or other claimants (albeit sometimes indirectly). Liquidation may be compulsory or voluntary. Dissolution of an entity as a result of that entity being acquired by another entity or merged into another entity in its entirety and with the expectation of continuing its business does not qualify as liquidation.

**Probable (second definition)**

The future event or events are likely to occur.

**Substantial Doubt about an Entity's Ability to Continue as a Going Concern**

Substantial doubt about an entity's ability to continue as a going concern exists when conditions and events, considered in the aggregate, indicate that it is **probable** that the entity will be unable to meet its obligations as they become due within one year after the date that the **financial statements are issued** (or within one year after the date that the **financial statements are available to be issued** when applicable). The term *probable* is used consistently with its use in Topic 450 on contingencies.

## Disclosure

### General

### > Evaluating Conditions and Events That May Raise Substantial Doubt

**205-40-50-1** In connection with preparing financial statements for each annual and interim reporting period, an entity's management shall evaluate whether there are conditions and events, considered in the aggregate, that raise **substantial doubt about an entity's ability to continue as a going concern** within one year after the date that the **financial statements are issued** (or within

7

one year after the date that the **financial statements are available to be issued** when applicable).

**205-40-50-2** Ordinarily, conditions or events that raise substantial doubt about an entity's ability to continue as a going concern relate to the entity's ability to meet its obligations as they become due. Accordingly, management's evaluation of an entity's ability to continue as a going concern ordinarily is based on conditions and events that are relevant to an entity's ability to meet its obligations as they become due within one year after the date that the financial statements are issued.

**205-40-50-3** Management's evaluation shall be based on relevant conditions and events that are known and reasonably knowable at the date that the financial statements are issued.

**205-40-50-4** Management shall evaluate whether relevant conditions and events, considered in the aggregate, indicate that it is probable that an entity will be unable to meet its obligations as they become due within one year after the date that the financial statements are issued. The evaluation initially shall not take into consideration the potential mitigating effect of management's plans that have not been fully implemented as of the date that the financial statements are issued (for example, plans to raise capital, borrow money, restructure debt, or dispose of an asset that have been approved but that have not been fully implemented as of the date that the financial statements are issued).

**205-40-50-5** When evaluating an entity's ability to meet its obligations, management shall consider quantitative and qualitative information about the following conditions and events, among other relevant conditions and events known and reasonably knowable at the date that the financial statements are issued:

a. The entity's current financial condition, including its liquidity sources at the date that the financial statements are issued (for example, available liquid funds and available access to credit)

b. The entity's conditional and unconditional obligations due or anticipated within one year after the date that the financial statements are issued (regardless of whether those obligations are recognized in the entity's financial statements)

c. The funds necessary to maintain the entity's operations considering its current financial condition, obligations, and other expected cash flows within one year after the date that the financial statements are issued

d. The other conditions and events, when considered in conjunction with (a), (b), and (c) above, that may adversely affect the entity's ability to meet its obligations within one year after the date that the financial statements are issued. See paragraph 205-40-55-2 for examples of those conditions and events.

8

**> Consideration of Management's Plans When Substantial Doubt Is Raised**

**205-40-50-6** When relevant conditions or events, considered in the aggregate, initially indicate that it is {add glossary link to 2nd definition}probable{add glossary link to 2nd definition} that an entity will be unable to meet its obligations as they become due within one year after the date that the **financial statements are issued** (and therefore they raise **substantial doubt about the entity's ability to continue as a going concern**), management shall evaluate whether its plans that are intended to mitigate those conditions and events, when implemented, will alleviate substantial doubt about the entity's ability to continue as a going concern.

**205-40-50-7** The mitigating effect of management's plans shall be considered in evaluating whether the substantial doubt is alleviated only to the extent that information available as of the date that the financial statements are issued indicates both of the following:

    a.  It is probable that management's plans will be effectively implemented within one year after the date that the financial statements are issued.
    b.  It is probable that management's plans, when implemented, will mitigate the relevant conditions or events that raise substantial doubt about the entity's ability to continue as a going concern within one year after the date that the financial statements are issued.

**205-40-50-8** The evaluation of whether it is probable that management's plans will be effectively implemented within one year after the date that the financial statements are issued shall be based on the feasibility of implementation of management's plans in light of an entity's specific facts and circumstances. Generally, to be considered probable of being effectively implemented, management (or others with the appropriate authority) must have approved the plan before the date that the financial statements are issued. Paragraph 205-40-55-3 provides examples of plans that management may implement and information that management should consider for each plan in evaluating the feasibility of the plans.

**205-40-50-9** The mitigating effect of management's plans that are not probable of being effectively implemented within one year after the date that the financial statements are issued shall not be considered in evaluating whether substantial doubt about an entity's ability to continue as a going concern is alleviated.

**205-40-50-10** As required in paragraph 205-40-50-7, management shall further assess its plans that are probable of being effectively implemented to determine whether it is probable that those plans will mitigate the conditions or events that raise substantial doubt about an entity's ability to continue as a going concern. In this assessment, management shall consider the expected magnitude and timing of the mitigating effect of its plans in relation to the magnitude and timing of the relevant conditions or events that those plans intend to mitigate.

9

**205-40-50-11** A plan to meet an entity's obligations as they become due through **liquidation** (as defined in Subtopic 205-30 on the liquidation basis of accounting) shall not be considered as part of management's plans in evaluating whether substantial doubt is alleviated even if liquidation is probable of occurring.

**> Disclosures When Substantial Doubt Is Raised but Is Alleviated by Management's Plans (Substantial Doubt Does Not Exist)**

**205-40-50-12** If, after considering management's plans, **substantial doubt about an entity's ability to continue as a going concern** is alleviated as a result of consideration of management's plans, an entity shall disclose in the footnotes information that enables users of the financial statements to understand all of the following (or refer to similar information disclosed elsewhere in the footnotes):

a. Principal conditions or events that raised substantial doubt about the entity's ability to continue as a going concern (before consideration of management's plans)
b. Management's evaluation of the significance of those conditions or events in relation to the entity's ability to meet its obligations
c. Management's plans that alleviated substantial doubt about the entity's ability to continue as a going concern.

**> Disclosures When Substantial Doubt Is Raised and Is Not Alleviated (Substantial Doubt Exists)**

**205-40-50-13** If, after considering management's plans, **substantial doubt about an entity's ability to continue as a going concern** is not alleviated, the entity shall include a statement in the footnotes indicating that there is substantial doubt about the entity's ability to continue as a going concern within one year after the date that the **financial statements are issued**. Additionally, the entity shall disclose information that enables users of the financial statements to understand all of the following:

a. Principal conditions or events that raise substantial doubt about the entity's ability to continue as a going concern
b. Management's evaluation of the significance of those conditions or events in relation to the entity's ability to meet its obligations
c. Management's plans that are intended to mitigate the conditions or events that raise substantial doubt about the entity's ability to continue as a going concern.

**205-40-50-14** If conditions or events continue to raise substantial doubt about an entity's ability to continue as a going concern in subsequent annual or interim reporting periods, the entity shall continue to provide the required disclosures in paragraphs 205-40-50-12 through 50-13 in those subsequent periods. Disclosures should become more extensive as additional information becomes

10

available about the relevant conditions or events and about management's plans. An entity shall provide appropriate context and continuity in explaining how conditions or events have changed between reporting periods. For the period in which substantial doubt no longer exists (before or after consideration of management's plans), an entity shall disclose how the relevant conditions or events that raised substantial doubt were resolved.

## Implementation Guidance and Illustrations

### General

> Implementation Guidance

> > Decision Flowchart

**205-40-55-1** The following flowchart depicts the decision process to follow for evaluating whether there is substantial doubt about an entity's ability to continue as a going concern and determining related disclosure requirements.

11



12

### > > Examples of Adverse Conditions and Events

**205-40-55-2** The following are examples of adverse conditions and events that may raise **substantial doubt about an entity's ability to continue as a going concern**. The examples are not all-inclusive. The existence of one or more of these conditions or events does not determine that there is substantial doubt about an entity's ability to continue as a going concern. Similarly, the absence of those conditions or events does not determine that there is no substantial doubt about an entity's ability to continue as a going concern. Determining whether there is substantial doubt depends on an assessment of relevant conditions and events, in the aggregate, that are known and reasonably knowable at the date that the **financial statements are issued** (or at the date the **financial statements are available to be issued** when applicable). An entity should weigh the likelihood and magnitude of the potential effects of the relevant conditions and events, and consider their anticipated timing.

    a.    Negative financial trends, for example, recurring operating losses, working capital deficiencies, negative cash flows from operating activities, and other adverse key financial ratios

    b.    Other indications of possible financial difficulties, for example, default on loans or similar agreements, arrearages in dividends, denial of usual trade credit from suppliers, a need to restructure debt to avoid default, noncompliance with statutory capital requirements, and a need to seek new sources or methods of financing or to dispose of substantial assets

    c.    Internal matters, for example, work stoppages or other labor difficulties, substantial dependence on the success of a particular project, uneconomic long-term commitments, and a need to significantly revise operations

    d.    External matters, for example, legal proceedings, legislation, or similar matters that might jeopardize the entity's ability to operate; loss of a key franchise, license, or patent; loss of a principal customer or supplier; and an uninsured or underinsured catastrophe such as a hurricane, tornado, earthquake, or flood.

**205-40-55-3** The following are examples of plans that management may implement to mitigate conditions or events that raise substantial doubt about an entity's ability to continue as a going concern. The examples are not all-inclusive. Below each example is a list of the types of information that management should consider at the date that the financial statements are issued in evaluating the feasibility of the plans to determine whether it is {add glossary link to 2nd definition}probable{add glossary link to 2nd definition} that the plan will be effectively implemented within one year after the date that the financial statements are issued.

    a.    Plans to dispose of an asset or business:

        1.    Restrictions on disposal of an asset or business, such as covenants

13

that limit those transactions in loan or similar agreements, or encumbrances against the asset or business

2. Marketability of the asset or business that management plans to sell

3. Possible direct or indirect effects of disposal of the asset or business

b. Plans to borrow money or restructure debt:

1. Availability and terms of new debt financing, or availability and terms of existing debt refinancing, such as term debt, lines of credit, or arrangements for factoring receivables or sale-leaseback of assets

2. Existing or committed arrangements to restructure or subordinate debt or to guarantee loans to the entity

3. Possible effects on management's borrowing plans of existing restrictions on additional borrowing or the sufficiency of available collateral

c. Plans to reduce or delay expenditures:

1. Feasibility of plans to reduce overhead or administrative expenditures, to postpone maintenance or research and development projects, or to lease rather than purchase assets

2. Possible direct or indirect effects on the entity and its cash flows of reduced or delayed expenditures

d. Plans to increase ownership equity:

1. Feasibility of plans to increase ownership equity, including existing or committed arrangements to raise additional capital

2. Existing or committed arrangements to reduce current dividend requirements or to accelerate cash infusions from affiliates or other investors.

## Transition and Open Effective Date Information

**> Transition Related to Accounting Standards Update No. 2014-15,** *Presentation of Financial Statements—Going Concern (Subtopic 205-40): Disclosure of Uncertainties about an Entity's Ability to Continue as a Going Concern*

### General

**205-40-65-1** The following represents the transition and effective date information related to Accounting Standards Update No. 2014-15, *Presentation of Financial Statements—Going Concern (Subtopic 205-40): Disclosure of Uncertainties about an Entity's Ability to Continue as a Going Concern.*

a. The pending content that links to this paragraph shall be effective for

14

annual periods ending after December 15, 2016, and interim periods within annual periods beginning after December 15, 2016.
b. Early application is permitted for annual or interim reporting periods for which the financial statements have not previously been issued.

4. Add paragraph 205-40-00-1 as follows:

**205-40-00-1** The following table identifies the changes made to this Subtopic.

| Paragraph | Action | Accounting Standards Update | Date |
|---|---|---|---|
| Financial Statements Are Available to Be Issued | Added | 2014-15 | 08/27/14 |
| Financial Statements Are Issued | Added | 2014-15 | 08/27/14 |
| Liquidation | Added | 2014-15 | 08/27/14 |
| Probable (2nd def) | Added | 2014-15 | 08/27/14 |
| Substantial Doubt about an Entity's Ability to Continue as a Going Concern | Added | 2014-15 | 08/27/14 |
| 205-40-05-1 through 05-3 | Added | 2014-15 | 08/27/14 |
| 205-40-15-1 | Added | 2014-15 | 08/27/14 |
| 205-40-50-1 through 50-14 | Added | 2014-15 | 08/27/14 |
| 205-40-55-1 through 55-3 | Added | 2014-15 | 08/27/14 |
| 205-40-65-1 | Added | 2014-15 | 08/27/14 |

*The amendments in this Update were adopted by the affirmative vote of five members of the Financial Accounting Standards Board. Messrs. Linsmeier and Smith dissented.*

Mr. Linsmeier dissents from the issuance of this Accounting Standards Update for two primary reasons. First, he believes that requiring management to disclose when it has substantial doubt about its entity's ability to continue as a going concern is outside the scope of the disclosures that should be required in notes

to the financial statements. Mr. Linsmeier believes, instead, that those future-oriented disclosures about an entity's overall ability to continue as a going concern should continue to be required in SEC filings as part of management's discussion and analysis and subject to a safe harbor for forward-looking information. This view is consistent with the Board's recent proposed Concepts Statement, *Conceptual Framework for Financial Reporting: Chapter 8: Notes to Financial Statements*, on notes to the financial statements, which proposes that future-oriented assumptions and expectations about uncertain future events that do not affect the measurement of numbers recognized in financial statements generally should not be considered by the Board for disclosure in the notes to the financial statements.

That same proposed Concepts Statement, however, also proposes that future-oriented estimates and assumptions that form the basis for how items recognized in the financial statements are measured are appropriate for the Board to consider requiring in footnotes to the financial statements. Mr. Linsmeier notes that certain future-oriented estimates and assumptions used to prepare financial statements under the going concern basis of accounting (for example, future cash flow estimates, useful lives, and salvage values) directly affect how numbers that are recognized in the financial statement are measured. Therefore, he believes that disclosures about uncertainties about those estimates and assumptions could inform users of financial statements about the extent to which they can rely on reported numbers and, therefore, would be consistent with the scope of note disclosures in the proposed Concepts Statement. As a consequence, Mr. Linsmeier would have preferred that this Update focus on requiring disclosures of uncertainties about the quality of inputs to financial statement measures that result from significant uncertainty about whether an entity can continue as a going concern. Mr. Linsmeier recognizes that some may believe that the difference is subtle between what he proposes and what is required by this Update, but he believes that it is important in current efforts to reduce redundancy in reported information to limit and differentiate consistently the nature of future-oriented information disclosed in the notes versus that required outside the financial statements (and related notes) within SEC filings.

Second, Mr. Linsmeier believes that by requiring disclosure only when it is probable that an entity will be unable to meet its obligations as they become due within one year after the date the financial statements are issued (or available to be issued), the guidance in this Update will provide information about going concern uncertainties that is too late to be of significant benefit to users of financial statements. Users indicate that when disclosures are provided only when it is probable that an entity will be unable to meet its obligations as they become due, they typically already know about the uncertainty and, thus, the disclosures are at best confirmatory, providing little or no predictive value. Mr. Linsmeier believes that to serve users better, any disclosure about the financial reporting implications of an uncertainty about an entity's ability to continue as a going concern should be required when going concern issues are, at minimum,

16

more likely than not and preferably even earlier when those issues become reasonably likely.

Mr. Linsmeier believes that resistance to an earlier threshold for disclosures about going concern uncertainties primarily exists because of concerns about (a) redundancy with somewhat similar SEC disclosure requirements and (b) increased litigation risk and a self-fulfilling prophecy when the forward-looking disclosures that are not subject to a safe-harbor focus on making an overall assessment about when there is substantial doubt that an entity can continue as a going concern.

Mr. Linsmeier believes that each of those concerns would be mitigated significantly if the disclosures required by this Update focused on uncertainties about the quality of reported numbers caused by increased uncertainty about the inputs used to measure financial statement numbers in the presence of uncertainty about whether the entity can continue as a going concern. Therefore, to serve users better, Mr. Linsmeier would have preferred that this Update require disclosures when it is reasonably likely that uncertainty about the ability of an entity to continue as a going concern causes uncertainties about the estimates and assumptions used as inputs to measurements recognized in the financial statements.

Mr. Smith dissents from the issuance of this Update because he believes that the guidance in the Update does not pass the cost-benefit test. Traditionally, the cost-benefit test is an evaluation of whether the *increase* in benefits to financial statement users justifies the *increase* in costs to financial statement preparers and auditors. Mr. Smith believes that for this particular Update, the evaluation is whether the *reduction* in benefits is justified by the *reduction* in costs.

As mentioned in paragraph BC17, a commonly cited academic paper (Boritz, 1991) noted that the threshold for the substantial doubt likelihood of an entity being unable to meet its obligations is between 50 and 70 percent. The guidance in this Update increases that threshold to probable, which many assert as being in the 70–75 percent range. Mr. Smith believes that this increase in the threshold will result in a decrease in the number of going concern disclosures as compared with current practice. While Mr. Smith believes there are benefits to defining management's responsibility in GAAP, he believes that this increase in the threshold is not a favorable outcome, which is why he believes that the guidance will result in a *decrease* in benefits. Mr. Smith also notes that the cost of implementing the guidance should go down because (a) substantial doubt is defined, whereas it is not today, and (b) the threshold for starting going concern disclosures is increased (later) as compared with current practice.

Mr. Smith is disappointed that the Board and FASB staff did not try harder to address the operability concerns raised by respondents to the 2013 Exposure Draft, *Presentation of Financial Statements (Topic 205): Disclosure of Uncertainties about an Entity's Going Concern Presumption;* instead, to Mr. Smith, it appears that the approach adopted was to acknowledge the existence

17

of the operability concerns and quickly abandon any reconsideration of the early-warning disclosures included in the 2013 Exposure Draft. Mr. Smith believes that many of the operability concerns could have been successfully addressed and would have resulted in guidance that would have provided financial statement users with improved early-warning disclosures, thereby resulting in an increase in benefits to financial statement users, rather than a net reduction in benefits to those users.

*Members of the Financial Accounting Standards Board:*

Russell G. Golden, *Chairman*
James L. Kroeker, *Vice Chairman*
Daryl E. Buck
Thomas J. Linsmeier
R. Harold Schroeder
Marc A. Siegel
Lawrence W. Smith

18

# Background Information and Basis for Conclusions

## Introduction

BC1. The following summarizes the Board's considerations in reaching the decisions in this Update. It includes reasons for accepting certain approaches and rejecting others. Individual Board members gave greater weight to some factors than to others.

## Background Information

BC2. The Board originally undertook this project to incorporate into GAAP certain requirements that originated as, and resides in, U.S. auditing standards. In October 2008, the Board issued an Exposure Draft, *Going Concern*, which would have provided entities with guidance on the preparation of financial statements as a going concern and on management's responsibility to evaluate and disclose uncertainties about an entity's ability to continue as a going concern. The 2008 Exposure Draft would have required disclosures either when financial statements were not prepared on a going concern basis or when there was substantial doubt about an entity's ability to continue as a going concern. The 2008 Exposure Draft would have carried forward the going concern guidance from U.S. auditing standards, subject to several modifications to align the guidance with IFRS.

BC3. Respondents to the 2008 Exposure Draft indicated that certain terminology and thresholds used in the proposed guidance needed to be clarified further, such as *going concern* and *substantial doubt*. Respondents also expressed other concerns about the proposal, including potential complexities arising from the indefinite nature of the proposed time horizon and from the proposed requirement to evaluate *all available information about the future*. Furthermore, respondents highlighted the omission in the 2008 Exposure Draft of the auditor's disclosure consideration in U.S. auditing standards when an initial substantial doubt concern is alleviated primarily because of management's plans. Several respondents highlighted the need for guidance about when and how to prepare financial statements using the liquidation basis of accounting. The Board addressed the liquidation basis of accounting as part of a separate project and, in April 2013, issued Accounting Standards Update No. 2013-07, *Presentation of Financial Statements (Topic 205): Liquidation Basis of Accounting*.

BC4. Subsequent to the 2008 Exposure Draft, the Board reassessed the objective of the going concern project at different times in response to feedback from stakeholders and developments in other projects. In 2010, the Board

19

modified the objective of the going concern project to propose early-warning disclosures about going concern uncertainties and, in 2011, the Board considered but later rejected incorporating going concern uncertainty disclosures in the separate project on liquidity and interest rate risk disclosures.

BC5. In June 2013, the Board issued another Exposure Draft, *Presentation of Financial Statements (Topic 205): Disclosure of Uncertainties about an Entity's Going Concern Presumption*. The 2013 Exposure Draft would have required disclosures when it was either (a) more likely than not that an entity would be unable to meet its obligations within 12 months after the financial statement date or (b) known or probable that the entity would be unable to meet its obligations within 24 months after the financial statement date. Those disclosures were commonly referred to as the early-warning disclosures. In assessing the need for early-warning disclosures, the mitigating effect of management's plans would have been considered by management, but only to the extent that those plans were within the ordinary course of business. In addition to the early-warning disclosures, an entity that is a Securities and Exchange Commission (SEC) filer would have been required to evaluate whether there was substantial doubt about the entity's ability to continue as a going concern. Substantial doubt would have been deemed to exist when it was known or probable that an entity would be unable to meet its obligations within 24 months after the financial statement date (considering all management's plans, including those outside the ordinary course of business).

BC6. Most respondents to the 2013 Exposure Draft (and other stakeholders who provided feedback on the proposal) agreed that, as a part of GAAP, management should have the responsibility for evaluating and, in appropriate circumstances, disclosing in the financial statement footnotes uncertainties about an entity's ability to continue as a going concern. However, many stakeholders questioned the benefits of the proposed early-warning disclosures and expressed concerns about their operability and complexity because of the (a) "bright-line" nature of the "more-likely-than-not" threshold, (b) extended assessment period of 24 months, (c) complexity from having to distinguish between plans in the ordinary course of business and other plans, (d) potential for expanded legal liability for entities because of the earlier (and thereby more forward-looking) disclosures, and (e) redundancy of the disclosures for SEC registrants because of similar disclosure requirements in, for example, management's discussion and analysis (MD&A). Users of financial statements also generally did not express support for the early-warning disclosures because they perceive those disclosures as having incrementally limited information value. Additionally, many respondents to the 2013 Exposure Draft disagreed with limiting the proposed requirement to evaluate "substantial doubt" to only SEC filers, arguing that the requirement should apply equally to all entities (public and nonpublic).

BC7. In March 2014, the Board decided not to pursue the proposed requirement for early-warning disclosures. Instead, the Board decided that it should incorporate and expand upon certain principles that are currently in U.S. auditing

20

standards for evaluating whether there is substantial doubt about an entity's ability to continue as a going concern and about related footnote disclosure considerations.

## Reasons for Introducing Disclosure Requirements in GAAP for Going Concern Uncertainties

BC8. In preparing financial statements under GAAP, continuation of a reporting entity as a going concern is presumed unless and until the entity's liquidation becomes imminent. Preparation of financial statements under this presumption is commonly referred to as the going concern basis of accounting. If and when an entity's liquidation becomes imminent, financial statements should be prepared under the liquidation basis of accounting in accordance with Subtopic 205-30, Presentation of Financial Statements—Liquidation Basis of Accounting.

BC9. Even if an entity's liquidation is not imminent, there may be conditions or events, considered in the aggregate, that raise substantial doubt about the entity's ability to continue as a going concern. In those situations, financial statements should continue to be prepared under the going concern basis of accounting because GAAP does not prescribe another basis of accounting unless and until an entity's liquidation is imminent. However, because the presumption that an entity will continue as a going concern is critical to financial statement measurements and classifications, the Board concluded that an entity should disclose in the footnotes information about conditions or events that raise substantial doubt about its ability to continue as a going concern. The Board also determined that, as a part of GAAP, management should be responsible for evaluating and disclosing conditions or events that raise substantial doubt about an entity's ability to continue as a going concern because management is responsible for the financial statements that provide those disclosures.

BC10. Currently, there is no guidance in GAAP about management's responsibility to evaluate whether there is substantial doubt about an entity's ability to continue as a going concern or to provide related footnote disclosures. U.S. auditing standards and federal securities law require that an auditor evaluate whether there is substantial doubt about an entity's ability to continue as a going concern for a reasonable period of time not to exceed one year beyond the date of the financial statements being audited. U.S. auditing standards also require an auditor to consider the possible financial statement effects, including footnote disclosures on uncertainties about an entity's ability to continue as a going concern for a reasonable period of time (the American Institute of Certified Public Accountant's Codification of Statements on Auditing Standards Section AU-C 570, *The Auditor's Consideration of an Entity's Ability to Continue as a Going Concern*, or the Public Company Accounting Oversight Board's AU Section 341, *The Auditor's Consideration of an Entity's Ability to Continue as a Going Concern*). The SEC also has guidance on disclosures that it expects from

21

an entity when an auditor's report includes an explanatory paragraph that reflects substantial doubt about an entity's ability to continue as a going concern for a reasonable period of time (see the Codification of Financial Reporting Policies, Section 607.02).

BC11.  The Board received input indicating that because of the lack of guidance in GAAP and the differing views about when there is substantial doubt about an entity's ability to continue as a going concern, there is diversity in whether, when, and how an entity discloses the relevant conditions and events in its footnotes. The Board also received input indicating that if auditors are required by U.S. auditing standards to consider disclosures in the financial statement footnotes, then management should be provided with guidance in GAAP about those disclosures. The amendments in this Update provide guidance in GAAP about management's responsibility to evaluate whether there is substantial doubt about an entity's ability to continue as a going concern and to provide related footnote disclosures. In doing so, the amendments should reduce diversity in the timing and content of footnote disclosures.

BC12.  The disclosures required under the amendments may not result in new information in many audited financial statements because the amendments are similar to current U.S. auditing standards. However, the amendments provide the benefit of defining management's responsibility in GAAP to evaluate when and how substantial doubt about an entity's ability to continue as a going concern should be disclosed in the financial statement footnotes. The amendments incorporate into GAAP and expand upon certain principles that are currently in U.S. auditing standards. Specifically, the amendments (a) provide a definition of the term *substantial doubt*, (b) require an evaluation every reporting period including interim periods, (c) provide principles for considering the mitigating effect of management's plans, (d) require certain disclosures when substantial doubt is alleviated as a result of consideration of management's plans, (e) require an express statement and other disclosures in the footnotes when substantial doubt is not alleviated, and (f) require an assessment for a period of one year after the date that the financial statements are issued (or available to be issued).

BC13.  During its deliberations, the Board also considered the potential redundancies that the amendments could create in an SEC registrant's filing when similar information is disclosed in the footnotes and in the MD&A. The Board acknowledged the potential for similar redundancy issues to exist currently in part because of the overlap in the disclosure considerations included in U.S. auditing standards and the disclosures required by the SEC's regulations. Ultimately, the Board concluded that the amendments improve financial reporting for all entities, public and nonpublic, by providing guidance in GAAP about management's responsibility in evaluating and disclosing conditions or events that raise substantial doubt about an entity's ability to continue as a going concern.

22

## The Going Concern Basis of Accounting

BC14. The Board deliberated whether and, if so, how to define *going concern*, which had not explicitly been defined previously in GAAP or in U.S. auditing standards. In the 2013 Exposure Draft, the Board proposed including in GAAP the term *going concern presumption* and would have defined it as an entity's ability to operate such that it will be able to realize its assets and meet its obligations in the ordinary course of business. Many respondents to the 2013 Exposure Draft indicated that the proposed definition would have been irrelevant to the going concern basis of accounting because GAAP does not require a change in the basis of accounting unless and until an entity's liquidation becomes imminent. In response, the Board decided not to define the concept of going concern presumption and, instead, adopted the principles in Subtopic 205-30 on the liquidation basis of accounting for purposes of explaining the going concern basis of accounting within the amendments. That is, the Board clarified in the amendments that the continuation of an entity is presumed in preparing financial statements under GAAP; therefore, financial statements should be prepared under the going concern basis of accounting unless and until the entity's liquidation becomes imminent. When an entity's liquidation becomes imminent, financial statements should be prepared under the liquidation basis of accounting in accordance with Subtopic 205-30.

## Substantial Doubt Evaluation

BC15. With no relevant financial reporting guidance in GAAP, the Board had to determine the appropriate threshold at which an entity should be required to disclose uncertainties about its ability to continue as a going concern. The Board decided that *substantial doubt* represents an appropriate threshold for disclosure requirements in GAAP based in part on the fact that it is the threshold referred to in the federal securities law and in U.S. auditing standards. The Board also determined that the substantial doubt threshold achieves the objective of defining management's responsibility in GAAP based on a concept that is familiar to both auditors and preparers and, when properly defined, helps reduce diversity in the timing and content of footnote disclosures. The Board further noted that substantial doubt appropriately conveys a high threshold with a focus on significant uncertainties about an entity's ability to continue as a going concern rather than a broader focus on all uncertainties and risk factors.

BC16. The Board received feedback that auditors have differing views under current practice on the meaning of *substantial doubt* and the related timing of footnote disclosures, in part because there is no definition of substantial doubt in current U.S. auditing standards. The Board decided to define *substantial doubt* in GAAP to reduce diversity currently caused by different interpretations of its meaning. Auditors indicated that they consider more than just the likelihood of an entity's ability to meet its obligations when deciding whether there is substantial

23

doubt about an entity's ability to continue as a going concern. Additionally, some auditors and financial statement users indicated that the use of *probable* as the threshold when substantial doubt exists would be most consistent with the current practice of disclosing uncertainties about an entity's ability to continue as a going concern. However, other auditors and stakeholders indicated that existing footnote disclosures start at a threshold that is between *more likely than not* and *probable*.

BC17. The Board's outreach and research efforts also found differences in views between different stakeholder groups. Generally, the Board learned that financial statement users perceive substantial doubt as a higher probability than auditors do because many users indicated that substantial doubt means a high probability that an entity will go into *bankruptcy*. The range of feedback about substantial doubt and the related timing of disclosures in practice further highlighted the need to address the existing diversity. Various academics also have tried to pinpoint the threshold for substantial doubt under current practice. One academic paper (Boritz, 1991) noted that a 50 to 70 percent likelihood of an entity being unable to meet its obligations would represent substantial doubt.

BC18. Most respondents to the 2013 Exposure Draft agreed with incorporating a likelihood-based threshold in the definition of substantial doubt and agreed that probable is an appropriate threshold. Respondents also agreed that the term *probable* should be used and interpreted similar to its use in Topic 450, Contingencies.

BC19. After weighing the various considerations outlined above and considering stakeholders' feedback, including feedback received on the 2008 and 2013 Exposure Drafts, the Board decided that substantial doubt about an entity's ability to continue as a going concern should be deemed to exist when relevant conditions or events, considered in the aggregate, indicate that it is probable that the entity will be unable to meet its obligations as they become due within one year after the date that the financial statements are issued (or within one year after the date that the financial statements are available to be issued when applicable). The Board determined that the definition of *substantial doubt* should incorporate the term *probable*, as was proposed in the 2013 Exposure Draft, because that term is defined within GAAP (Topic 450 on contingencies) and therefore would promote a more consistent application of the standard. The Board also noted that the term *probable* would convey a degree of significance that is most consistent with how users of financial statements currently perceive the term *substantial doubt* in financial reporting.

BC20. The Board acknowledged that the evaluation of whether there is substantial doubt involves a significant degree of judgment regardless of whether a likelihood-based threshold is introduced. The determination should consider both qualitative and quantitative information about relevant conditions and events in the aggregate. The Board incorporated into GAAP the examples of qualitative and quantitative indicators that reside in U.S. auditing standards of the conditions

24

and events that may raise substantial doubt about an entity's ability to continue as a going concern.

BC21. Prior to issuing this Update, the Board evaluated whether the Update could be viewed as being contrary to, or inconsistent with, Section 10A(a) of the Securities Exchange Act of 1934. In evaluating this issue, the Board consulted with attorneys who specialize in securities law, auditors, and the staff of the Securities and Exchange Commission. Based on those consultations, the Board did not believe the improvement to financial reporting required by this Update was inconsistent with Section 10A(a).

BC22. The Board also affirmed its previous decision for management to evaluate an entity's potential *inability to meet its obligations* as the basis for evaluating whether there is substantial doubt. The Board acknowledged that ordinarily conditions or events that raise substantial doubt about an entity's ability to continue as a going concern relate to an entity's ability to meet its obligations as they become due. The Board received input indicating that this approach also is consistent with how auditors presently evaluate going concern uncertainties. Other alternatives were considered, including assessing the probability that (a) *liquidation would be imminent* and (b) existing conditions or events may have a *severe impact* on an entity's ability to realize its assets and meet its obligations. The Board acknowledged the merits of each of those alternatives but decided that an entity's *ability to meet its obligations* would be the most appropriate indicator of an entity's ability to continue as a going concern. It also would be most familiar and understandable and, therefore, the most operable approach.

## Frequency of Evaluation

BC23.  The Board decided that an entity's management should evaluate whether there is substantial doubt in connection with preparing financial statements for each annual and interim reporting period to ensure timely disclosures. Most respondents to the 2013 Exposure Draft agreed with that decision. The Board considered the alternatives of (a) annual-only evaluations or (b) annual with trigger-based interim evaluations, but ultimately rejected those alternatives to ensure that uncertainties about an entity's ability to continue as a going concern were being evaluated comprehensively for each reporting period, and being reported timely in the financial statement footnotes.

## Information Subject to Evaluation

BC24. The 2013 Exposure Draft proposed that an entity would assess all information about existing conditions and events as of the financial statement issuance date. Respondents agreed that the assessment should be as of the date that the financial statements are issued (or available to be issued). To ensure that the evaluation is performed based on the most current and therefore the most relevant information, the Board affirmed its previous decision that the evaluation should be as of the date that the financial statements are issued (or available to be issued) rather than as of the balance sheet date. In determining

25

the assessment date, the Board decided to adopt existing guidance and terminology in Subtopic 855-10, Subsequent Events—Overall, to achieve consistency between the assessment date of those amendments and the assessment date requirements of that Subtopic. That Subtopic requires evaluation of subsequent events through (a) the date the *financial statements are issued* or (b) the date the *financial statements are available to be issued* as those terms are defined in Topic 855.

BC25. Many respondents to the 2013 Exposure Draft indicated that the proposed requirement to assess *all* information would place undue cost and burden on entities and auditors. Those respondents argued that the use of the term *all* may expose an entity to undue risk of litigation if the entity subsequently fails to meet its obligations because of circumstances that would not have been reasonably foreseeable or known at the financial statement issuance date. They argued that this provision would unnecessarily increase the risk and responsibility of the entity and the auditor compared with current practice.

BC26. The Board responded by clarifying in the amendments that the evaluation should be based on relevant conditions and events known and reasonably knowable at the date that the financial statements are issued (or available to be issued). The Board noted that the term *known* is used in other Topics such as Topic 275, Risks and Uncertainties. The Board decided to add the term *reasonably knowable* to emphasize that an entity should make a reasonable effort to identify conditions and events that it may not readily know, but would be able to identify without undue cost and effort.

BC27. The Board acknowledged that the level of analysis necessary for management's evaluation may vary depending on an entity's specific facts and circumstances. For example, a detailed analysis may not be necessary if an entity has a history of profitable operations, ready access to financial resources, and no significant near-term obligations in excess of its available liquid funds. In other cases, when events or conditions have potentially negative consequences for an entity's ability to meet its obligations during the assessment period, a more detailed analysis may be appropriate, including the preparation of prospective financial information, to evaluate whether there is substantial doubt about an entity's ability to continue as a going concern.

## The Assessment Period

BC28. Most respondents to the 2013 Exposure Draft disagreed with the proposed assessment period of 24 months. Many respondents expressed concerns about whether management could reasonably assess its ability to continue as a going concern beyond one year. Others highlighted the potential for expanded legal liability for entities because of the extended assessment period that may lead to greater uncertainty in predictions about unknown events. The Board acknowledged the practical limitations in reliably assessing an entity's potential inability to meet its obligations beyond one year and decided to limit the

26

assessment period to one year after the date that the financial statements are issued (or available to be issued). The Board considered limiting the assessment period to one year from the balance sheet date. However, the Board decided that a period of one year from the issuance date would provide users of financial statements with more current and, therefore, more relevant information because the assessment period would always represent a rolling period (one full year) regardless of the date that the financial statements are issued. In supporting its decision, the Board also considered the input received from many auditors indicating that, in practice, they already assess over a period of one year from the audit report date instead of one year from the balance sheet date.

BC29.  The Board limited the assessment period to one year; therefore, an entity is not required to assess its ability to meet obligations as they become due beyond one year after the date that the financial statements are issued (or available to be issued) under these amendments. The Board decided that an appropriate upper time limit was important so that the amendments are operable, reduce diversity, and maintain the focus of the disclosures on the more significant and nearer term uncertainties. The more distant in the future a going concern uncertainty is, the more uncertain the outcome of that uncertainty, and the more options management has to remedy the uncertainty. However, the Board did not intend to prohibit an entity from considering and providing disclosure about the potential effect of known conditions and events that may occur beyond one year, and it acknowledged that those conditions and events may still be appropriate or required to disclose in accordance with other GAAP in the financial statement footnotes (for example, as part of the loss contingencies, risks and uncertainties, or the debt payable footnote).

## Consideration of Management's Plans

BC30.  The Board decided that when conditions or events that raise substantial doubt about an entity's ability to continue as a going concern are identified, management should consider whether its plans that are intended to mitigate those conditions or events will alleviate substantial doubt. While this approach is consistent with the 2013 Exposure Draft in relation to management's evaluation of whether there is substantial doubt, it is a departure from the 2013 Exposure Draft in relation to management's evaluation of whether the early-warning disclosures are necessary. For the latter, an entity would have considered only the mitigating effect of management's plans that are in the ordinary course of business under the 2013 Exposure Draft. Many respondents did not agree with the requirement to distinguish management's plans that are in the ordinary course of business from other plans and indicated that the proposed requirement would be overly complex.

BC31.  In response to the feedback received, the Board decided not to require an entity to distinguish management's plans that are in the ordinary course of business from other plans. Instead, the Board decided that the mitigating effect of

27

management's plans should be considered to the extent that (a) it is probable that the plans will be effectively implemented and, if so, (b) it is probable that the plans will mitigate the conditions or events that raise substantial doubt about the entity's ability to continue as a going concern. The Board decided to introduce this guidance to ensure that an entity does not place undue emphasis on the potential mitigating effect of management's plans that are not probable of success.

BC32. The Board incorporated in GAAP certain aspects of U.S. auditing standards, including the examples of management's plans and related considerations. Additionally, the Board introduced guidance emphasizing that management's plans often should be approved before the date that the financial statements are issued (or available to be issued) to further highlight this principle. Finally, the Board wanted to ensure that a plan to liquidate is not considered a mitigating event because an entity that plans to liquidate should not be able to conclude on the basis of its planned liquidation that there is no substantial doubt about its ability to continue as a going concern.

## Disclosure Content

BC33. The Board decided that when conditions or events raise substantial doubt and the substantial doubt is not alleviated by management's plans, an entity should include in the footnotes a statement indicating that there is substantial doubt about the entity's ability to continue as a going concern within one year after the date that the financial statements are issued (or available to be issued). Additionally, consistent with the considerations provided in U.S. auditing standards, the Board decided to require disclosure of information that enables users of the financial statements to understand all of the following:

   a. Principal conditions or events that raise substantial doubt about the entity's ability to continue as a going concern
   b. Management's evaluation of the significance of those conditions or events in relation to the entity's ability to meet its obligations
   c. Management's plans that are intended to mitigate the conditions or events that raise substantial doubt about the entity's ability to continue as a going concern.

BC34. The Board decided to incorporate in GAAP some of the specific disclosure considerations in the auditing literature because those provisions meet the Board's objective and they are familiar to stakeholders. The Board wanted to limit disclosures in the financial statements to relevant information about significant conditions or events that are specific to going concern uncertainties. The Board did not incorporate the disclosure consideration in U.S. auditing standards about the possible effects of the conditions and events on an entity because it considered those disclosures to be overly subjective and forward-looking for footnotes.

28

BC35. In addition to the disclosures required when substantial doubt is not alleviated after considering management's plans, the Board also decided to require disclosures when substantial doubt is raised but is alleviated by management's plans. In those cases, the Board decided that an entity should still disclose sufficient information that enables users of the financial statement to understand all of the following (or refer to information disclosed elsewhere in the footnotes):

    a.   Principal conditions or events that raised substantial doubt about the entity's ability to continue as a going concern (before consideration of management's plans)

    b.   Management's evaluation of the significance of those conditions or events in relation to the entity's ability to meet its obligations

    c.   Management's plans that alleviated substantial doubt about the entity's ability to continue as a going concern.

BC36. The Board decided that users of financial statements are best served if they are provided with disclosures about instances for which substantial doubt otherwise would exist but is alleviated by management's plans. This should give financial statement users the opportunity to evaluate the likely success of those plans in mitigating the conditions or events that raised substantial doubt. Otherwise, financial statement footnotes would not include useful information about going concern uncertainties because disclosures would be omitted on the basis of the probable mitigating effect of those plans. The Board also noted that this approach is generally consistent with existing disclosure practices.

BC37. The Board also decided that if conditions or events continue to raise substantial doubt about an entity's ability to continue as a going concern in subsequent reporting periods, information should continue to be disclosed in those subsequent periods. Disclosures should become more extensive as additional information becomes available about relevant conditions or events and about management's plans. For purposes of applying this principle, the Board did not want the *extent* of disclosures to be interpreted as the *length* of disclosures. Rather, an entity may provide more extensive information (for example, when there is more information available) without increasing the length of disclosures. The Board stressed that appropriate context and continuity should be provided in explaining how conditions and events have changed between reporting periods. The Board decided that in the period that substantial doubt no longer exists (before or after consideration of management's plans), an entity should disclose how the relevant conditions or events that originally raised substantial doubt have been resolved.

## Nonpublic Entity Considerations

BC38. The presumption in financial reporting that an entity will continue as a going concern applies equally to both public entities and nonpublic entities.

29

Furthermore, auditors of both public and nonpublic entities are currently required to evaluate whether there is substantial doubt and to assess the adequacy of related disclosures. The Board concluded that there is just as much need to provide GAAP disclosure guidance for nonpublic entities as there is for public entities, because the lack of clarity about management's responsibility and the diversity in the timing and content of disclosures also apply equally to both sets of entities. The Board further noted that the amendments will provide the benefit of requiring relevant disclosures any time financial statements are prepared in accordance with GAAP, even when those financial statements are not audited.

BC39. In the 2013 Exposure Draft, the Board would have required early-warning disclosures for all entities, public and nonpublic, but would have provided an exception for entities that are not SEC filers from having to evaluate or disclose conditions or events that raise substantial doubt. That nonpublic entity exemption was proposed because the Board decided that it would not have been incrementally useful to include a statement in the footnotes that there is substantial doubt amid earlier disclosures that would have discussed the underlying conditions or events in greater detail.

BC40. The Board received input indicating that creating disclosure differences between SEC filers and other entities for going concern would be detrimental to financial statement users. The Board also was told that a nonpublic entity exemption in GAAP would be irrelevant as long as the auditing standards for nonpublic entity audits continue to require the evaluation of substantial doubt and related disclosures. Stakeholders also noted that the nonpublic entity exemption would be unnecessary if the Board eliminated the early-warning disclosure requirement because substantial doubt would serve as the new principal threshold for disclosures. In response, the Board decided not to provide an exemption for nonpublic entities from evaluating and disclosing conditions or events that raise substantial doubt about an entity's ability to continue as a going concern.

## Transition and Effective Date

BC41. The Board decided that the amendments should be effective for annual periods ending after December 15, 2016, and interim periods within annual periods beginning after December 15, 2016. The Board decided that this effective date will provide all entities, public or nonpublic, with adequate time to implement the necessary processes before initial adoption. The Board also determined that the first period of mandatory adoption should be an annual period to make the transition more effective for most entities by aligning their first assessment with their annual audits. The Board decided to permit early application (in any earlier annual or interim period for which financial statements have not been issued as of the date of issuance of this Update) on the basis that it should not prohibit entities from applying improved disclosure guidance early if they choose to do so.

30

## Benefits and Costs

BC42.  The objective of financial reporting is to provide information that is useful to present and potential investors, creditors, donors, and other capital market participants in making rational investment, credit, and similar resource allocation decisions. However, the benefits of providing information for that purpose should justify the related costs. Present and potential investors, creditors, donors, and other users of financial information benefit from improvements in financial reporting, while the costs to implement new guidance are borne primarily by present investors. The Board's assessment of the costs and benefits of issuing new guidance is unavoidably more qualitative than quantitative because there is no method to objectively measure the costs to implement new guidance or to quantify the value of improved information in financial statements.

BC43.  The disclosures required under the amendments may not result in new information in many audited financial statements because the amendments are similar to current U.S. auditing standards. Furthermore, the disclosures may provide information that is similar to certain disclosures in an SEC registrant's MD&A. However, the amendments provide the benefit of defining management's responsibility in GAAP to evaluate, and disclose in the footnotes, uncertainties about an entity's ability to continue as a going concern, which is a critical presumption for preparing financial statements under GAAP for all entities. The amendments incorporate and expand upon certain principles of current U.S. auditing standards, including some of the methods of assessment, the use of the substantial doubt concept, and the disclosure considerations. The amendments also define the concept of *substantial doubt about an entity's ability to continue as a going concern*. In doing so, the amendments should provide the benefit of reducing diversity in the timing and content of existing footnote disclosures for all entities.

BC44.  Many respondents to the 2013 Exposure Draft expressed concern about its complexity. The final amendments are less complex because the Board has eliminated the early-warning disclosure requirements that were proposed in the 2013 Exposure Draft. While the final amendments are less complex than the 2013 Exposure Draft, they will introduce new costs for some entities. The amendments explicitly require in GAAP that management evaluate for each annual and interim reporting period whether there is substantial doubt about an entity's ability to continue as a going concern. Because of the significant judgments involved in that evaluation, entities may need to implement and document underlying processes and controls. The Board expects that the incremental costs of the new standard will be lower for financially healthy entities because there are no new disclosure requirements for those entities. The incremental costs may be greater for entities that are not financially healthy because their evaluation will have to be more extensive. The extent of the cost increase resulting from the amendments to an entity will depend on a number of factors, including how much of the cost burden has been borne by the entity

31

previously. However, some of the cost increase should be offset through a reduction in inefficiencies in the financial reporting systems that currently exist because of the lack of preparer-specific guidance.

BC45. The Board determined that the current lack of guidance in GAAP creates unnecessary diversity and complexity because management does not have guidance about footnote disclosures that auditors are required to consider under U.S. auditing standards. The clear guidance on management's responsibilities for disclosures relating to substantial doubt in this Update should reduce that diversity and the complexity created by this atypical relationship between the auditor and the preparer. On balance, the Board believes that the benefits resulting from defining management's responsibility and reducing diversity in disclosures justify the costs of applying the amendments.

32

# Amendments to the XBRL Taxonomy

The amendments to the *FASB Accounting Standards Codification*® in this Accounting Standards Update require changes to the U.S. GAAP Financial Reporting Taxonomy (UGT). Those changes, which will be incorporated into the proposed 2015 UGT, are available for public comment through ASU Taxonomy Changes provided at www.fasb.org, and finalized as part of the annual release process starting in September 2014.