UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE BRISTOW GROUP INC., SECURITIES LITIGATION | § § § § § | Case No.: 4:19-cv-00509 (KPE) |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

**KING & SPALDING LLP**

Paul R. Bessette
Attorney-in-Charge
Texas Bar No. 02263050
S.D. Tex. Bar No. 22453
Michael J. Biles
Texas Bar No. 24008578
S.D. Tex. Bar No. 23146
Tyler W. Highful
Texas Bar No. 24083176
S.D. Tex. Bar No. 2897159
Jessica England
Texas Bar No.  24105841
S.D. Tex. Bar No. 3380633
500 W. 2nd Street, Suite 1800
Austin, Texas 78701
(512) 457-2000
(512) 457-2100 (Fax)
pbessette@kslaw.com
mbiles@kslaw.com
thighful@kslaw.com
jengland@kslaw.com

*Counsel for Defendants*
*Jonathan E. Baliff and L. Don Miller*

## TABLE OF CONTENTS

I.   PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS TO RAISE THE
     NECESSARY STRONG INFERENCE OF SCIENTER ......................................................2

     A.   Plaintiffs allege no plausible motive for fraud. ...........................................2

     B.   Plaintiffs allege no facts showing that any Defendant had actual
          knowledge of the alleged falsity of any statement. ....................................3

II.  PLAINTIFFS FAIL TO ADEQUATELY PLEAD FALSITY ...........................................6

     A.   The Company's restatement is not an admission that the Company
          materially breached loan covenants. ...........................................................6

     B.   The retroactive re-classification of the Company's debt was required by
          specific GAAP provisions, not because the debt was originally improperly
          classified. .....................................................................................................7

     C.   It was not misleading for Miller or Baliff to "tout" Bristow's debt
          financings because the Company was not in material breach of those
          agreements at the time of the statements. ....................................................8

III. PLAINTIFFS' ALLEGATIONS CONTAIN IMMATERIAL PUFFERY AND
     PROTECTED FORWARD-LOOKING STATEMENTS ....................................................9

     A.   Defendants' generally positive statements about its liquidity and the debt
          financings are corporate puffery. ................................................................9

     B.   Defendants' statements concerning its "liquidity runway" are classic
          forward-looking statements protected by the PSLRA's safe harbor
          provision. .....................................................................................................9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re BP p.l.c. Sec. Litig.*,
 843 F. Supp. 2d 712 (S.D. Tex. 2012) .................................................................................5, 6

*In re Constellation Energy Grp., Inc., Sec. Litig.*,
 738 F. Supp. 2d 614 (D. Md. 2010) ........................................................................................4

*Coronel v. Quanta Capital Holdings Ltd.*,
 07 CIV. 1405 (RPP), 2009 WL 174656 (S.D.N.Y. Jan. 26, 2009)............................................6

*In re Fairway Group Holdings Corp. Securities Litig.*,
 14 CIV. 0950 LAK AJP, 2015 WL 4931357 (S.D.N.Y. Aug. 19, 2015) ...............................10

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
 537 F.3d 527 (5th Cir. 2008) ...................................................................................................3

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
 897 F. Supp. 2d 168 (S.D.N.Y. 2012).....................................................................................3

*Langadinos v. Appalachian Sch. of Law*,
 No. 1:05CV00039, 2005 WL 2333460 (W.D. Va. Sept. 25, 2005)...........................................8

*In re Magnum Hunter Res. Corp. Securities Litig.*,
 26 F. Supp. 3d 278 (S.D.N.Y. 2014)........................................................................................6

*Podraza v. Whiting*,
 790 F.3d 828 (8th Cir. 2015) ..................................................................................................3

*Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*,
 777 F. App'x 726 (5th Cir. 2019) ............................................................................................9

*U.S. S.E.C. v. Pirate Inv'r LLC*,
 580 F.3d 233 (4th Cir. 2009) ...................................................................................................7

**INTRODUCTION**

The Consolidated Amended Complaint's ("CAC") allegations of securities fraud are nonsensical, lack factual support, and should be dismissed.  Plaintiffs allege that Defendants Baliff and Miller knew that (1) Bristow had deficient internal controls over how it tracked helicopter components that were pledged as collateral; (2) this control deficiency caused a material breach of loan covenants and triggered the lender's right of acceleration; and (3) caused Bristow to reclassify its long-term debt to short-term debt.  This is a dubious theory of fraud, underscored by Plaintiffs' utter failure to explain why Baliff and Miller would knowingly allow Bristow to operate deficient internal controls that would sabotage its credit facilities and result in their own personal financial harm since they sold none of their own stock.  Without a plausible motive, Plaintiffs must plead specific facts showing that Defendants actually knew (or were severely reckless in not knowing) that the challenged statements were false when made.  They have not met that burden.

Plaintiffs say they have "t[ied] Defendants directly to the undisclosed material control deficiencies that lie at the heart of this case" (Opp'n 1), but they fail to plead one fact or identify one witness showing that senior executives like Baliff or Miller had any involvement in Bristow's maintenance procedures for tracking helicopter components, much less that either one knew these controls were materially deficient or violated debt covenants.  Plaintiffs cannot plead actual knowledge with such general allegations as Defendants were the architects of Bristow's liquidity strategy, were involved in the financing agreement negotiations, and understood that Bristow's aircraft would be pledged as collateral.  This provides no insight whatsoever into the alleged "heart of this case," that is, whether either Baliff or Miller knew that Bristow's internal controls over maintenance records were deficient and would trigger a material default in debt covenants and a debt reclassification.  Plaintiffs must allege a specific document or communication that a

1

Defendant saw, heard, or read that would demonstrate this knowledge.  They have not done so, and thus fail to plead a strong inference of scienter.

Plaintiffs also fail to sufficiently allege that Defendants' statements were false when made, except for the narrow allegation that Bristow misstated that it had adequate internal controls over financial reporting during the Class Period.  They contend that Bristow's internal control deficiencies caused the debt covenant violations and triggered the debt reclassification, but they do not—and cannot—plead sufficient facts to support this contention.  As Bristow explained in its SEC filings quoted in the CAC, it either timely cured its non-compliance with the equipment-tracking covenants or obtained waivers from lenders.  *See* Biles Decl. Ex. 9, Ex. 99.1 at 1 [2/19/19 Press Release].  Bristow further explained that GAAP required it to conduct a new going concern analysis on the date it filed the restated 2018 10-K (*i.e.*, June 19, 2019), and by then it had already filed for bankruptcy on May 11, 2019.  *See* Biles Supp. Decl. Ex. 17 at 80, Note 1 [2018 10-K/A] (explaining that Bristow reclassified its debt because it violated "going-concern" loan covenants— not because of "internal control" covenant violations.)  Because Plaintiffs have failed to plead specific facts to support their contention that Bristow's debt reclassification arose from internal control deficiencies, rather than from an updated going concern analysis, they have failed to adequately allege that Bristow's statements about its liquidity were false when made.  For these and other reasons set forth below, the Court should dismiss the CAC.

I.    **PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS TO RAISE THE NECESSARY STRONG INFERENCE OF SCIENTER**

A.    **Plaintiffs allege no plausible motive for fraud.**

Plaintiffs do not allege suspicious stock sales by insiders or other financial gain to explain why the Defendants would engage in the alleged self-destructive scheme.  Instead, they allege two generic motives that courts routinely hold do not plead scienter: 1) Bristow's need to obtain debt

financings secured by its helicopter fleet to remain solvent; and 2) the Defendants' desire to complete the Columbia acquisition.  Opp'n 21-22.

An executive's desire to maintain his company's solvency is too broad a motive to contribute to a strong inference of scienter.  *See, e.g.*, *Podraza v. Whiting*, 790 F.3d 828, 840–41 (8th Cir. 2015) ("Defendants' alleged desire to maintain [the Company's] survival in order to receive compensation does not present an unusual or heightened motive and does not support a strong inference of scienter."); *Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 184 (S.D.N.Y. 2012) (holding that, in the absence of stock sales, mere motive to see a company remain solvent was "ubiquitous in business" and "too generalized" to contribute to a strong inference of scienter).  Similarly, the Defendants' alleged desire to complete an acquisition is too vague and non-specific to plead scienter.  *See Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 544 (5th Cir. 2008) (holding that defendant's alleged motivation to allow company to continue to pursue an acquisition strategy was not sufficient to plead scienter).  Importantly, Plaintiffs have not pled any facts showing that Bristow concealed any potential issues from Columbia, Bristow's creditors, or any other party who actually had the ability to declare Bristow in default and trigger loan acceleration.

**B.      Plaintiffs allege no facts showing that any Defendant had actual knowledge of the alleged falsity of any statement.**

Having failed to plead a plausible motive for fraud, Plaintiffs must plead facts sufficient to infer that Defendants acted with severe recklessness or actual knowledge of falsity.  They fail to do this as well.  First, Plaintiffs argue that Defendants must have been aware of the material weakness in internal controls because the debt financings were important to Bristow, and because Miller said that the helicopters were identified "in the Debt Financings by their exact serial numbers."  Opp'n 15, n.18.  But the fact that Miller knew Bristow pledged its aircraft as collateral

3

under the debt financing agreements does not suggest or imply that he knew anything about the details of how Bristow tracked components that were repaired or replaced by its maintenance department. There are simply no facts pled suggesting that either Miller or Baliff knew that Bristow was not adequately tracking component parts as required under the loan covenants.  And given how quickly Bristow cured this equipment-tracking problem, and obtained waivers from its lenders, even if they had some knowledge of a tracking problem (which is *not* alleged), there are no facts suggesting that Miller or Baliff knew that the problem would result in a material breach that would trigger debt acceleration.  Courts routinely recognize that plaintiffs must do more than merely plead the general importance of the subject matter to establish scienter; otherwise, executives would be required to have complete recall of the minutiae of every contract, process or procedure important to the company.  *See In re Constellation Energy Grp., Inc., Sec. Litig.*, 738 F. Supp. 2d 614, 635 (D. Md. 2010) ("overall importance of liquidity to [defendant's] business is not sufficient on its own to raise a strong inference of scienter… In short, a general level of importance simply does not warrant imputing to the defendants knowledge of the subtleties of an automated program") (internal citations omitted).

Second, Plaintiffs argue that Defendants' repeated statements emphasizing the importance of the debt financings and demonstrating their detailed knowledge of the financing terms are similar to British Petroleum's ("BP") CEO's statements that he personally "took responsibility for BP's process safety efforts and was the key individual tracking that progress."  Opp'n  16 (citing *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 782-83 (S.D. Tex. 2012) (holding that the CEO's "own actions as the spokesperson and champion for BP's reform efforts weigh strongly in favor of the inference that [the CEO] paid special attention to BP's process safety efforts or, at the least, was reckless in not doing so while continuing to publicly tout improvements").  In fact, however,

4

the allegations establishing the scienter of BP's CEO stand in sharp contrast to the flimsy allegations pled here against Miller and Baliff.

In *In re BP p.l.c. Sec. Litig.*, plaintiffs provided a chronology of BP's "record of safety failures and catastrophic incidents," including numerous oils spills,[1] refinery explosions and rig blowouts. *Id.* at 724-26. Plaintiffs identified multiple internal and external investigations and reports that were highly critical of BP's safety procedures, including a report issued by former Secretary of State identifying numerous safety deficiencies and making ten recommendations for BP to implement expeditiously. *Id.* at 725. Plaintiffs alleged that BP received reports from the U.S. Department of Interior warning BP of the safety problems that caused the Deepwater Horizon explosion (*i.e.,* poor cement jobs[2] and inadequate blowout preventers). It is against this backdrop that BP's CEO made over eighteen statements touting BP's progress on improving the company's safety procedures when "BP was in fact implementing budget cuts and staff reductions in key areas impacting the company's ability to keep its professed commitment to safety." *Id.* at 735. Finally, plaintiffs identified various statements by BP's CEO following the Deepwater Horizon disaster admitting BP's failures. *Id.* at 783.

Unlike the avalanche of facts raising an inference of scienter against BP's CEO, there are no facts alleged here showing that either Miller or Baliff knew that Bristow had any problems with its internal controls over financial reporting, much less any problems with the aircraft component tracking controls that Plaintiffs assume caused the debt covenant violations. Plaintiffs do not allege any facts showing a history of internal control problems at Bristow or that Miller or Baliff made public statements touting Bristow's progress on improving internal controls. In short, this

---

[1] In fact, "BP pleaded guilty to criminal negligence in connection with the Prudhoe Bay spill and paid a fine of twenty-two million dollars." *Id.* at 724–25.

[2] Before the Horizon explosion, BP had a history of faulty cement jobs that caused rig blowouts. *Id.* at 755.

case is nothing like *In re BP p.l.c. Sec. Litig.*

Plaintiffs have likewise failed to plead that Defendants were aware of any actual loan covenant violations. As discussed in Section II, *infra*, the Company did not materially breach its loan covenants during the Class Period, but more importantly, Plaintiffs have not alleged any facts establishing that any Defendant knew or was severely reckless in not knowing that Bristow was materially breaching the loan agreements. For example, Plaintiffs do not point to any internal documents or witnesses showing that Defendants knew there was an alleged ongoing material breach. Thus, Plaintiffs have failed to plead a strong inference of scienter.

## II.      PLAINTIFFS FAIL TO ADEQUATELY PLEAD FALSITY

### A.      The Company's restatement is not an admission that the Company materially breached loan covenants.

Plaintiffs' Opposition reveals a fundamental misunderstanding of internal controls. Plaintiffs repeatedly conflate a material weakness in internal controls over loan covenant compliance with the actual question of whether Bristow materially breached its loan covenants. *See, e.g.*, Opp'n 12, 13, 14. This is not, as Plaintiffs' claim, a factual dispute—adequately pleading an admitted material weakness in controls does not raise a presumption that Bristow materially breached the loan covenants themselves. *See In re Magnum Hunter Res. Corp. Securities Litig.,* 26 F. Supp. 3d 278, 295 (S.D.N.Y. 2014) (holding that disclosure of material weakness did not "support an inference that its prior statements were materially false."); *Coronel v. Quanta Capital Holdings Ltd.*, 07 CIV. 1405 (RPP), 2009 WL 174656, at *15 (S.D.N.Y. Jan. 26, 2009) (holding that problems with internal controls was not evidence of underlying falsity).

Bristow plainly disclosed that it had insufficient controls surrounding its compliance with certain loan covenants relating to inventory tracking of helicopter parts pledged as collateral. But this disclosure does not mean the Company was ever in material breach of any loan covenants. As

6

an example, it is possible to have insufficient or even no controls to verify that a clock is keeping time correctly, but then to investigate the clock and determine that it indeed kept time perfectly. In this analogy, a Company would have to issue a restatement noting a material weakness in its clock-keeping controls, but this restatement would not be an admission that the clock failed to keep time correctly.  One does not automatically follow from the other.  Moreover, Plaintiffs quote Bristow's February 19, 2019 statement that "[at] this time, the Company is not aware of any non-compliance with the non-financial covenants in its secured financing and helicopter lease agreements that has not been waived or previously cured."  CAC ¶ 182.[3]

> **B.    The retroactive re-classification of the Company's debt was required by specific GAAP provisions, not because the debt was originally improperly classified.**

As part of a well-pleaded case, Plaintiffs bear the burden of alleging that the re-classified debt is an admission of falsity.  *See U.S. S.E.C. v. Pirate Inv'r LLC*, 580 F.3d 233, 239 (4th Cir. 2009).  They have failed to meet this burden too.  While it is true that most restatements are a *de facto* admission of prior falsity, that is not always the case.  Specifically, both the SEC and applicable accounting standards recognize a category of "subsequent events" that must be updated or reported in any financial statement—including information so important that, even if it occurred after the original reporting period, it must be included in an amended version so as not to mislead investors.  *See* Biles Supp. Decl. Ex. 18 [ASC 855-10-25-4 (Subsequent Events)]; Biles Supp. Decl. Ex. 19 [SEC Topic 13, Effects of Subsequent Events on Financial Statements Required in Filings, 13110.6 (2009)].

Bristow had declared bankruptcy in May 2019 prior to filing its amended financial statements in June 2019.  Thus, even though Bristow was solvent as of the original filing, it had to

---

[3] Plaintiffs also quote Bristow's April 15, 2019 statement that the "Company has obtained waivers of its covenants with its secured equipment financing lenders."  CAC ¶ 185.

conduct an updated going concern analysis for the amended filings—which triggered the debt reclassification. *See* Biles Supp. Decl. Ex. 17 at 80, Note 1 [2018 10-K/A].  This is why Bristow's debt reclassification was labeled an amendment, not a restatement. *Id.*  Plaintiffs argue that this is a fact issue that cannot be decided on a motion to dismiss (Opp'n 10–11), but  that misses the point.  In light of Bristow's detailed explanation that it reclassified its debt because it was in bankruptcy and violated "going concern" covenants, and not because of any internal control deficiencies, Plaintiffs must plead specific facts to support their counter-narrative. *See Langadinos v. Appalachian Sch. of Law*, No. 1:05CV00039, 2005 WL 2333460, at \*4 (W.D. Va. Sept. 25, 2005) ("[T]he court need not accept as true legal conclusions or unwarranted factual inferences. The court has an affirmative obligation to prevent factually unsupported claims from proceeding to trial. In addition, when the complaint contains detailed factual descriptions, the court is not required to ignore those facts where it appears beyond doubt that, even considering all inferences in the plaintiff's favor, they cannot support the plaintiff's claims.") (internal citations omitted). Plaintiffs fail to do this. [4]

### C.    It was not misleading for Miller or Baliff to "tout" Bristow's debt financings because the Company was not in material breach of those agreements at the time of the statements.

Plaintiffs have not sufficiently alleged that Bristow was in material breach of any loan covenant prior to insolvency.  Under the relevant agreements, the debt could not be accelerated until there was an Event of Default—which required a technical breach, a 30-day cure period, and no cure or waiver. *See* Defs.' MTD at 19.  Plaintiffs do not plead any facts showing that such an

---

[4] Plaintiffs cannot credibly base their fraud claim on the fact that a 10-K was amended but then wholly ignore what the 10-K actually disclosed: (1) "applicable accounting rules required the Company to make an updated assessment" of its going concern liquidity; (2) "the delivery of this Amended 10-K with a going concern qualification… constituted an event of default;" (3) this default "trigger[ed] cross-default and/or cross-acceleration provisions" in Bristow's debt agreements; and therefore (4) "all debt balances… should be reclassified from long-term to short-term." *See* Biles Supp. Decl. Ex. 17 at 80, Note 1 [2018 10-K/A].

Event of Default occurred prior to Bristow's bankruptcy filing. For example, Plaintiffs have not alleged—because they cannot—that Bristow was informed at any time by any of its creditors that it was in material breach of the loan covenants. This is because, as Bristow explained, it was the insolvency that first triggered a material violation and the acceleration of the loans.

## III.   PLAINTIFFS' ALLEGATIONS CONTAIN IMMATERIAL PUFFERY AND PROTECTED FORWARD-LOOKING STATEMENTS

### A.   Defendants' generally positive statements about its liquidity and the debt financings are corporate puffery.

Plaintiffs contend that Defendants' positive statements about liquidity and debt financings do not qualify as "corporate puffery" because they contained "concrete" facts concerning Bristow's existing debt financings. A company may still make positive statements about a "concrete" fact, such as a company's liquidity or debt, that amount to corporate puffery. *See Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 731 (5th Cir. 2019) (holding that a number of alleged misstatements concerning the company's existing safety processes and procedures were non-actionable "corporate cheerleading".) The same holds true here—Defendants' positive statements about Bristow's debt financing agreements providing "financial flexibility" and "strong liquidity" are the type of corporate puffery that are immaterial as a matter of law. CAC ¶¶ 85, 88; *Plains All Am. Pipeline, L.P.*, 777 F. App'x at 731.

### B.   Defendants' statements concerning its "liquidity runway" are classic forward-looking statements protected by the PSLRA's safe harbor provision.

Finally, Plaintiffs argue that the liquidity runway statements are retrospective because they referenced Bristow's existing debt financings, which had already been completed. Opp'n 13. They are wrong. For example, if the manager of a baseball team says that the team has the right players to win the World Series, then he made a forward-looking statement because it depends on the future performance of the existing players. Similarly, Defendants were not merely describing

9

the existence of the financings, but also their forward-looking opinion that these financings would successfully enable the Company to meet its future cash demands, which, of course, depends on Bristow's future revenues, collections, and expenses. These are classic forward-looking statements that Bristow made in the context of fully-disclosed, ongoing liquidity challenges and detailed cautionary language. *See* Defs.' MTD at 24; *see also In re Fairway Grp. Holdings Corp. Securities Litig.,* 14 CIV. 0950 LAK AJP, 2015 WL 4931357, at *13 (S.D.N.Y. Aug. 19, 2015), report and recommendation adopted, 14 CIV. 0950 LAK AJP, 2015 WL 5255469 (S.D.N.Y. Sept. 9, 2015) (holding that defendant's statements about its growth "runway" were immaterial puffery).

## CONCLUSION

Plaintiffs' securities fraud claims are premised on the unsupported contention that Bristow's failure to properly track helicopter components triggered a material default of loan covenants and the debt reclassification. Plaintiffs' failure to plead sufficient facts to support this contention is not surprising because that's not what happened and that's not what Bristow disclosed. Bristow either timely cured these problems or obtained waivers from its lenders. The Court should dismiss the CAC because Plaintiffs have failed to plead sufficient facts to show that the challenged statements were false when made, much less that Defendants made the statements with an intent to defraud or deceive.

10

Dated: March 19, 2020                    Respectfully submitted,


                                         **KING & SPALDING LLP**

                                         By: */s/ Paul R. Bessette*
                                              Paul R. Bessette
                                              Attorney-in-Charge
                                              Texas Bar No. 02263050
                                              S.D. Tex. Bar No. 22453
                                              Michael J. Biles
                                              Texas Bar No. 24008578
                                              S.D. Tex. Bar No. 23146
                                              Tyler W. Highful
                                              Texas Bar No. 24083176
                                              S.D. Tex. Bar No. 2897159
                                              Jessica England
                                              Texas Bar No.  24105841
                                              S.D. Tex. Bar No. 3380633
                                              500 W. 2nd Street, Suite 1800
                                              Austin, Texas 78701
                                              (512) 457-2000
                                              (512) 457-2100 (Fax)
                                              pbessette@kslaw.com
                                              mbiles@kslaw.com
                                              thighful@kslaw.com
                                              jengland@kslaw.com

                                         *Counsel for Defendants*
                                         *Jonathan E. Baliff and L. Don Miller*

11

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 19, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System on all parties in this case.

*/s/Paul R. Bessette*
Paul R. Bessette

12