# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

IN RE BRISTOW GROUP INC.
SECURITIES LITIGATION

Case No. 4:19-cv-00509 (KPE)

**UNOPPOSED MOTION & MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR: (I) PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT; (II) CERTIFICATION OF THE SETTLEMENT CLASS; AND (III)
APPROVAL OF NOTICE OF THE SETTLEMENT**

**SUSMAN GODFREY LLP**
Barry Barnett
Michael C. Kelso
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
bbarnett@susmangodfrey.com
mkelso@susmangodfrey.com

**KIRBY McINERNEY LLP**
Ira M. Press (admitted *pro hac vice*)
Thomas W. Elrod (admitted *pro hac vice*)
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: (212) 371-6600
ipress@kmllp.com
telrod@kmllp.com

*Lead Counsel for Plaintiffs*

## TABLE OF CONTENTS

I.      SUMMARY OF THE ARGUMENT ................................................................. 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ......................................... 4

III.    STATEMENT OF THE ISSUES .................................................................... 6

IV.     ARGUMENT .................................................................................................. 6

    A.    The Proposed Settlement Warrants Preliminary Approval ............................... 6

        1.    Standards Governing Approval of Class Action Settlements .......................... 6

        2.    The Court "Will Likely Be Able to" Approve the Proposed Settlement .......... 8

            a.    The Procedural Requirements are Satisfied ......................................... 8

            b.    The Substantive Requirements Are Satisfied .................................... 10

        3.    The Opinions of Lead Counsel and Plaintiffs Warrant Approval ................... 17

    B.    The Court Should Certify the Settlement Class ............................................. 18

        1.    Numerosity .................................................................................................. 19

        2.    Commonality ................................................................................................ 20

        3.    Typicality .................................................................................................... 21

        4.    Adequacy .................................................................................................... 21

        5.    The Proposed Class Satisfies the Requirements of Rule 23(b)(3) ................. 22

            a.    Common Questions Predominate ...................................................... 22

            b.    The Class Action Is Superior to Other Methods of Adjudication ....... 23

    C.    The Court Should Approve the Proposed Class Notice ................................. 23

V.      PROPOSED SETTLEMENT SCHEDULE ................................................... 25

VI.     CONCLUSION ............................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) .......................................................................11

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997)…..................................................................18, 21, 22

*In re Anadarko Petroleum Corp.*,
No. 12 Civ. 00900, 2014 WL 12599393 (S.D. Tex. Sept. 11, 2014)........................................24

*Aron v. Crestwood Midstream Partners LP*,
No. 15 Civ. 01367, 2016 U.S. Dist. LEXIS 152427 (S.D. Tex. Oct. 14, 2016). ........................6

*Buettgen v. Harless*,
No. 09 Civ. 00791, 2013 WL 12303143 (N.D. Tex. Nov. 13, 2013) ........................................13

*Campton v. Ignite Rest. Grp., Inc.*,
No. 12 Civ. 2196, 2015 WL 12766537 (S.D. Tex. June 5, 2015) ...........................................16

*Carlton v. Cannon*,
No. 15 Civ. 00012 slip op. (S.D. Tex. June 7, 2017).....................................…………..16

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)....................................................................13

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
424 F. Supp. 3d 456 (E.D. La. 2020) ...................................................................7

*In re China Med. Corp. Sec. Litig.*,
No. 11 Civ. 1061, 2014 WL 12581781 (C.D. Cal. Jan. 7, 2014)..............................................10

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ...............................................................6, 14

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) ...................................................................11, 19

*Del Carmen v. R.A. Rogers, Inc.*,
No. 16 Civ. 971, 2018 WL 4701824 (W.D. Tex. Apr. 25, 2018)..............................................7

*In re Dell Inc., Sec. Litig.*,
No. 06 Civ. 726, 2010 WL 2371834 (W.D. Tex. June 11, 2010)..............................................17

*In re Dynegy, Inc. Sec. Litig.*,

226 F.R.D. 263 (S.D. Tex. 2005) ............................................................21

*Eisen v. Carlisle & Jacqueline*,
417 U.S. 156 (1974) ..............................................................................25

*In re Elec. Data Sys. Corp. Sec. Litig.*,
226 F.R.D. 559 (E.D. Tex.) ..............................................................20, 21

*In re Enron Sec. and ERISA Litig.*,
No. 01 Civ. 3624, 2003 WL 22494413 (S.D. Tex. July 24, 2003) ...........................18

*Erica P. John Fund, Inc. v. Halliburton Co.*,
No. 02 Civ. 1152, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ...........................10

*Feder v. Elec. Data Sys. Corp.*,
429 F.3d 125 (5th Cir. 2005) .................................................................20

*In re FirstPlus Fin. Grp., Inc., Sec. Litig.*,
No. 98 Civ. 2551, 2002 WL 31415951 (N.D. Tex. Oct. 28, 2002) ....................20, 21

*Forbush v. J.C. Penney Co.*,
994 F.2d 1101 (5th Cir. 1993) ...............................................................20

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ..............................................................................21

*Guevoura Fund Ltd. v. Sillerman*,
No. 15 Civ. 07192, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ...........................11

*In re HealthSouth Corp. Ec. Litig.*,
334 F. App'x 248 (11th Cir. 2009). .........................................................16

*In re Heartland Payment Sys., Inc., Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) ......................................................9

*In re Katrina Canal Breaches Litig.*,
628 F.3d 185, 197 (5th Cir. 2010) ..........................................................23

*Marcus v. J.C. Penney Co., Inc.*,
No 13 Civ. 736, 2017 WL 6590976 (E.D. Tex. Dec. 18, 2017) .............................17

*Miller v. Glob. Geophysical Servs.*,
No. 14 Civ. 0708, 2016 WL 11645372 (S.D. Tex. Jan. 14, 2016) .........................16

*Mullen v. Treasure Chest Casino, LLC*,
186 F.3d 620 (5th Cir. 1999) ......................................................19, 20, 23

iii

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016) ........................................................16

*In re OCA, Inc. Sec. & Deriv. Litig.*,
   No. 05 Civ. 2165, 2008 WL 4681369 (E.D. La. Oct. 17, 2008)................14

*ODonnell v. Harris County*,
   No. 16 Civ. 1414, 2019 WL 6219933 (S.D. Tex. Nov. 21, 2019)............11

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983). .......................................................... *passim*

*Rodriguez v. Stage 3 Separation, LLC*,
   No. 14 Civ. 00603, 2015 WL 12866212 (W.D. Tex. Dec. 23, 2015)........10

*Schwartz v. TXU Corp.*,
   No. 02 Civ. 2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)............10, 18, 24

*Scott v. Cap. Fin. Servs., Inc.*,
   277 F.R.D. 316 (N.D. Tex. 2011) ........................................................12

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 16 Civ. 06728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ............9

*Slipchenko v. Brunel Energy, Inc.*,
   No. 11 Civ. 1465, 2015 WL 338358 (S.D. Tex. Jan. 23, 2015) ................11

*Sosna v. Iowa*,
   419 U.S. 393, 403 (1975)........................................................................21

*Turner v. Murphy Oil USA, Inc.*,
   472 F. Supp. 2d 830 (E.D. La. 2007) ....................................................18

*In re Universal Access, Inc. Sec. Litig.*,
   209 F.R.D. 379 (E.D. Tex. 2002)..........................................................21

*In re Waste Mgmt. Sec. Litig.*,
   No. 99 Civ. 2183, 2002 WL 35644013 (S.D. Tex. May 10, 2002) ..........17

*In re Willbros Grp., Inc. Sec. Litig.*,
   407 F. Supp. 3d 689 (S.D. Tex. 2018) ..................................................16

*Zeidman v. J. Ray McDermott & Co.*,
   651 F.2d 1030 (5th Cir. 1981) ..............................................................19

**Rules**

Fed. R. Civ. P. 23 .................................................................................................. *passim*

15 U.S.C. §§78 ............................................................................................5, 12, 17, 24

Court-appointed Lead Plaintiffs[1] Andrew Abernathey, Jay Abernathey, Guy Abernathey and Meridian Investments I, LLC (collectively "Plaintiffs"), on behalf of themselves and the Settlement Class,[2] respectfully submit this unopposed motion pursuant to Rule 23(e) of the Federal Rules of Civil Procedure seeking: (i) preliminary approval of the proposed Settlement as set forth in the Stipulation and Agreement of Settlement dated January 27, 2021 (the "Stipulation"); (ii) certification of the Class for settlement purposes; (iii) approval of the proposed form and manner of giving notice of the Settlement to the Class; (iv) appointment of Angeion Group ("Angeion") as Claims Administrator; and (v) a hearing date for the Court to consider: (a) final approval of the Settlement; (b) approval of the proposed Plan of Allocation; and (c) Lead Counsel's application for an award of attorneys' fees and expenses and Plaintiffs' request for a service award.

## I.     SUMMARY OF THE ARGUMENT

The Parties have reached an agreement to settle this Action in exchange for a $6,250,000 cash payment (the "Settlement Amount") to be made for the benefit of the Settlement Class in exchange for the dismissal of all claims against Defendants Jonathan Baliff and L. Don Miller (collectively, "Defendants" or "Settling Persons").[3]  This is an excellent result for the Settlement

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated January 27, 2021 (the "Stipulation"), filed concurrently herewith as Exhibit 1 to the Declaration of Barry Barnett in Support of Plaintiffs' Unopposed Motion for: (I) Preliminary Approval of Class Action Settlement; (II) Certification of the Settlement Class; and (III) Approval of Notice of the Settlement ("Barnett Decl."). "Ex." refers to exhibits in the Barnett Decl.

[2] As defined in ¶1(tt) of the Stipulation, the "Settlement Class" is defined as all Persons or entities who, between February 8, 2018 and February 12, 2019, inclusive, purchased or otherwise acquired Bristow Group, Inc.'s ("Bristow" or the "Company") common stock and were damaged thereby. Excluded from the Settlement Class are the: Settling Persons; members of the Settling Persons' Immediate Families; the Settling Persons' legal representatives, heirs, executors, administrators, predecessors, successors, assignees or assigns, and any entity in which they have or had a controlling interest; any trust of which any Settling Person is the settlor or which is for the benefit of any Settling Person and/or member(s) of his or her family; Defendants' liability insurance carriers; and the current and former officers and directors of the Company.  Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court. *See* Ex. 1.

[3] The Settlement provides that Defendants will pay or cause to be paid $6,250,000 in cash into an interest-bearing escrow account for the Settlement Class.

Class, and it is both substantively and procedurally fair.  Accordingly, Plaintiffs respectfully move this Court for preliminary approval of the proposed Settlement.

Substantively, the Settlement is an extraordinary result for the Settlement Class.  Plaintiffs' damages expert estimates that if Plaintiffs overcame *all* of the obstacles to establishing liability, and completely prevailed on *all* of their loss causation and damages theories, the total *maximum* damages *potentially* available in this Action would be approximately $36 million.  The $6.25 million settlement thus represents 17.36% of Plaintiffs' total potential damages and falls well within the range of reasonableness as it is above the median recovery for percentage of damages of cases of this size.  *See* Ex. 5 (Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements 2019 Review and Analysis*, Cornerstone Research ("Cornerstone Research") at p. 6 Figure 5 (reporting median recoveries of approximately 9.2% of estimated damages in cases alleging between $25-$74 million in damages, and a median recovery of 4.8% overall in securities class actions)).  The Settlement also provides a substantial benefit to the Settlement Class as it avoids the risks of prosecuting this Action through discovery and a decision on summary judgment, trial, and the inevitable post-trial appeals, as well as the obstacles Plaintiffs would have to clear in order to obtain class certification under the standards applicable in the Fifth Circuit Court of Appeals.  The Settlement also avoids the significant time and expense, including the conservation of judicial resources, that would result from continued litigation of this complex securities action.

In terms of procedural fairness, the Settlement was only reached after hard-fought, arm's-length negotiations between the Parties and is the result of a mediator's recommendation.  Indeed, prior to reaching the Settlement, Plaintiffs' Counsel, among other things: (i) conducted a comprehensive investigation into the allegedly wrongful acts, which included, *inter alia*, a review and analysis of Bristow's regulatory filings with the U.S. Securities and Exchange Commission,

press releases and media reports issued and disseminated by Bristow and Defendants, a review of other publicly available information concerning Bristow including reports on Bristow authored by securities analysts and filings made by and/or concerning Bristow in Bristow's bankruptcy, and consultation with accounting, market efficiency, and loss causation and damages experts; (ii) drafted the Consolidated Amended Class Action Complaint for violation of the Federal Securities Laws (the "CAC" or "Operative Complaint"); (iii) engaged in adversarial motion practice in Bristow's bankruptcy proceedings to challenge the provisions of Bristow's proposed bankruptcy plan that sought to release claims against all Defendants and successfully opposed such attempts and preserved claims against Defendants in this Action; (iv) engaged in voluminous briefing related to Defendants' motions to dismiss; (v) pursued fact discovery including serving discovery requests; (vi) drafted and exchanged a detailed mediation statement attaching relevant exhibits and addressing both liability and damages; (vii) participated in a full-day virtual Zoom mediation session before Jed D. Melnick, Esq., of JAMS; (viii) engaged in negotiations regarding the terms of the proposed Settlement; (ix) worked with Plaintiffs' damages expert to craft a plan of allocation that treats Plaintiffs and all other members of the proposed Settlement Class fairly; and (x) conducted confirmatory discovery by reviewing non-public Bristow documents and interviewing Bristow's former Chief Financial Officer (and later Chief Executive Officer), Defendant Miller. The Settlement is the result of arm's-length negotiations, conducted by informed and experienced counsel, and does not favor Plaintiffs over other Settlement Class Members.

Plaintiffs and Lead Counsel believe that the proposed Settlement meets the standards for preliminary approval and is in the best interests of the putative Class. As such, Plaintiffs respectfully request that the Court grant preliminary approval. Defendants do not oppose Plaintiffs' request.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

The first of the putative securities-fraud class actions was filed in this Court on February 14, 2019, against Bristow, Baliff and Miller.  ECF No. 1.  The second of the putative securities-fraud class actions was filed on March 21, 2019, against the same Defendants.  *See Lilienfeld v. Bristow Group, Inc.*, Case 4:19-cv-01064 (S.D. Tex. Mar. 21, 2019) (ECF No. 1).  On May 11, 2019, the Company filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas.  *See In re Bristow Group Inc., et al.*, No. 19-32713 (DRJ) (Bankr. S.D. Tex.); *see also* ECF No. 28.  Pursuant to the automatic bankruptcy stay, all claims against Bristow were stayed at that point.

On May 14, 2019, after full briefing, the Court appointed Plaintiffs as Lead Plaintiffs and appointed the law firms of  Kirby McInerney LLP and Susman Godfrey LLP as Lead Counsel for the putative class.  ECF No. 29.

In connection with Bristow's bankruptcy proceedings, a bankruptcy plan was proposed on or about August 1, 2019 (and further amended on or about August 20, 2019) that, if approved, would have released all claims against Bristow, as well as Defendants Baliff and Miller.  *See* Bankr. Dkt. Nos. 498, 574.  On September 23, 2019, Plaintiffs filed an objection to the amended bankruptcy plan that provided for, *inter alia*, broad releases of Bristow's current and former directors and officers (as well as numerous other third-parties).  Bankr. Dkt. No. 693.  Following a hearing on or about October 3, 2019, Plaintiffs successfully preserved claims against Defendants and pursuant to the "Order (i) Approving the Disclosure Statement, (ii) Confirming the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Debtor Affiliates, as Further Modified and (iii) Granting Related Relief," only claims against the Defendants were excluded from the third-party releases. *See* Bankr. Dkt. No. 825 at ¶ 40.  Further, liability was restricted to amounts covered by available D&O Policy limits.  *Id.*

4

On November 4, 2019, Plaintiffs filed and served their CAC (ECF No. 34). The CAC asserted claims against Defendants under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder, alleging that Defendants made false and/or materially misleading statements concerning Bristow's internal controls relating to non-financial covenants, which inflated the price of Bristow publicly traded common stock. On January 3, 2020, Defendants filed a motion to dismiss the CAC which Plaintiffs opposed on February 18, 2020 and Defendants filed a reply brief in further support of their motion on March 19, 2020. ECF Nos. 36-37, 40,42. The Court denied Defendants' motion to dismiss on May 22, 2020, following oral argument.

In July of 2020, after Plaintiffs began fact discovery, the Parties agreed to mediation to attempt to reach a resolution of the Action. In preparation for the mediation, the Parties exchanged detailed mediation statements and participated in a full-day virtual Zoom mediation session on October 15, 2020 with Mr. Melnick which ended without an agreement being reached. After continued negotiation, the Parties engaged in additional discussions facilitated by Mr. Melnick, which ultimately culminated in him issuing a mediator's recommendation that the Action be settled for $6,250,000, which the Parties accepted. The Parties also agreed to a process of informal discovery that would allow Lead Counsel to conduct due diligence and confirm that the proposed Settlement is fair, reasonable and adequate. The Parties subsequently negotiated the full terms of the Settlement and memorialized them in the Stipulation. At the time of the Settlement, Lead Counsel had developed a well-developed understanding of the strengths, weaknesses and risks of the claims asserted in the Action. Based upon this investigation, Plaintiffs and Lead Counsel have concluded that the terms and conditions of the Stipulation are fair, reasonable and adequate to Plaintiffs and the Settlement Class.

### III.   STATEMENT OF THE ISSUES

The issues to be decided in this motion are:

1.   Should the Court grant preliminary approval of the Parties' proposed Settlement as set forth in the Stipulation?

2.   Should the Court certify the Class for settlement purposes?

3.   Should the Court approve Plaintiffs' proposed form and manner of providing notice of the Settlement to Class Members?

4.   Should the Court appoint Angeion as Claims Administrator?

5.   Should the Court set a hearing date to consider: (a) final Settlement approval, (b) approval of the proposed Plan of Allocation; (c) Lead Counsel's application for attorneys' fees and expenses; and (d) Plaintiffs' applications for service awards?

Plaintiffs respectfully submit that all of the above questions should be answered in the affirmative.

### IV.   ARGUMENT

####    A.   <u>The Proposed Settlement Warrants Preliminary Approval</u>

#####    1.   Standards Governing Approval of Class Action Settlements

The Fifth Circuit recognizes a prevailing public policy in favor of class action settlements, especially in complex class actions such as this. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (finding "an overriding public interest in favor of settlement," because class actions "have a well-deserved reputation as being most complex."). This Circuit's preference for class action settlements has been recognized and approved by the Court because settlement favorably reduces "[t]he time and cost of further litigation[.]" *Aron v. Crestwood Midstream Partners LP*, No. 15 Civ. 01367, 2016 U.S. Dist. LEXIS 152427, at *10-11 (S.D. Tex. Oct. 14, 2016).[4]

Rule 23(e) states that class claims may only be settled or compromised with judicial

---

[4] Attached as Ex. 6 to the Barnett Declaration is a compendium of unpublished cases cited herein pursuant to Court procedure 6.B.

approval. *See* Fed. R. Civ. P. 23(e). Judicial approval of a class action settlement is a two-step process. First, the Court performs a preliminary review of the terms of the proposed settlement to determine the fairness of the terms and whether notice should be sent to the proposed class. *See* Fed. R. Civ. P. 23(e)(1). Second, after notice is provided and a hearing held, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2); *Del Carmen v. R.A. Rogers, Inc.*, No. 16 Civ. 971, 2018 WL 4701824, at *5 (W.D. Tex. Apr. 25, 2018), *adopted by* 2018 WL 4688774 (W.D. Tex. June 13, 2018) (finding class action approval requires "preliminary approval and a subsequent final approval after a fairness hearing."). Preliminary approval should be granted where parties show that the court "will likely be able to": (i) finally approve the settlement under Rule 23(e)(2); and (ii) certify the proposed class. *See* Fed. R. Civ. P. 23(e)(1)(B).

When considering final approval, courts are required to analyze the following factors of Rule 23(e)(2) to determine if the proposed settlement is fair, reasonable, and adequate:

> A.  have the class representatives and class counsel adequately represented the class;
> B.  was the proposed settlement negotiated at arm's length;
> C.  is the relief provided for the class adequate, taking into account:
>> i.   the costs, risks, and delay of trial and appeal;
>> ii.  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> iii. the terms of any proposed award of attorneys' fees, including timing of payment; and
>> iv. any agreement required to be identified under Rule 23(e)(3);
> D.  does the proposal treat class members equitably relative to each other.

The four factors set forth in Rule 23(e)(2) are intended to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to 2018 Amendments. Therefore, factors (A) and (B) identify procedural concerns to consider, while factors (C) and (D) are focused on the substantive review of the proposed settlement. *Id.* However, these factors are not intended to "displace" other factors previously adopted by the courts. *See In re Chinese-Manufactured Drywall Prods. Liab.*

7

*Litig.*, 424 F. Supp. 3d 456, 485 (E.D. La. 2020) (stating the purpose of Rule 23(e)(2) is to provide

guidance and not displace circuit court factors). The Court should also consider the Fifth Circuit's

long-standing approval factors (the *Reed* factors), which complement the Rule 23(e)(2) factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity,
> expense, and likely duration of the litigation; (3) the stage of the proceedings and
> the amount of discovery completed; (4) the probability of plaintiffs' success on the
> merits; (5) the range of possible recovery; and (6) the opinions of class counsel,
> class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). As set forth below, the proposed

Settlement satisfies the criteria for preliminary approval under the Rule 23(e)(2) factors, as well

as the relevant, non-duplicative *Reed* factors applied in this Circuit.

## 2. The Court "Will Likely Be Able to" Approve the Proposed Settlement

### a. The Procedural Requirements are Satisfied

The "procedural" requirements of Rule 23(e)(2) concern the adequacy of the Class's

representation of absent Class Members and whether the proposed settlement resulted from arm's-

length negotiations. Fed. R. Civ. P. 23(e)(2)(A)–(B). Among other things, courts consider

"whether counsel negotiating on behalf of the class had an adequate information base" and whether

"a neutral or court-affiliated mediator" facilitated the negotiations, so as to "protect and further the

class interests." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Here,

the diligent representation by the Plaintiffs and Lead Counsel led to an arms-length mediation

before a neutral arbiter, culminating in a procedurally fair resolution on behalf of the Class.

### (1) Adequacy of Class Representative & Class Counsel

Plaintiffs and Lead Counsel have well-represented the interests of the Class. Plaintiffs

demonstrated their adequacy by moving for appointment as Lead Plaintiffs so that they could seek

to maximize recovery on behalf of a class of similarly-situated individuals. "'Where plaintiffs and

class members share the common goal of maximizing recovery, there is no conflict'" between

representatives and absent class members.  *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16 Civ. 06728, 2020 WL 4196468, at *2 (S.D.N.Y. July 21, 2020).  Plaintiffs also adequately represented the Class by selecting counsel that is highly experienced in litigating securities and other complex class actions.  *See* Exs. 2-3.

Lead Counsel also adequately protected the Class's interest by, *inter alia*, performing an exhaustive investigation of all publicly available documents concerning Bristow and Plaintiffs' claims, filing the Operative Complaint, successfully briefing and arguing an opposition to Defendants' motion to dismiss the CAC, preparing a mediation statement, filing briefs in bankruptcy court to prevent the entry of a bankruptcy plan that would have released all of the claims in this Action, engaging in a full-day meditation and multiple follow up negotiations with Defendants and Mr. Melnick, conducting confirmatory discovery, and preparing initial versions of the Stipulation and exhibits.  Lead Counsel have demonstrated that "they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses[.]"  *In re Heartland Payment Sys., Inc., Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1067 (S.D. Tex. 2012); *see also Reed*, 703 F.2d at 172 (the third *Reed* factor assesses "the stage of the proceedings and the amount of discovery completed.").  Thus, Lead Counsel's conduct adequately protected the Class and supports approval of the Settlement.

### (2)    Arm's-Length Negotiations

The proposed settlement is the product of arm's-length negotiations between Plaintiffs and the Defendants, facilitated by Mr. Melnick of JAMS, an experienced mediator with considerable knowledge and expertise in the field of securities class actions.  Arriving at a favorable Settlement through the perspective, experience, and knowledge of a third-party neutral satisfies Rule

23(e)(2)(B) and the first *Reed* factor to establish that there was no "fraud or collusion behind the settlement." *Reed*, 703 F.2d at 172.[5]

The Parties' negotiations included a full-day mediation before Mr. Melnick on October 15, 2020. Prior to this mediation, Lead Counsel and Defendants exchanged detailed mediation statements articulating the strengths, weaknesses, and risks of their respective positions, along with supporting exhibits. Further reinforcing the arms' length nature of the negotiations, the October 2020 mediation ended without settlement. Negotiations continued with Mr. Melnick's assistance, and the Parties ultimately agreed to the mediator's proposal to resolve the Action for $6,250,000 in cash. Plaintiffs' negotiation efforts weigh in favor of settlement approval. *Rodriguez v. Stage 3 Separation, LLC*, No. 14 Civ. 00603, 2015 WL 12866212, at *3 (W.D. Tex. Dec. 23, 2015) (no collusion when "parties attest that they 'engaged in arm's-length and extended settlement negotiations, including a full-day mediation.'").

### b.  The Substantive Requirements Are Satisfied

The "substantive" requirements for preliminary approval test the adequacy of the relief provided for the Class and whether the proposal "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)–(D). Here, the Settlement provides a highly favorable result for the class, given the considerable risks posed by further litigation. Moreover, Lead Counsel, with the assistance of a damages consultant, have proposed a plan for allocating the Settlement proceeds to ensure equitable treatment among Class Members relative to their respective losses.

---

[5] *See also Erica P. John Fund, Inc. v. Halliburton Co.*, No. 02 Civ. 1152, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) ("presence of a neutral mediator" is a factor "weighing in favor of a finding of non-collusiveness."); *In re China Med. Corp. Sec. Litig.*, No. 11 Civ. 1061, 2014 WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014) ("Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive."); *Schwartz v. TXU Corp.*, No. 02 Civ. 2243-K, 2005 WL 3148350, at * 21 (N.D. Tex. Nov. 8, 2005) (finding no collusion in an arm's length negotiation involving a highly regarded mediator, experienced counsel with experts assessing the validity of the allegations).

### (1)    The Settlement Amount Provides "Adequate" Relief
### Considering Costs, Risks, and Delay of Trial and Appeal

A key factor in deciding whether the Court should grant approval is "whether the settlement's terms fall within a reasonable range, given the likelihood of the plaintiffs' success on the merits." *Slipchenko v. Brunel Energy, Inc.*, No. 11 Civ. 1465, 2015 WL 338358, *11 (S.D. Tex. Jan. 23, 2015). The second, fourth, and fifth *Reed* factors consider "the complexity, expense, and likely duration of the litigation," the "probability of plaintiffs' success on the merits," and "the range of possible recovery." *Reed*, 703 F.2d at 172. To evaluate the probability of success "the Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007). Substantive adequacy, whether assessed through Rule 23(e)(2)(C) or the *Reed* factors, "strongly favors approving [a] proposed [] settlement agreement." *ODonnell v. Harris County*, No. 16 Civ. 1414, 2019 WL 6219933, at *13 (S.D. Tex. Nov. 21, 2019).

First, the second *Reed* factor, "the complexity, expense, and likely duration of the litigation," favors settlement because continued litigation through trial doubtless inheres additional complexity, cost and time. "Securities class actions are notoriously complex" and "expensive to litigate." *Guevoura Fund Ltd. v. Sillerman*, No. 15 Civ. 07192, 2019 WL 6889901, at *7 (S.D.N.Y. Dec. 18, 2019) (internal quotation marks and citation omitted). Indeed, a successful "securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 253 (5th Cir. 2009). This Action is no different. Defendants have vigorously challenged the Plaintiffs' claims at each stage of this litigation. Absent settlement, Plaintiffs and Defendants are certain to face even more extensive, risky and costly litigation.

Indeed, even though Plaintiffs prevailed at the motion to dismiss stage and began pursuing

fact discovery, Plaintiffs would have faced numerous hurdles, including at the class certification stage, during completion of fact and expert discovery, at summary judgment, at trial, and in subsequent appeals. These would have been significant hurdles, would have undoubtedly taken years to complete, and entailed the considerable risk that continued pursuit of the Action could have resulted in a substantially smaller recovery or no recovery at all.

Second, the fourth *Reed* factor, "probability of plaintiffs' success on the merits," favors settlement because although Plaintiffs and Lead Counsel are confident in their merits arguments to date, and those they would have made in the future, success is never guaranteed. *See, e.g., Scott v. Cap. Fin. Servs., Inc.*, 277 F.R.D. 316, 343 (N.D. Tex. 2011) ("Securities claims are difficult to prove, and without agreeing to a settlement, Plaintiffs no doubt face unpredictable and significant delays and expense in prosecuting this case."). As in every complex case of this kind, Plaintiffs faced formidable obstacles to recovery at trial, both with respect to liability and damages. The principal claims are based upon §§10(b) and 20(a) of the Exchange Act. Plaintiffs allege that during the Settlement Class Period, Defendants made materially false and misleading statements or omitted material information relevant to investors concerning Bristow's internal controls, debt levels, liquidity, financial condition and prospects, and other non-financial covenants that artificially inflated Bristow's stock price and that when the truth was eventually disclosed, it resulted in substantial damages to the Settlement Class.

Though Plaintiffs believe they would be successful and the allegations of the CAC would ultimately be borne out by the evidence, they also recognize that they faced significant hurdles to proving liability at trial. Defendants have argued, and no doubt would have continued to argue, that liability was unwarranted because they made no false and/or misleading statements or omissions during the Settlement Class Period. Defendants would also continue to contest scienter,

12

claiming that any alleged false or misleading statements made by Defendants were without fraudulent intent. Although Plaintiffs are confident that they would have been able to support their claims with qualified and persuasive documentary evidence and fact and expert deposition testimony, jury reactions to competing experts are inherently difficult to predict, and Defendants would have presented highly experienced experts to support their various defenses to liability.

Even if Plaintiffs were successful in establishing liability at trial, they faced substantial risks in proving loss causation and damages. Defendants would have argued that any losses suffered by Settlement Class Members on their investments were not attributable to the allegedly corrective disclosures but caused by market or industry factors unrelated to the allegations. Risks like these militate in favor of settlement because "there is no way of predicting which interpretations, inferences or testimony a jury would accept." *Buettgen v. Harless*, No. 09 Civ. 00791, 2013 WL 12303143, at *8 (N.D. Tex. Nov. 13, 2013). Even on the best facts, loss causation and damages issues are often an unpredictable and expensive "battle of the experts." *See In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001). Thus, in the absence of a settlement, there was a very real risk that the Settlement Class would have recovered significantly less than the total settlement amount – or even nothing at all. The payment of $6,250,000, particularly when viewed in the context of the significant risks and uncertainties involved in proving both liability and damages, weighs strongly in favor of approving the Settlement.

Third, the fifth *Reed* factor, "the range of possible recovery" favors settlement because the settlement would provide an immediate cash recovery of $6,250,000. Such a result is well-within the range of reasonableness warranting preliminary approval of the settlement and issuing notice to the Class. Plaintiffs' damages expert estimates that if Plaintiffs fully prevailed on each of the claims against Defendants at both summary judgment and trial, and if the Court and jury were to

accept Plaintiffs' damages theory (including proof of loss causation, an issue Defendants challenged in their motion to dismiss) on the alleged corrective disclosures, the maximum estimated theoretical damages would be approximately $36 million.  Such damages would be recoverable only in the best of all scenarios.

Nevertheless, Rule 23(e)(2)(C) neither contemplates nor requires the Court to "justify each term of settlement against a hypothetical or speculative measure."  *Cotton*, 559 F.2d at 1330. Under Plaintiffs' estimated best-case scenario, assuming that 100% of the Settlement Class Members file a valid Proof of Claim and no confounding variables, the Settlement represents approximately a 17.36% recovery.  Such a recovery ratio is well above the national average.  *See* Ex. 5 (Cornerstone Research, at p. 6 Figure 5 (reporting median recoveries of approximately 9.2% of estimated damages in cases alleging between $25-$74 million in damages, and a median recovery of 4.8% overall in securities class actions)); *id.* at p. 20 (Appendix 3) (reporting median recovery of settlements in the 5th Circuit from 2010-19 were 4.5% of estimated damages in cases alleging Rule 10b-5 claims); Ex. 4 (Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review*, NERA Economic Consulting, Feb. 12, 2020, at 18 (finding median settlement between 1996 and 2019 in securities cases with investor losses between $20 million and $49 million recovered 8% of investor losses)).

The Settlement avoids all of these risks and achieves a fair and adequate result without the need for prolonged and uncertain litigation.  Even assuming that Plaintiffs overcame all the liability obstacles noted above, which was far from certain, the Settlement represents a substantial percentage of the estimated recoverable damages at trial and is well within the range of reasonableness.  *See, e.g.*, *In re OCA, Inc. Sec. & Deriv. Litig.*, No. 05 Civ. 2165, 2008 WL 4681369, at *12 (E.D. La. Oct. 17, 2008) (preliminarily approving settlement and noting that "in

14

light of OCA's financial condition and the numerous defenses to plaintiffs' claims, the $6.5 million settlement . . . appears to be within a reasonable range for approval").

### (2) Other Rule 23(e)(2)(C) Factors Support Approval

Rule 23(e)(2)(C) also tests the adequacy of relief to the Class in view of (i) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (ii) "the terms of any proposed award of attorneys' fees, including time of payment," and (iii) "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)–(iv). Each of these factors weighs in favor of Settlement.

*First*, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for accomplishing both tasks. Here, Angeion will provide notice of the Settlement to the Class, process claims under Lead Counsel's guidance, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and mail Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Such a method for distributing the Settlement proceeds among and between a sizeable Class is unbiased and accords neither favor to Plaintiffs nor disfavor to any Class Member. Thus, the proposed Plan of Allocation is an unbiased, efficient method of allocating the funds to all eligible Class Members.[6]

*Second*, as disclosed in the Notice, Lead Counsel will apply for a percentage of the common fund fee award in an amount not to exceed 33% to compensate them for the services they rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to 33% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of

---

[6] This is not a claims-made settlement. If the Settlement is approved, no Defendant, Defendants' Releasee, their insurance carrier(s), or any other person or entity who or which paid any portion of the Settlement Amount will have any right to the return of the Settlement Fund or any portion of the Settlement based on the number or value of the claims submitted. *See* Ex. 1 (Stipulation) at ¶14.

the work performed and the results obtained. *See Miller v. Glob. Geophysical Servs.*, No. 14 Civ. 0708, 2016 WL 11645372, *1 (S.D. Tex. Jan. 14, 2016) (finding attorney's fees of one-third of $5.3 million settlement fund reasonable given the "time and labor required, the novelty and difficulty of the case, the skill required to prosecute the case, the experience and ability of the attorneys, awards in similar cases, the contingent nature of the representation and the result obtained for the Class.").[7]  A fee of up to one-third of the Settlement Fund is also appropriate when considering the substantial risks Lead Counsel undertook in expending immense time, effort and resources in pursuing the claims in this Action and obtaining the excellent recovery.  Moreover, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  *See* Ex. 1 (Stipulation) at ¶ 17.  Lastly, Class Members will have an opportunity to weigh in on the fee request before and during the final approval hearing.

*Third*, with respect to Rule 23(e)(2)(C)(iv), Plaintiffs and Defendants are parties to a Supplemental Agreement, pursuant to which Defendants shall have the unilateral right to terminate the settlement upon the occurrence of certain conditions precedent.  *See* Ex. 1 (Stipulation) at ¶ 36.  The Supplemental Agreement shall remain confidential and not filed with the Court unless a dispute of the terms arises or disclosure is ordered by the Court.  Such confidentiality agreements are executed routinely in securities class actions "'to encourage settlement'" and to disincentivize "third parties from soliciting class members to opt out.'"  *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 240 (E.D. Mich. 2016) (quoting *In re HealthSouth Corp. Ec. Litig.*,

---

[7] Courts routinely uphold awards of attorneys' fees of one-third of the total settlement as inherently reasonable.  *See e.g.*, *Carlton v. Cannon*, No. 15 Civ. 00012 (LHR), slip op. at 1 (S.D. Tex. June 7, 2017) (ECF No. 158) (court awarded fees of one-third of $4.5 million recovery in securities fraud class action settlement); *Campton v. Ignite Rest. Grp., Inc.*, No. 12 Civ. 2196, 2015 WL 12766537, *3 (S.D. Tex. June 5, 2015) (awarding attorneys' fees of one-third of $1.8 million settlement fund) (Gilmore, J.). *See also In re Willbros Grp., Inc. Sec. Litig.*, 407 F. Supp. 3d 689, 690 (S.D. Tex. 2018) (Ellison, J.) (awarding fees of 30% of $10 million settlement fund).

16

334 F. App'x 248, 250 n.4 (11th Cir. 2009)).  The Supplemental Agreement and the Stipulation are the only agreements concerning the Settlement entered into by the Parties.

(3)    <strong>The Settlement Terms are Equitable</strong>

Rule 23(e)(2)(D) provides that the proposed Settlement "treats class members equitably relative to each other." Fed. R Civ. P. 23(e)(2)(D).  The Settlement does not provide preferential treatment to the Plaintiffs or any other segment of the Settlement Class.[8]  The proposed Plan of Allocation, which was developed by Plaintiffs' damages expert in consultation with Lead Counsel, is set forth in the Notice and provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms.  *See* Ex. A-1 (Notice) at ¶¶ 47-62.  Under the Plan of Allocation, each Authorized Claimant will receive his, her or its *pro rata* share of the Net Settlement Fund.[9]  Accordingly, this factor supports preliminary approval of the proposed Settlement.

3.    <strong>The Opinions of Lead Counsel and Plaintiffs Warrant Approval</strong>

The final *Reed* factor to consider is "the opinions of the class counsel, class representatives, and absent class members" in determining the propriety of a settlement.  *Reed*, 703 F.2d at 172. In determining if a settlement is in the best interest of the class, "[s]ignificant weight is given to the opinion of class counsel" and "the court is not to substitute its own judgment for that of counsel." *Marcus v. J.C. Penney Co., Inc.*, No. 13 Civ. 736, 2017 WL 6590976, at *3 (E.D. Tex. Dec. 18, 2017).  Though not dispositive, courts often consider the opinions of class counsel

---

[8] Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Plaintiffs may separately seek reimbursement of costs (including lost wages) incurred as a result of their representation of the Settlement Class.  *See* U.S.C. § 78u-4(a)(4).

[9] *See In re Waste Mgmt. Sec. Litig.*, No. 99 Civ. 2183, 2002 WL 35644013, at *8 (S.D. Tex. May 10, 2002) (stating each class member receiving a pro rata share after submitting a valid and timely claim is "treat[ing] every member of the Class in a similar manner."); *In re Dell Inc., Sec. Litig.*, No. 06 Civ. 726, 2010 WL 2371834, at *10 (W.D. Tex. June 11, 2010) (finding distribution of funds on a pro rata basis is a reasonable and equitable approach).

regarding the fairness of settlement because such "[c]ounsel are the Court's main source of information about the settlement." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007). The Court should also consider Lead Counsel's experience in class action litigations when evaluating the proposed Settlement. *See Schwartz*, 2005 WL 3148350, at *21 ("where...Lead Counsel is experienced in class-action litigation, courts typically defer to the judgment of experienced trial counsel who has evaluated the strength of his case."). Here, Lead Counsel have considerable experience in complex class action and securities litigation, have prosecuted this Action – which includes conducting an extensive investigation, overcoming the arguments of equally-seasoned and respectable opposing counsel, consulting with experts, and conducting confirmatory discovery by reviewing documents and interviewing Bristow's former CFO (and later CEO) – and have brought this matter to a fair resolution with the aid of a third-party mediator. *See* Exs. 2-3. Lead Counsel believe the Settlement merits approval and Plaintiffs also support the proposed Settlement. Thus, this factor weighs in favor of preliminary approval.

For all of the foregoing reasons, Plaintiffs respectively request that the Court preliminarily approve the Settlement by finding that its terms are preliminarily fair, reasonable and adequate according to the requirements of Rule 23(e) and the *Reed* factors.

**B.    The Court Should Certify the Settlement Class**

One of this Court's functions in reviewing a proposed settlement of a class action is to determine whether the action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997). *See, e.g., In re Enron Sec. and ERISA Litig.*, No. 01 Civ. 3624, 2003 WL 22494413, at *2 (S.D. Tex. July 24, 2003) (preliminarily approving settlement and conditionally certifying class for settlement purposes). Rule 23(a) sets forth four prerequisites to class certification, which are referred to in the short-hand as: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of

representation. The class must also meet one of the three requirements of Rule 23(b). *See* Fed. R. Civ. P. 23. The proposed Settlement Class is defined in ¶1(tt) of the Stipulation as follows:

> [A]ll persons or entities who, between February 8, 2018 and February 12, 2019, inclusive, purchased or otherwise acquired Bristow's common stock and were damaged thereby. Excluded from the Settlement Class are the Settling Persons; members of the Settling Persons' Immediate Families; the Settling Persons' legal representatives, heirs, executors, administrators, predecessors, successors, assignees or assigns, and any entity in which they have or had a controlling interest; any trust of which any Settling Person is the settlor or which is for the benefit of any Settling Person and/or member(s) of his or her family; Defendants' liability insurance carriers; and the current and former officers and directors of the Company. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

"[T]he United States Court of Appeals for the Fifth Circuit has indicated a class may be certified for settlement purposes when doubt exists as to certification for litigation[.]" *DeHoyos*, 240 F.R.D. at 280. This Action is no exception, and Plaintiff submits that the Settlement Class satisfies each of these requirements.

### 1.    Numerosity

First, numerosity is satisfied when the proposed class is "so large that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir. 1999) (citation omitted). A plaintiff is not required to show the exact number of class members at the time of class certification to meet this requirement. The Court also may consider whether members of the proposed class are geographically dispersed. *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (finding "geographic dispersion" of the class relevant to numerosity requirement). Numerosity is "generally assumed to have been met in class action suits involving nationally traded securities[.]" *Id.* at 1039.

Here, Bristow common stock was actively traded on the New York Stock Exchange with, according to Plaintiffs' damages expert, approximately 15.6 million shares purchased during the Class Period. Plaintiffs believe that the number of beneficial holders of Bristow common stock

could be in the hundreds or thousands and are geographically located throughout the United States, making joinder of all Class Members impractical. *See, e.g.*, *Mullen*, 186 F.3d at 624 (noting that a class of 100 to 150 members satisfies numerosity and where "it was likely that some of the putative class members were geographically dispersed"). Thus, numerosity is easily met.

### 2. Commonality

Second, Rule 23(a)(2) is satisfied where there are questions of law or fact common to the class. *In re FirstPlus Fin. Grp., Inc., Sec. Litig.*, No. 98 Civ. 2551, 2002 WL 31415951, at *6 (N.D. Tex. Oct. 28, 2002). Commonality does not require a showing that the interests and claims of the class members are identical; it requires only that "there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993). Questions which are common to the proposed Class include:

(i)    whether the federal securities laws were violated by Defendants' acts as alleged in the CAC;

(ii)   whether statements made by Defendants to the investing public during the Settlement Class Period omitted or misrepresented material facts about Bristow's internal controls, debt levels, liquidity, financial condition and prospects, and/or viability as a going concern;

(iii)  whether Defendants acted with scienter;

(iv)   whether the price of Bristow common stock was artificially inflated due to Defendants' statements; and

(v)    to what extent Settlement Class members would have sustained damages and the proper measure of damages.

Securities fraud actions containing common questions such as those listed above have repeatedly been held to be prime candidates for class certification. *See, e.g., In re Elec. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. 559, 564 (E.D. Tex.), *aff'd sub nom. Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125 (5th Cir. 2005); *Firstplus*, 2002 WL 31415951, at *3. In short, because the core complaint of all Class Members is that they purchased or acquired Bristow common stock at

artificially inflated prices, the commonality requirement of Rule 23(a)(2) is satisfied.

### 3. Typicality

Third, the typicality requirement of Rule 23(a)(3) is satisfied when the claims or defenses of the party or parties representing the class are typical of the claims or defenses of the other class members. *See Amchem Prod., Inc.*, 521 U.S. at 625 (common issues test readily met in securities fraud cases).[10]  As with commonality, the test for typicality is not demanding. *See In re Elec. Data Sys.*, 226 F.R.D. at 565.  Typicality does not require a complete identity of claims, but rather, is satisfied when the representative plaintiff's claims arise out of the same event or course of conduct as the other class members and are based on the same legal theory.  *Firstplus*, 2002 WL 31415951, at *4.[11]  Here, Plaintiffs' claims and those of the prospective Settlement Class arise out of the same allegedly unlawful conduct by the Defendants and the same allegedly false statements, and the proof Plaintiffs would be required to present to establish their claims would also prove the claims of the rest of the Class. *See In re Universal Access, Inc. Sec. Litig.*, 209 F.R.D. 379, 386 (E.D. Tex. 2002).  Thus, Plaintiffs' claims are typical of the claims of the Class and Rule 23(a)(3) is satisfied.

### 4. Adequacy

Fourth, Rule 23(a)(4) requires that the class representatives fairly and adequately protect the interests of the class they seek to represent.  There are two prongs to this requirement: (i) the representatives must have interests that are not antagonistic to the interests of other members of the class; and (ii) the representatives must have retained attorneys who are qualified, experienced and able to conduct the litigation.  *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 269 (S.D. Tex. 2005). As described above, Plaintiffs have claims that

---

[10] The Supreme Court has recognized that the commonality and typicality analyses "tend to merge."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

[11] *See also In re Elec. Data Sys.*, 226 F.R.D. at 565 ("[f]actual differences do not defeat typicality if the claims arise from a similar course of conduct and share the same legal theories").

are typical of and coextensive with those of the Class. Plaintiffs, like members of the proposed

Class, purchased Bristow common stock as a result of Defendants' alleged materially false and

misleading statements and were allegedly damaged thereby.  There is no indication that Plaintiffs'

interests will conflict with those of the Class.  Plaintiffs are adequate representatives for the Class.

As to the adequacy of Plaintiffs' counsel, the Court must consider: "(i) the work counsel

has done in identifying or investigating potential claims in the action; (ii) counsel's experience in

handling class actions, other complex litigation, and the types of claims asserted in the action; (iii)

counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to

representing the class." Fed. R. Civ. P. 23(g)(1)(A).  Plaintiffs retained Susman Godfrey LLP and

Kirby McInerney LLP as Lead Counsel.  As their firm resumes demonstrate (Exs. 2-3), these firms

are highly experienced in securities class action litigation and have successfully prosecuted many

securities and other complex class actions in courts throughout the United States.  Based on Lead

Counsel's experience, and their work in the matter thus far, the Court should conclude that Lead

Counsel have satisfied the adequacy requirements under Rule 23(g).

Thus, in satisfaction of Rule 23(a)(4), Plaintiffs are adequate representatives of the Class,

and their counsel are qualified, experienced, and capable of prosecuting this Action.

### 5.    The Proposed Class Satisfies the Requirements of Rule 23(b)(3)

### a.  Common Questions Predominate

To ensure that the class action is more efficient than individual actions, Rule 23(b)(3)

requires that common issues predominate over issues that are particular to individual class

members.  *See Amchem Prod., Inc.*, 521 U.S. at 625 ("[p]redominance is a test readily met in

certain cases alleging consumer or securities fraud or violations of the antitrust laws").  Here, Rule

23(b)(3)'s predominance requirement is easily satisfied by the above-identified common issues as

to liability and damages.

**b. The Class Action Is Superior to Other Methods of Adjudication**

In addition, Rule 23(b)(3) requires that the Court determine whether a class action is superior to other methods of adjudication. Here, little question exists that a class action is superior to other available methods. But for this method of adjudication, there could be hundreds of individual cases. "Class actions are considered superior when individual actions would be wasteful, duplicative, present managerial difficulty and be adverse to judicial economy." *Mullen*, 186 F.3d at 627. In light of the foregoing, Plaintiffs respectfully submit that all of the requirements of Rule 23(a) and (b) are satisfied. Thus, there are no issues that would prevent the Court from certifying this Class for settlement purposes and appointing Plaintiffs as the Class Representatives.

**C.   The Court Should Approve the Proposed Class Notice**

Plaintiffs' proposed Notice is the most efficient and comprehensive notice that is practicable under the circumstances, and ensures that all Class Members who would be bound by its terms are promptly informed of the particulars of the Settlement and given a fair opportunity to submit a claim, opt-out of the class, or file objections to the proposal for the Court's consideration at the Final Approval Hearing. *See In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (citation omitted).

Both Rule 23(c)(2)(B) and the text of the PSLRA set forth explicit requirements to ensure that the absent Class Members' due process rights are safeguarded, each of which is met by the Plaintiffs' proposed Notice. For its part, Rule 23(c)(2)(B) provides that notices to the class members must be "the best notice that is practicable under the circumstances" and disseminated "in a reasonable manner to all class members who would be bound by the proposal." And by its text, the PSLRA sets forth the specific items that the "best notice" must contain. The Class Member must receive (i) a statement of "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis," (ii) "a

statement from each settling party concerning the issue or issues on which the parties disagree," (iii) a "statement indicating which parties intend to" seek "an award of attorneys' fees or costs from any fund established as part of the settlement," including "the amount of fees and costs that will be sought," together with "a brief explanation supporting the fees and costs sought," (iv) a statement of "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members concerning any matter contained" in the Notice, (v) "[a] brief statement explaining the reasons why the parties are proposing the settlement," and (vi) "[s]uch other information as may be required by the court." 15 U.S.C. §§78u–4(a)(7)(A)–(F).

Here, the Parties propose to mail, by first class mail, individual copies of the Postcard Notice (Ex. A-4 to the Stipulation) to all Settlement Class Members who can be identified with reasonable effort from Bristow's security lists and through brokerage firms who regularly act as nominees or agents for beneficial stock purchasers.  Contemporaneously with the mailing of the Postcard Notice, copies of the Notice (Ex. A-1 to the Stipulation) and the Proof of Claim and Release Form (Ex. A-2 to the Stipulation), along with certain case documents, will be made available on a website to be developed for the Settlement, which will also accept online claims submissions.[12]  Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form.  Not more than ten (10) business days after mailing the Postcard Notice, the Summary Notice (Ex. A-3 to the Stipulation) will be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*, as is customary in securities class action settlements.  *See, e.g.*, *In re Anadarko Petroleum Corp.*, No. 12 Civ. 00900, 2014 WL 12599393, at *1 (S.D. Tex.

---

[12] *See Schwartz*, 2005 WL 3148350, at *9 ("[P]ublication, mailing, and Internet posting of such notices . . . meet the requirements of Rule 23, . . . due process, and the Rule of this Court, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.").

Sept. 11, 2014) (Ellison, J.) (approving such form of notice as adequate is routine).

The manner of providing notice satisfies due process and the PSLRA.  *See, e.g., Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974).  Plaintiffs respectfully submit that the notice program proposed here is adequate and should be approved by the Court. Plaintiffs further request that the Court approve Angeion as Claims Administrator.  As detailed in the Barnett Declaration, Angeion has extensive experience in the administration of settlements of this type. Ex. 7.

## V.  PROPOSED SETTLEMENT SCHEDULE

The Parties respectfully propose the following schedule for the Court's consideration:

| | |
|---|---|
| Defendants' deadline to produce security lists (Preliminary Approval Order ("PAO") ¶ 7(a)) | Within 10 business days of the date of entry of the PAO |
| Deadline for mailing the Postcard Notice to Settlement Class Members and posting the Notice and Claim Form on the Settlement Website (the "Notice Date") (PAO ¶ 7(b)) | Not later than 20 business days after the date of entry of the PAO |
| Deadline to publish the Summary Notice (PAO ¶ 7(e)) | Not later than 10 business days after the Notice Date |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses (PAO ¶ 26 ) | No later than 35 calendar days prior to the Settlement Hearing |
| Deadline for requesting exclusion and submitting objections (PAO ¶ 13, 17) | Received no later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (PAO  ¶ 26) | Filed and served no later than 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | Approximately 105 calendar days after the entry of the PAO |
| Deadline for submitting Claim Forms (PAO ¶ 10 ) | Postmarked no later than 120 calendar days after the Notice Date |

## VI.  CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order, granting: (i) preliminary approval of the Settlement, (ii) certification of the Class for settlement purposes; (iii) approval of the proposed manner and form of giving notice of the Settlement to the Class; (iv) appointment of Angeion  as Claims Administrator; and (v) a hearing date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

Dated: January 28, 2021

**SUSMAN GODFREY LLP**

/s/ *Barry Barnett*
Barry Barnett
Michael C. Kelso
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
bbarnett@susmangodfrey.com
mkelso@susmangodfrey.com

**KIRBY McINERNEY LLP**
Ira M. Press (admitted *pro hac vice*)
Thomas W. Elrod (admitted *pro hac vice*)
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: (212) 371-6600
ipress@kmllp.com
telrod@kmllp.com

*Lead Counsel for Plaintiffs*
*and the Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System.

*/s/     Barry Barnett*
