# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE BRISTOW GROUP INC. SECURITIES LITIGATION | Case No. 4:19-cv-00509 (KPE) |

## LEAD COUNSEL'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS FOR LEAD PLAINTIFFS

**SUSMAN GODFREY LLP**
Barry Barnett
Michael C. Kelso
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
bbarnett@susmangodfrey.com
mkelso@susmangodfrey.com

**KIRBY McINERNEY LLP**
Ira M. Press (admitted *pro hac vice*)
Thomas W. Elrod (admitted *pro hac vice*)
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: (212) 371-6600
ipress@kmllp.com
telrod@kmllp.com

*Lead Counsel for Plaintiffs and the Settlement Class*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

ISSUES PRESENTED........................................................................................................... 3

ARGUMENT ......................................................................................................................... 3

I.     Procedural History ......................................................................................................... 3

II.    The Court Should Approve Lead Counsel's Attorneys' Fee Request ............................... 4

      A.     Lead Counsel Are Entitled to an Award of Attorneys' Fees from the Settlement Fund .................................................................................................... 4

      B.     The Court Should Award a Percentage of the Common Fund ............................... 4

            1.     The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method ..................................................................... 6

            2.     The Requested Fees Are Reasonable Under the Lodestar Method.................. 8

      C.     The Fifth Circuit's *Johnson* Factors Confirm the Requested Fee Is Reasonable ........................................................................................................ 11

            1.     The Time and Labor Required ....................................................................... 12

            2.     The Novelty and Difficulty of the Issues ...................................................... 13

            3.     The Skill Required to Perform the Legal Services Properly........................... 14

            4.     The Preclusion of Other Employment ........................................................... 15

             5.     The Customary Fee ....................................................................................... 16

            6.     The Contingent Nature of the Fee ................................................................. 17

             7.     Time Limitations Imposed by the Client or the Circumstances ..................... 18

             8.     The Amount Involved and the Results Achieved ........................................... 19

             9.     The Experience, Reputation, and Ability of the Attorneys............................. 19

             10.     The Undesirability of the Case ...................................................................... 20

             11.     The Nature and Length of the Professional Relationship with the Client ...... 21

             12.     Awards in Similar Cases................................................................................ 21

D.    Additional Factors that Further Support the Requested Fee as Reasonable ......... 21

    1.    Public Policy Considerations .............................................................. 21

    2.    Lead Plaintiffs Support the Award of Attorney Fees..................................... 22

    3.    Reaction of the Settlement Class to the Fee Request.................................... 22

III.    The Requested Expenses Are Reasonable and Were Necessary to Achieve the Benefit Obtained ................................................................................................. 23

IV.    Lead Plaintiffs' Request for PSLRA Reimbursement ....................................... 24

CONCLUSION.......................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
　572 F.3d 221 (5th Cir. 2009)...........................................................................13, 14

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
　No. 17 Civ. 3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019)............................2, 6

*Anwar v. Fairfield Greenwich Ltd.*,
　No. 09 Civ. 118, 2012 WL 1981505 (S.D.N.Y. June 1, 2012)..................................3

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
　No. 07 Civ. 61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)...........................18

*Barton v. Drummond Co.*,
　636 F.2d 978 (5th Cir. 1981).....................................................................................4

*Billitteri v. Sec. Am., Inc.*,
　No. 09 Civ. 1568, 2011 WL 3585983 (N.D. Tex. Aug. 4, 2011)...........9, 12, 20, 24

*Blum v. Stenson*,
　465 U.S. 886 (1984)..................................................................................................16

*Boeing Co. v. Van Gemert*,
　444 U.S. 472 (1980)....................................................................................................4

*Braud v. Transport Serv. Co. of Ill.*,
　No. 05 Civ. 1898, 2010 WL 3283398 (E.D. La. Aug. 17, 2010)............................20

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
　946 F.2d 768 (11th Cir. 1991)..................................................................................21

*Campton v. Ignite Restaurant Group*,
　No. 12 Civ. 2196, 2015 WL 12766537 (S.D. Tex. June 5, 2015)............................6

*Cent. R.R. & Banking Co. v. Pettus*,
　113 U.S. 116 (1885)....................................................................................................5

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
　No. 12 Civ. 1609, 2015 WL 965696 (W.D. La. Mar. 3, 2015)............................8, 9

*In re Continental Ill. Sec. Litig.*,
　962 F.2d 566 (7th Cir. 1992)....................................................................................17

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) .................................................................2, 9

*Destefano v. Zynga, Inc.*,
    No. 12 Civ. 4007, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ..........................10

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ...........................................................................17

*DiGiacomo v. Plains All American Pipeline*,
    No. 99 Civ. 4137, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001) ..............5, 18, 24

*Dolgow v. Anderson*,
    43 F.R.D. 472 (E.D.N.Y. 1968) .........................................................................4

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) ...........................................................9, 11

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    No. 01 Civ. 3624, 2004 WL 1900294 (S.D. Tex. Aug. 5, 2004) .........................24

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    No. 02 Civ. 1152, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ..........................8

*Evans ex rel. United Dev. Funding IV v. Greenlaw*,
    No. 16 Civ. 635, 2019 WL 7879735 (N.D. Tex. Feb. 27, 2019) .........................16

*In re Extreme Networks, Inc. Sec. Litig.*,
    No. 15 Civ. 4883, 2019 WL 3290770 (N.D. Cal. July 22, 2019) .........................10

*In re EZCORP, Inc. Sec. Litig.*,
    No. 15 Civ. 608, 2019 WL 6649017 (W.D. Tex. Dec. 6, 2019) .............................7

*Faircloth v. Certified Fin. Inc.*,
    No. 99 Civ. 3097, 2001 WL 527489 (E.D. La. May 16, 2001) .............................24

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02 Civ. 3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .........................22

*Fleisher v. Phoenix Life Ins. Co.*,
    No. 11 Civ. 8405, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ........................17

*In re Forterra Inc. Sec. Litig.*,
    No. 18 Civ. 1957, 2020 WL 4727070 (N.D. Tex. Aug. 12, 2020) .........................7

*Garza v. Sporting Goods Props., Inc.*,
   No. 93 Civ. 1082, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996).................................................20

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015)................................................................................................18

*Glock v. FTS Int'l, Inc.*,
   No. 20 Civ. 3928, 2021 WL 1422714 (S.D. Tex. Apr. 13, 2021)....................................6, 11

*Gupta v. Power Sols. Int'l, Inc.*,
   No. 16 Civ. 8253, 2019 WL 2135914 (N.D. Ill. May 13, 2019)...........................................7

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012)...................................................................8, 10, 24-25

*Internal Improvement Fund Trs. v. Greenough*,
   105 U.S. 527 (1881)..........................................................................................................4-5

*Jenkins v. Trustmark Nat'l Bank*,
   300 F.R.D. 291 (S.D. Miss. 2014).................................................................................17, 21-22

*Johnson v. City of New York*,
   No. 08 Civ. 3673, 2010 WL 5818290 (E.D.N.Y. Dec. 13, 2010).........................................17

*Johnson v. Georgia Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974)...............................................................................12, 15, 16, 20

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010).......................................................................10, 17-18

*La. Power & Light Co. v. Kellstrom*,
   50 F.3d 319 (5th Cir. 1995)...............................................................................................18

*Li v. Aeterna Zentaris Inc.*,
   No. 14 Civ. 7081, 2021 WL 2220565 (D.N.J. June 1, 2021)...................................................7

*In re Lucent Techs., Inc. Sec. Litig.*,
   327 F. Supp. 2d 426 (D.N.J. 2004)......................................................................................22

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983)...............................................................................................13

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)...................................................................................23

*Marcus v. J.C. Penney Co., Inc.*,
No. 13 Civ. 736, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018).............................9-10

*Miller v. Glob. Geophysical Services, Inc.*,
No. 14 Civ. 708, 2016 WL 11645372 (S.D. Tex. Jan. 14, 2016)...........................6, 9

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970)........................................................................................4

*Mo. v. Jenkins by Agyei*,
491 U.S. 274 (1989)...............................................................................9, 11, 16

*In re OCA, Inc. Sec. & Derivative Litig.*,
No. 05 Civ. 2165, 2009 WL 512081 (E.D. La. Mar. 2, 2009)............................14, 18

*Parmelee v. Santander Consumer USA Holdings Inc.*,
No. 16 Civ. 783, 2019 WL 2352837 (N.D. Tex. June 3, 2019)........................7, 9, 25

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003).................................................................23

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)..........................................................................8, 23

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997)........................................................................18

*Roussel v. Brinker Int'l, Inc.*,
No. 05 Civ. 3733, 2010 WL 1881898 (S.D. Tex. Jan. 13, 2010)...........................19

*Sandoval v. Apfel*,
86 F. Supp. 2d 601 (N.D. Tex. 2000).................................................................11

*Schwartz v. TXU Corp.*,
No. 02 Civ. 2243, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)...........5, 13, 15, 18

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
91 F. Supp. 2d 942 (E.D. Tex. 2000)...................................................................5

*Singh v. 21Vianet Grp., Inc.*,
No. 14 Civ. 894, 2018 WL 6427721 (E.D. Tex. Dec. 7, 2018) ...............................7

*Slipchenko v. Brunel Energy, Inc.*,
No. 11 Civ. 1465, 2015 WL 338358 (S.D. Tex. Jan. 23, 2015).........................9, 25

*Smith v. Tower Loan of Miss., Inc.*,
　　216 F.R.D. 338 (S.D. Miss. 2003)................................................................25

*Sprague v. Ticonic Nat'l Bank*,
　　307 U.S. 161 (1939)..............................................................................4, 5

*Stoetzner v. U.S. Steel Corp.*,
　　897 F.2d 115 (3d Cir. 1990)..................................................................23

*Tellabs, Inc. v. Major Issues & Rights, Ltd.*,
　　551 U.S. 308 (2007)...........................................................................4, 22

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
　　669 F.3d 632 (5th Cir. 2012)..........................................................*passim*

*In re Veeco Instruments Inc. Sec. Litig.*,
　　No. 05 MDL 1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)........................22

*In re Vivendi Universal, S.A. Sec. Litig.*,
　　765 F. Supp. 2d 512 (S.D.N.Y. 2011)......................................................18

*In re Willbros Group, Inc. Securities Litig.*,
　　407 F. Supp. 3d 689 (S.D. Tex. 2018).......................................................6

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
　　No. 14 Civ. 8925, 2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017).........................10

**Statutes**

15 U.S.C. §78u-4(a)(4).........................................................................24, 25

15 U.S.C. §78u-4(a)(6)..............................................................................5

**Other Authorities**

*Report of the Third Circuit Task Force: Court Awarded Attorney Fees*,
　　108 F.R.D. 237 (1986).............................................................................5

Court-appointed Lead Counsel Susman Godfrey LLP and Kirby McInerney LLP (collectively "Lead Counsel") and Lead Plaintiffs Andrew Abernathey, Jay Abernathey, Guy Abernathey, and Meridian Investments I, LLC (collectively "Lead Plaintiffs")[1] move for an award of attorneys' fees, reimbursement of litigation expenses, and service awards for Lead Plaintiffs. Lead Counsel seek an attorneys' fee award of 33% of the Settlement Fund (or $2,062,500), reimbursement of $60,618.84 in litigation expenses, and service awards in the amount of $2,500 per Lead Plaintiff ($10,000 in total).

## PRELIMINARY STATEMENT

After two years of hard-fought litigation on a fully contingent basis, Lead Counsel achieved a $6.25 million settlement for the Settlement Class on their claims against former Bristow CEO Jonathan Baliff and former Bristow CFO-turned-CEO L. Don Miller.  This settlement is an excellent result for the class.  It represents 17.36% of the estimated maximum recoverable damages in this case—more than triple the median 5.3% recovery for securities fraud class actions of comparable size.  ¶ 52.  To achieve that exceptional result, Lead Counsel overcame significant obstacles, including a near-fatal one here:  Bristow's May 2019 bankruptcy.  Lead Counsel challenged Bristow's attempt to extinguish the class's claims in its bankruptcy case and successfully negotiated a carve-out from Bristow's bankruptcy plan for the class's claims against Baliff and Miller.  Without Lead Counsel's efforts, Bristow's bankruptcy would have erased the class's claims and any chance at a recovery.  Lead Counsel then faced the other obstacles inherent

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated January 27, 2021 (the "Stipulation") (ECF No. 56-1), or the concurrently filed Joint Declaration of Barry Barnett and Thomas W. Elrod in Support of: (i) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, Approval of Plan of Allocation, and Certification of Settlement Class; and (ii) Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards for Lead Plaintiffs (the "Joint Declaration" or "Joint Decl.").  Unless otherwise noted, all citations herein to "¶" and "Ex." refer, respectively, to paragraphs in and exhibits to the Joint Declaration.

in a securities class action, including the heightened pleading standards in the PSLRA. Lead Counsel researched and prepared a meticulous, 303-paragraph amended complaint against the individual defendants, successfully defeated Bristow's Rule 12(b)(6) motion to dismiss under the PSLRA, and then successfully negotiated the settlement here based on their in-depth analysis of Bristow's securities filings and publicly available contracts and agreements, with the assistance of an experienced and highly respected mediator. Lead Counsel's skilled advocacy led directly to the successful resolution of the class's claims, and Lead Counsel accordingly request an attorneys' fee award of $2,062,500, or 33% of the Settlement Fund.

Lead Counsel's fee request is reasonable and well-supported under Fifth Circuit case law. Courts in this district have repeatedly awarded 33% of the settlement fund as attorneys' fees in securities class actions. *See Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. 17 Civ. 3852, 2019 WL 387409, at *4 (S.D. Tex. Jan. 30, 2019) (collecting cases) ("The fee represents one-third of the $15 million settlement fund, which is an oft-awarded percentage in common fund class action settlements in this Circuit."). Lead Counsel's 1.53 lodestar multiplier is also well within the range courts in this Circuit hold reasonable. *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 333 (W.D. Tex. 2007) (citation omitted) ("The range of multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5."). The requested fee will appropriately reward Lead Counsel for the outstanding result they obtained for the class after more than two years of uncompensated, wholly contingent work on a case with significant litigation risk while advancing expenses out-of-pocket.

The Court should also grant reimbursement of $60,618.84 in litigation expenses, which were reasonably incurred by Lead Counsel in their efforts on behalf of the class. "Courts routinely note that counsel is entitled to reimbursement from the common fund for reasonable litigation

expenses." *Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ. 118, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (citation omitted).  The expenses Lead Counsel seek reimbursement for here consist principally of investigative services, expert fees, and the hourly fees paid to bankruptcy counsel.  These are expenses typically reimbursed by paying clients and are thus appropriately reimbursed from the Settlement Fund.

Lead Plaintiffs should also be granted service awards of $2,500 each (or $10,000 in total). Lead Plaintiffs took time away from their paying, day-to-day work to diligently fulfill their role as lead plaintiffs under the PSLRA by actively monitoring and engaging with this litigation.  Public policy and the PSLRA support reasonable reimbursement of their lost time on behalf of the class.

The reaction of the Settlement Class further supports the reasonableness of the fee request. The exclusion request and objection filing deadline is July 16, 2021.  To date, no Settlement Class Member has objected the Settlement and only a single class member filed a request for exclusion.[2]

## ISSUES PRESENTED

Should the Court approve the application for (i) attorneys' fees, (ii) reimbursement of litigation expenses, and (iii) service awards for Lead Plaintiffs?  Plaintiffs submit the Court should approve each request.

## ARGUMENT

## I.   Procedural History

Plaintiffs' motion for final approval and the supporting Joint Declaration fully describe the factual and procedural history of this case (¶¶ 21-47); the nature of the claims asserted (¶¶ 12-14); the settlement negotiations (¶¶ 49-50); the risks inherent in continued litigation (¶ 51); and the

---

[2] The deadline for Settlement Class Members to file an objection and/or request for exclusion is July 16, 2021.  As such, in the event that any objections are filed subsequent to the filing of this motion, Lead Counsel will address those objections in their reply brief to be filed no later than July 30, 2021.

services that Lead Counsel and Lead Plaintiffs rendered for the benefit of the Settlement Class (¶¶ 69-72).  Lead Counsel incorporate those descriptions by reference here to avoid repetition.

## II.   The Court Should Approve Lead Counsel's Attorneys' Fee Request

Lead Counsel's thorough and sustained effort was critical in obtaining a substantial and certain recovery for the class.  As such, Lead Counsel respectfully requests that the Court approve attorneys' fees request of 33% of the Settlement Fund, or $2,062,500.

### A.   Lead Counsel Are Entitled to an Award of Attorneys' Fees from the Settlement Fund

The Supreme Court and the Fifth Circuit have long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165-67 (1939); *Barton v. Drummond Co.*, 636 F.2d 978, 982-83 (5th Cir. 1981).  In addition to providing just compensation, awards of attorneys' fees from a common fund also encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons and discourage future misconduct of a similar nature.  *See, e.g.*, *Dolgow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968).  Indeed, the Supreme Court has emphasized that private securities actions, like this one, are "an essential supplement to criminal prosecutions and civil enforcement actions . . . ."  *Tellabs, Inc. v. Major Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

### B.   The Court Should Award a Percentage of the Common Fund

The Supreme Court has consistently held that where a common fund has been created for the benefit of a class because of counsel's efforts, the award of counsel's fee should be determined on a percentage-of-the-fund basis.  *See, e.g.*, *Internal Improvement Fund Trs. v. Greenough*, 105

U.S. 527, 532 (1881); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885); *Sprague*, 307 U.S. at 166-67.

The Fifth Circuit also approves the percentage method, finding that it "brings certain advantages . . . because it allows for easy computation[]" and "aligns the interests of class counsel with those of the class members . . . ." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012). The court in *Dell*, 669 F.3d at 644, endorsed "the district courts' continued use of the percentage method cross-checked with the *Johnson* factors[,]" and this Court in *DiGiacomo v. Plains All American Pipeline*, No. 99 Civ. 4137, 2001 WL 34633373, at *7 (S.D. Tex. Dec. 19, 2001), applied the percentage-of-the-fund method, accompanied by a lodestar cross-check. *See also Schwartz v. TXU Corp.*, No. 02 Civ. 2243, 2005 WL 3148350, at *26 (N.D. Tex. Nov. 8, 2005) ("there is a strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery[]" employing the percentage-of-recovery method); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 966-67 (E.D. Tex. 2000) (listing additional class action cases).[3]

The percentage method of calculating fees is particularly appropriate in securities cases like this one that are governed by the PSLRA. The PSLRA explicitly authorizes the percentage method in calculating fees in securities actions. 15 U.S.C. §78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.");

---

[3] *See also Report of the Third Circuit Task Force: Court Awarded Attorney Fees*, 108 F.R.D. 237, 246-49 (1986) (identifying a number of deficiencies with the lodestar method, including: (1) increasing the workload of the judicial system; (2) lack of objectivity; (3) a sense of mathematical precision unwarranted in terms of the realities of the practice of law; (4) ease of manipulation by judges who prefer to calculate the fees in terms of percentages of the settlement fund; (5) encouraging duplicative and unjustified work; (6) discouraging early settlement; (7) not providing judges with enough flexibility to award or deter lawyers so that desirable objectives, such as early settlement, will be fostered; (8) providing relatively less monetary reward to the public interest bar; and (9) confusion and unpredictability in administration).

*see Dell*, 669 F.3d at 643 ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation.").

  1.  **The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method**

  Lead Counsel's request for an award of 33% of the settlement as attorneys' fees is reasonable and well-supported by case law from this Court and others across the country. Courts in this District routinely find that a fee of one-third of the common fund is reasonable in class actions, including securities fraud cases with comparable settlements.

- In *In re Willbros Group, Inc. Securities Litigation*, 407 F. Supp. 3d 689, 690 (S.D. Tex. 2018) (Ellison, J.), the Court awarded 30% of a $9 million settlement fund as "fair and reasonable under the 'percentage-of-recovery' method[]" in a securities class action.

- In *Al's Pals Pet Care*, 2019 WL 387409, at *4, Judge Hoyt granted counsel's fee application, held that "[t]he fee represents one-third of the $15 million settlement fund, which is an oft-awarded percentage in common fund class action settlements in this Circuit[,]" and cited numerous other decisions from this Court and others in the Fifth Circuit awarding one-third of the fund as reasonable attorneys' fees.

- In *Miller v. Global Geophysical Services, Inc.*, No. 14 Civ. 708, 2016 WL 11645372, at *1 (S.D. Tex. Jan. 14, 2016), Judge Gilmore awarded 33% of a $5.3 million settlement in a securities class action given the "time and labor required, the novelty and difficulty of the case, the skill required to prosecute the case, the experience and ability of the attorneys, awards in similar cases, the contingent nature of the representation and the result obtained for the Class."

- In *Glock v. FTS Int'l, Inc.*, No. 20 Civ. 3928, 2021 WL 1422714, at *1–2 (S.D. Tex. Apr. 13, 2021), Judge Rosenthal awarded 33% in a $9.875 million settlement in a securities class action.

- In *Carlton v. Cannon*, No. 15 Civ. 00012 (S.D. Tex. June 7, 2017), ECF No. 158 at ¶ 1, Judge Rosenthal awarded one-third of a $4.5 million settlement in a securities class action.

- In *Fitzpatrick v. Uni-Pixel, Inc.*, No. 13 Civ. 01649 (S.D. Tex. Apr. 30, 2015), ECF No. 58 at ¶ 15, Judge Lake awarded one-third of a $2.35 million settlement fund in a securities class action.

- In *Campton v. Ignite Restaurant Group*, No. 12 Civ. 2196, 2015 WL 12766537, at *3 (S.D. Tex. June 5, 2015), Judge Gilmore awarded 33% of a $1.8 million settlement in a securities class action.

Other courts in the Fifth Circuit also routinely award attorneys' fees of one-third of the common fund in securities class actions with comparable settlements. *See In re Forterra Inc. Sec. Litig.*, No. 18 Civ. 1957, 2020 WL 4727070, at *1 (N.D. Tex. Aug. 12, 2020) (awarding one-third of a $5.5 million settlement fund in a securities class action); *In re EZCORP, Inc. Sec. Litig.*, No. 15 Civ. 608, 2019 WL 6649017, at *1 (W.D. Tex. Dec. 6, 2019) (awarding 33% of a $4.875 million settlement fund in a securities class action); *Parmelee v. Santander Consumer USA Holdings Inc.*, No. 16 Civ. 783, 2019 WL 2352837, at *1 (N.D. Tex. June 3, 2019) (awarding one-third of a $9.5 million settlement fund in a securities class action); *Singh v. 21Vianet Grp., Inc.*, No. 14 Civ. 894, 2018 WL 6427721, at *1 (E.D. Tex. Dec. 7, 2018) (awarding one-third of a $9 million settlement fund); *Friedman v. Penson Worldwide, Inc.*, No. 11 Civ. 02098 (N.D Tex. Aug. 23, 2013), ECF No. 100 at ¶ 1 (awarding one-third of a $6.5 million settlement in a securities class action); *Lee v. Active Power, Inc.*, No. 13 Civ. 00797 (W.D. Tex. May 15, 2015), ECF No. 65 at ¶ 1 (awarding one-third of a $1.5 million settlement fund in a securities class action); *Barfuss v. DGSE Co. Inc.*, No. 12 Civ. 3664 (N.D. Tex. Sept. 16, 2013), ECF No. 52 at 1 (awarding one-third of a $1.7 million settlement fund in a securities class action).

The same holds for attorneys' fees awarded in recent securities class action settlements in other circuits. *See Gupta v. Power Sols. Int'l, Inc.*, No. 16 Civ. 8253, 2019 WL 2135914, at *1 (N.D. Ill. May 13, 2019) (awarding one-third of a $8.5 million common fund, plus expenses); *Li v. Aeterna Zentaris Inc.*, No. 14 Civ. 7081, 2021 WL 2220565, at *1 (D.N.J. June 1, 2021) (awarding 33⅓% of the $6.5 million settlement fund); *Esposito v. Am. Renal Assocs. Holdings, Inc.*, No. 16 Civ. 11797 (D. Mass. June 15, 2018), ECF No. 106 at ¶ 7 (awarding fees of 33% of a $4 million settlement fund); *Keippel v. Health Ins. Innovations, Inc.*, No. 19 Civ. 00421 (M.D. Fla. Mar. 23, 2021), ECF No. 112 at ¶ 4 (awarding one-third of an $11 million settlement); *De Vito v.*

*Liquid Holdings Grp., Inc.*, No. 15 Civ. 06969 (D.N.J. Jan. 10, 2020), ECF No. 283 at ¶ 5 (awarding one-third of a $4,062,500 settlement fund); *Costas v. Ormat Techs. Inc.*, No. 18 Civ. 00271 (D. Nev. Jan. 21, 2021), ECF No. 104 at ¶ 13 (awarding one-third of a $3.75 million settlement fund).

Lead Counsel's requested fee of 33% is reasonable and well within the range awards in comparable securities class actions cases.

### 2.    The Requested Fees Are Reasonable Under the Lodestar Method

The lodestar "cross-check" confirms Lead Counsel's requested fee is reasonable.  Courts typically use class counsel's lodestar only as a cross-check to confirm the reasonableness of the requested percentage.  *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 02 Civ. 1152, 2018 WL 1942227, at *13 (N.D. Tex. Apr. 25, 2018) ("A court is to apply a lodestar calculation as a cross-check of the percentage method."); *see also Dell*, 669 F.3d at 643-44.  Courts recognize that the lodestar cross-check should not displace a district court's primary reliance on the percentage method.  *Erica P. John Fund*, 2018 WL 1942227, at *8, 9 (The purpose of the cross-check is "to avoid windfall fees . . . ."  Thus, "courts using a lodestar as a cross-check to the percentage method have relaxed the degree of scrutiny applied to counsel's billing records."); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1087 (S.D. Tex. 2012) (Rosenthal, J.) ("courts need not scrutinize counsel's billing records with the thoroughness required were the lodestar method applied by itself.").[4]  In this case, the lodestar method—whether used directly or as a cross-check on the percentage method—demonstrates the reasonableness of the requested fee.

---

[4] *See also City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. 12 Civ. 1609, 2015 WL 965696, at *3 (W.D. La. Mar. 3, 2015) (citation omitted) (conducting "a rough lodestar analysis"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) (citation omitted) ("The district courts may rely on summaries submitted by the attorneys and need not review actual billing records."), *as amended* (Feb. 25, 2005).

Under the lodestar method, "the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Dell*, 669 F.3d at 642-43.[5]  Plaintiffs' Counsel in this case have collectively spent a total of 1,936.80 hours of attorney and professional staff time, with a lodestar value of $1,349,618.00. ¶ 84.[6]  Lead Counsel's fee request of 33% of the Settlement Fund, or $2,062,500, results in a cross-check lodestar multiplier of 1.53.[7]

The cross-check multiplier of 1.53 falls below the range considered reasonable by courts in the Fifth Circuit. *See DeHoyos*, 240 F.R.D. at 333 ("The average range of multipliers applied to other class actions has been from 1.0 to 4.5. . . . The range of multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5."); *Billitteri v. Sec. Am., Inc.*, No. 09 Civ. 1568, 2011 WL 3585983, at *9 (N.D. Tex. Aug. 4, 2011) (awarding fee with a lodestar multiplier of 1.97); *Fitzpatrick*, No. 13 Civ. 01649, ECF No. 58 at ¶ 15 (awarding fee with a lodestar multiplier of 2.5); *Lee*, No. 13 Civ. 00797, ECF No. 65 at ¶ 1  (awarding fee with a lodestar multiplier of 2.6); *City of Omaha Police & Fire Ret. Sys.*, 2015 WL 965696, at *10 (awarding fee with a lodestar multiplier of 1.92); *Glob. Geophysical Servs.*, 2016 WL 11645372, at *1 (awarding fee with a lodestar multiplier of 3.64); *Parmelee*, 2019 WL 2352837, at *1-2 (awarding fee with a lodestar multiplier of 2.03); *Marcus v. J.C. Penney Co., Inc.*, No. 13 Civ. 736, 2018 WL 307024,

---

[5] Courts use "prevailing market rates" and current rates to calculate the lodestar figure to account for the delay in payment. *See Mo. v. Jenkins by Agyei*, 491 U.S. 274, 283-86 (1989); *see also Slipchenko v. Brunel Energy, Inc.*, No. 11 Civ. 1465, 2015 WL 338358, at *19 (S.D. Tex. Jan. 23, 2015) (Rosenthal, J.); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 779 (S.D. Tex. 2008).

[6] The reported lodestar figure for Plaintiffs' Counsel includes only a portion of the lodestar reported by Joseph G. Epstein PLLC, who Lead Counsel retained to assist them with Bristow's bankruptcy.  Lead Counsel retained Mr. Epstein under a hybrid fee agreement.  *See* ¶ 81.  Lead Counsel agreed to pay Mr. Epstein hourly for the first thirty (30) hours of his work on the case.  *See id.*  Mr. Epstein's fees after that were contingent – namely, Lead Counsel agreed to compensate Mr. Epstein for his additional work from any Court-awarded attorneys' fees following resolution of this Action.  Lead Counsel submit their $15,000 in payments to Mr. Epstein for reimbursement as litigation expenses.  Lead Counsel respectfully submit Mr. Epstein's uncompensated, contingent fees as lodestar with their attorneys' fee request.  ¶¶ 81, 85.

at *1 (E.D. Tex. Jan. 4, 2018) (awarding fee with a lodestar multiplier of 3.2).  Lead Counsel's below-range lodestar multiplier further supports the reasonableness of Lead Counsel's requested 33% fee.

Indeed, Lead Counsel's lodestar understates their work on behalf of the class.  Lead Counsel will expend additional time and resources after the final approval of the settlement in connection with the processing and distribution of claims.  Lead Counsel will not seek additional fees for these services on behalf of the class.

Lead Counsel's current hourly rates are consistent with the prevailing market rates for comparably experienced counsel, thereby rendering them reasonable.  *See In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1087-88 (an attorney's hourly rates should be judged in relation to "'prevailing market rates for lawyers with comparable experience and expertise' in complex class-action litigation . . . [,]" and "[a]n attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates[,] and the rate is not contested[]").  Here, Lead Counsel's hourly rates range from $800-$1,350 for partners, $700-$995 for of counsel attorneys, $325- $550 for associates, and $175-$475 for professional support staff.  *See Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 680 (N.D. Tex. 2010).[8]

---

[8] Courts have found analysts to be compensable in lead counsel's fee award.  *See Destefano v. Zynga, Inc.*, No. 12 Civ. 4007, 2016 WL 537946, at *19 (N.D. Cal. Feb. 11, 2016) ("As part of their attorneys' fee award, Lead Counsel here also seek an award covering the cost of financial analysts and related professionals, which courts have also found compensable as part of the fee award.").  *See also In re Extreme Networks, Inc. Sec. Litig.*, No. 15 Civ. 4883, 2019 WL 3290770, at *11 (N.D. Cal. July 22, 2019) (granting lead counsel's fee request); ECF 174-4 (finding rate of $550 per hour for financial analyst as reasonable); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, No. 14 Civ. 8925, 2017 WL 3579892, at *7 (S.D.N.Y. Aug. 18, 2017) (granting lead counsel's fee request) and ECF No. 225-4 (finding hourly rates for financial analysts ranging from $325-$500 as reasonable); *Lazan v. Quantum Corp. et al.*, No. 18 Civ. 00923, Dkt. No. 69 ¶15 (N.D. Cal. Nov. 27, 2019) (approving Kirby McInerney's fee request) and ECF No. 63-8 (finding analyst rates between $275 and $475 reasonable); *In re AudioEye, Inc., Sec. Litig.*, No. 15 Civ. 00163, slip op. at 8 (D. Ariz. May 8, 2017) (ECF No. 100) (awarding Kirby McInerney's, as lead counsel, 33-1/3% fee request in full) (Ex. J) and ECF No. 96-2 (finding senior analyst rates ranging from $250-$400 as reasonable); *Esposito*, No. 16 Civ. 11797, slip op. at 6-7 (ECF No. 106) (D. Mass. June 15, 2018) (awarding Kirby McInerney's, as lead counsel, 33% fee request

The Court need look no further for market rates for legal services in cases like this one than the rates charged by defense counsel in this same case.  For example, according to recent filings in federal bankruptcy cases, King & Spalding LLP's hourly rates for partners range from $840 - $1,215 and from $735 - $910 for associates.  *See* Ex. H (chart compiling hourly rates for law firms that regularly defend securities and comparable class actions from fee applications submitted by such firms).  In addition, Defendants were represented by the law firm of Baker Botts L.L.P. in Bristow's Bankruptcy.  In connection with those proceedings, the hourly rates for Baker Botts attorneys ranged from $879 - $1,349 for partners and from $456 - $1,282.50 for associates.  *Id.* Lead Counsel's rates are also in line with the hourly rates for law firms that prosecute similar securities fraud class actions.  *See* Ex. H (chart compiling hourly rates for law firms representing plaintiffs in securities class actions).  Likewise, these hourly rates are aligned with the hourly rates for law firms that typically defend cases such as this one.  *See* Ex. H (chart compiling hourly rates for law firms that routinely represent defendants).

### C.    The Fifth Circuit's *Johnson* Factors Confirm the Requested Fee Is Reasonable

Lead Counsel's requested fee is also reasonable under the Fifth Circuit's *Johnson* factors. The *Johnson* factors are:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the

---

in full) (Ex. J) and ECF No. 103-3 (finding analyst rates between $275-$450 as reasonable).  Courts also found paralegals to be compensable when awarding fees.  *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 784 (S.D. Tex. 2008) ("'increasingly widespread custom of separately billing for the services of paralegals and law students who serve as clerks.'") (citing *Jenkins*, 491 U.S. at 285-86); *Sandoval v. Apfel*, 86 F.Supp.2d 601, 610 (N.D. Tex. 2000) ("The determining factor for whether law clerk and paralegal fees can be compensated at separately-billed market rates depends on the practice of the relevant market"); *In re SCANA Corp. Sec. Litig.*, No. 17 Civ. 2616 (D.S.C. July 23, 2020) and (ECF No. 229-6) (finding paralegal rates between $325 and $335 reasonable); *Glock*, 2021 WL 1422714, at *1-2 and (ECF No. 23-1) (finding paralegal rates between $275 and $350 reasonable); *Rougier v. Applied Optoelectronics, Inc. et al.*, No. 17 Civ. 2399 (S.D. Tex. Nov. 24, 2020) and (ECF No. 150-5) (finding paralegal rates between $265 and $325 reasonable).

fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); *see also Dell*, 669 F.3d at 642 n.25 (reiterating *Johnson* factors); *Billitteri*, 2011 WL 3585983, at *3 (same).

### 1.     The Time and Labor Required

Lead Counsel spent over 1,800 hours in prosecuting this case for more than two years on behalf of the class.  Lead Counsel have, among other things:

- Conducted a detailed investigation into the alleged misconduct, which included, *inter alia*, a review and analysis of Bristow's regulatory filings with the U.S. Securities and Exchange Commission, press releases, and media reports issued and disseminated by Bristow and Defendants, a review of other publicly available information regarding Bristow including securities analyst reports on Bristow and filings concerning Bristow in Bristow's bankruptcy, and discussion with accounting, market efficiency, and loss causation and damages experts (¶¶ 8, 18, 51);

- Drafted the 303-paragraph Operative Complaint (¶ 28);

- Engaged in adversarial motion practice in federal bankruptcy court in opposition to Bristow's proposed bankruptcy plan in order to preserve claims against Baliff and Miller that would have otherwise released claims against them and successfully challenged such attempts (¶¶ 39-47);

- Responded to Defendants' motion to dismiss with a 25-page opposition brief citing 67 cases from federal courts across the country and demonstrated in detail that Plaintiffs' allegations were legally sufficient to satisfy the pleading standards in Fed. R. Civ. P. 8 and the PSLRA (¶ 29);

- Successfully prepared for and argued against Defendants' motion to dismiss at the May 22, 2020 hearing before the Court (¶ 30);

- Drafted and served discovery requests (¶ 33);

- Drafted and exchanged a detailed mediation statement attaching supporting exhibits and addressing issues related to both liability and damages (¶ 32);

- Engaged in a full-day remote Zoom mediation session facilitated by Mr. Jed Melnick as the mediator (*id.*);

- Negotiated the terms of the proposed Settlement (¶¶ 34-35);

- Developed the Plan of Allocation, based on damage analysis previously developed by a consulting damages expert, that treats Lead Plaintiffs and all other members of the proposed Settlement Class equitably and fairly (¶¶ 59-66); and

- Conducted confirmatory discovery by reviewing non-public Bristow documents and interviewing Bristow's former Chief Financial Officer (and later Chief Executive Officer), Defendant Miller (¶ 36).

In sum, Lead Counsel expended a significant amount of time and resources in prosecuting this Action on behalf of the Settlement Class Members.

### 2.    The Novelty and Difficulty of the Issues

The second *Johnson* Factor also supports approval of Lead Counsel's requested fee.  Courts have long recognized the complexity and uncertainty inherent in securities class action cases. *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (citation omitted) (noting that securities litigation is "notoriously difficult and unpredictable[]"); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action[]"); *Schwartz*, 2005 WL 3148350, at *29 ("Federal Securities class action litigation is notably difficult and notoriously uncertain.").

This case was no exception.  In the two years since the initial complaint in this Action was filed, Lead Counsel zealously represented the interests of the Settlement Class.  As a threshold matter, Lead Counsel engaged in adversarial motion practice in Bristow's bankruptcy that successfully preserved the class's claims against Miller and Baliff, which otherwise would have been released by Bristow's proposed bankruptcy plan.  ¶¶ 39-47.  Lead Counsel also researched and drafted the Complaint that successfully withstood Defendants' motion to dismiss based on an

in-depth review of scores of Bristow securities filings, earnings calls, analyst reports, and publicly filed Bristow contracts, including the Columbia acquisition agreement and the secured financing agreements at the heart of this case.  ¶ 51.

Although Lead Counsel already devoted many hours and resources for this Action, there is no doubt that continued litigation would be increasingly costly, complex, and uncertain.  *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05 Civ. 2165, 2009 WL 512081, at *21 (E.D. La. Mar. 2, 2009) ("Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult . . . .").  Withstanding a motion to dismiss, however, hardly cleared all future obstacles to a successful outcome in this litigation.  For example, in ruling on the motion to dismiss at the conclusion of oral argument, the Court observed, "I think it's a close call, but for now, I'm going to deny the motion to dismiss, and I may well take another look at it later in the narrative of the case."  ¶ 30 (citing Transcript 30:15-22, ECF No. 53).  Notably, this Settlement was only achieved after Lead Counsel engaged in a full-day virtual mediation session overseen by a respected, third-party mediator that entailed frank discussions about the ability of Lead Plaintiffs to successfully prove the requirements for class certification and then the merits elements of their securities fraud claims going forward, including liability, loss causation, and damages.  ¶ 32.

### 3. The Skill Required to Perform the Legal Services Properly

The skill required to perform the legal services properly weighs in favor of Lead Counsel's requested fee.  Securities litigation is notoriously complex and risky, and navigating this case to a successful resolution took significant skill.  *See Alaska Elec. Pension Fund*, 572 F.3d at 235.  Lead Counsel had to research Bristow's securities filings, analyst reports, publicly available information about the company, communications to shareholders, and publicly filed contracts to develop liability claims and an operative complaint that would withstand a Rule 12(b)(6) motion to dismiss

14

and the heightened pleading standard for scienter under the PSLRA.  Lead Counsel then had to defend that complaint against a vigorous challenge by skilled defense counsel.  Bristow's bankruptcy added another layer of difficulty (and risk).  Bristow's proposed bankruptcy plan not only discharged the class's claims against the company, the typical bankruptcy remedy, but also would have released all claims against Bristow's current and former officers for all equity holders who did not affirmatively and expressly "opt out" of the releases.  *See* Bankr. ECF No. 589-1.  Bristow's bankruptcy proposal would have extinguished the class's individual claims against Baliff and Miller.  Lead Counsel retained experienced bankruptcy counsel to help fight Bristow's proposed releases of the individual defendants, researched and drafted a well-supported objection to Bristow's bankruptcy plan, Bankr. ECF No. 693, and then successfully negotiated a carve-out for the class's claims against Baliff and Miller.  Bankr. ECF No. 822-1 ¶ 40.  Without Lead Counsel's forceful advocacy for the class in Bristow's bankruptcy, this settlement would not have occurred and the class's claims against Baliff and Miller would have been extinguished in the bankruptcy just like the claims against the company.

That Lead Counsel achieved these results in the face of such formidable opposing counsel further supports the requested fee.  Defendants' attorneys at King & Spalding LLP are highly skilled, highly regarded, and highly experienced in securities litigation.  Despite this strong opposition, Lead Counsel was able to secure a favorable recovery for the Settlement Class.  *Schwartz*, 2005 WL 3148350, at *30 ("The ability of [Lead] [C]ounsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation.").

### 4.     The Preclusion of Other Employment

The next *Johnson* factor "involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the

fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson*, 488 F.2d at 718.  Starting from around February 2019, Lead Counsel dedicated over 1,800 hours to representing the class in this case, deferring any payment of fees while facing the risk of not achieving recovery at all.  Counsel could have devoted that time to other matters. *Evans ex rel. United Dev. Funding IV v. Greenlaw*, No. 16 Civ. 635, 2019 WL 7879735, at *3 (N.D. Tex. Feb. 27, 2019) (citation omitted) (stating that although the case "did not preclude them from accepting other work, they were often times precluded from working on other cases due to the demands of the instant matter . . . .").

### 5.   The Customary Fee

Courts evaluate whether a fee request is reasonable under the fifth *Johnson* factor by considering the "customary fee for similar work in the community . . . [,]" acknowledging that "various types of legal work command differing scales of compensation." *Johnson*, 488 F.2d at 718.  An appropriate court-awarded fee is intended to approximate what counsel would receive if they were offering their services in the marketplace. *See Jenkins*, 491 U.S. at 285-86 (1989).  If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery.  *See Blum v. Stenson*, 465 U.S. 886, 902 n.19 (1984) (Brennan, J., concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.").

Courts in the Fifth Circuit have routinely approved fee requests that amount to one third of the common fund that were even less than the recovery in this instant Action.  *See* Section II.B.1, *supra*.  As such, Lead Counsel's requested 33% fee is in line with the customary fee typically awarded in securities class action settlements in the Fifth Circuit.  *Id.*  Moreover, the 33% fee requested here is less than Lead Counsel could obtain on the open market.  For example, Susman Godfrey, one of the Court-appointed Lead Counsel, regularly takes high-stakes non-class

commercial cases on a contingent fee basis, and it typically negotiates contingent fee arrangements with individual non-class plaintiff clients for engagements where the firm advances expenses equal to 40% of the gross sum recovered, with percentage increases based on the milestones reached at the time of settlement.   "This fact is highly relevant to determining the appropriateness of the award because the Court's ultimate task is to 'approximate the reasonable fee that a competitive market would bear.'"  *Fleisher v. Phoenix Life Ins. Co.*, No. 11 Civ. 8405, 2015 WL 10847814, at *17 (S.D.N.Y. Sept. 9, 2015) (quoting *Johnson v. City of New York*, No. 08 Civ. 3673, 2010 WL 5818290, at *4 (E.D.N.Y. Dec. 13, 2010)); *accord In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client.").

### 6.      The Contingent Nature of the Fee

The next *Johnson* factor is the contingent nature of Lead Counsel's fee and the risks inherent in such an arrangement.  *Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.").  Courts recognize that continency-fee arrangements embody the "risk of nonpayment in [class action] cases . . . " and that "class counsel ought to be compensated [] for risk of loss or nonpayment assumed by carrying through with the case."  *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 309 (S.D. Miss. 2014).

Lead Plaintiffs faced significant challenges inherent in securities class actions, plus serious additional risks of non-recovery from Bristow's bankruptcy, all of which Lead Counsel successfully overcame.  Lead Counsel's extensive time and effort devoted to litigating the Action in the face of these risks strongly supports the fee requested.  *See Klein*, 705 F. Supp. 2d at 678 (where "class counsel represented the class on a contingent-fee basis, with no guarantee of any

17

recovery[] . . . [t]he contingent nature of the fee favors an increase . . . " in the fee); *OCA*, 2009 WL 512081, at *22 ("the risk plaintiffs' counsel undertook in litigating this case on a contingency basis must be considered in its award of attorneys' fees, and thus an upward adjustment is warranted[]"). The risk of non-recovery in this case was very real. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. Even plaintiffs who get past dispositive motions and succeed at trial may find their judgment overturned in post-verdict motions or on appeal.[9]

Here, Lead Counsel received no compensation throughout the course of this litigation and incurred significant expenses in prosecuting this case for the benefit of the class. Counsel's time and advanced expenses have always been at risk and completely contingent on the result achieved. Thus, the contingent nature of the litigation supports the requested percentage.

### 7.    Time Limitations Imposed by the Client or the Circumstances

The seventh *Johnson* factor is whether the clients or the circumstances imposed "any time limitations . . . ." *DiGiacomo*, 2001 WL 34633373, at *12. Here, Lead Plaintiffs and Lead Counsel did not experience any such circumstances that would impose a restriction on the time. However, the Court does not need to "meticulously" evaluate every *Johnson* factor in its determination of whether Lead Counsel's fee request is reasonable, *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 331 (5th Cir. 1995), because the "*Johnson* factors will vary in any particular case . . . ." *Schwartz*, 2005 WL 3148350, at *28. The seventh *Johnson* factor should not impact the Court's

---

[9] *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 433 (7th Cir. 2015) (major portion of plaintiffs' verdict reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) ($81 million jury verdict reversed on appeal on loss causation grounds and judgment entered for defendant); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533-34 (S.D.N.Y. 2011) (after jury verdict for plaintiff, court significantly reduced scope of class by amending class definition to exclude purchasers of ordinary shares), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07 Civ. 61542, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011) (granting defendants' post-trial motion for judgment as a matter of law following jury verdict for plaintiff).

approval of the fee request.

### 8.      The Amount Involved and the Results Achieved

Next, the Court should consider the eighth *Johnson* factor, which examines the "amount involved and the results obtained[,]" *Dell*, 669 F.3d at 642 n.25, and the "overall degree of success achieved." *Roussel v. Brinker Int'l, Inc.*, No. 05 Civ. 3733, 2010 WL 1881898, at *3 (S.D. Tex. Jan. 13, 2010), *aff'd sub nom. Roussel v. Brinker Int'l, Inc.*, 441 F. App'x 222 (5th Cir. 2011). This factor strongly supports the requested fee.  Lead Plaintiffs' damages expert estimated the maximum potential damages to be approximately $36 million.  ¶ 52.  According to a Cornerstone Research report submitted as Exhibit 5, the median securities class action settlement recovery for cases of comparable size was 5.3% and the median recovery overall in securities class actions in 2020 was 4.3%.  *See* Ex. A (Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements 2020 Review and Analysis*, Cornerstone Research, p. 6 Figure 5 and p. 20 Appendix 5 (2021) ("Cornerstone Report") (reporting median recoveries of approximately 5.3% of estimated damages in cases alleging between $25-$74 million in damages and a median recovery of 4.3% overall in securities class actions in the Fifth Circuit)).  Likewise, the NERA Report corroborates the Cornerstone Report by providing similar statistics.  *See* Ex. B (Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*, NERA Economic Consulting ("NERA Report"), Jan. 25, 2021, at 19 (reporting median recoveries of approximately 5.2% of estimated damages in cases between $20-$50 million in damages)).

Here, Lead Counsel achieved an excellent recovery of $6,250,000 in cash, approximately 17.36% of the maximum potential estimated damages, which is *more than three times larger* than the median settlement in securities class actions of equivalent size.

### 9.      The Experience, Reputation, and Ability of the Attorneys

The ninth *Johnson* factor guides the Court to evaluate Lead Counsel's "experience,

reputation, and ability . . . ." *Johnson*, 488 F.2d at 718–19.  Here, Lead Counsel include the law firms of Kirby McInerney and Susman Godfrey.  The attorneys of these firms are experienced securities litigation practitioners, and the firms have a long record of successfully prosecuting complex class actions including securities class action cases throughout the country. *See* ¶ 68 and Exhibit 3 in each of Ex. E (Susman Godfrey declaration) and Ex. F (Kirby McInerney declaration). Lead Counsel respectfully submit that the quality of their efforts in the litigation, together with their substantial experience in securities class actions and commitment to this litigation, provided Lead Counsel with the leverage necessary to negotiate a favorable settlement.

### 10.      The Undesirability of the Case

Next, the tenth *Johnson* factor is the "'undesirability' of the case." *Johnson*, 488 F.2d at 719.  Securities cases have generally been recognized as "undesirable" due to the financial burden on counsel and the time demands of litigating class actions. *Garza v. Sporting Goods Props., Inc.*, No. 93 Civ. 1082, 1996 WL 56247, at *33 (W.D. Tex. Feb. 6, 1996).  Although Lead Counsel did not find this case "undesirable," they faced substantial risks inherent in prosecuting securities class actions on a wholly contingent basis without the assurance that they will be entitled to any recovery, risks that were amplified here by Bristow's bankruptcy during the Lead-Plaintiff/Lead-Counsel appointment process.  Lead Counsel knew that they would have to expend a significant number of hours and incur significant expenses without compensation unless and until they successfully resolved this case in the class's favor.  *See, e.g.*, *Billitteri*, 2011 WL 3585983, at *8 (supported a fee increase where a case "raised particularly difficult issues," including the risk of "no recovery whatsoever[]"); *Braud v. Transport Serv. Co. of Ill.*, No. 05 Civ. 1898, 2010 WL 3283398, at *13 (E.D. La. Aug. 17, 2010) (finding that the undesirability warrants an increase in the fee considering the "risk of non-recovery" and the burdens of "undertaking expensive litigation against . . . well-financed corporate defendants on a contingent fee . . . .").

### 11.   The Nature and Length of the Professional Relationship with the Client

The eleventh *Johnson* factor considers the "the nature and length of the professional relationship with the client[.]"   *Dell*, 669 F.3d at 642 n.25.   Since 2019, Lead Counsel has represented Lead Plaintiffs in this class action.   Lead Plaintiffs stayed active in the litigation and engaged in settlement negotiations.   Moreover, Lead Plaintiffs have been in communication with Lead Counsel to stay apprised of the Action.   And, as discussed in Section II.D.2, *infra*, Lead Plaintiffs support Lead Counsel's fee and expense reimbursement request.

### 12.   Awards in Similar Cases

The final *Johnson* factor considers awards in similar cases.   As discussed above, Lead Counsel's fee request of 33% of the Settlement Fund is within the range of awards in similar cases. *See* Section II.B.1, *supra*.

### D.   Additional Factors that Further Support the Requested Fee as Reasonable

Additional factors that the Court may consider include (i) public policy considerations; (ii) Lead Plaintiffs' approval of the fee request; and (iii) the reaction of the settlement class members. These factors further support the reasonableness of Lead Counsel's fee request.   *See Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991) (holding that in addition to the *Johnson* factors, the Court may consider "[o]ther pertinent factors[,]" including "additional factors unique to a particular case" that may be "relevant to the district court's consideration[]").

### 1.   Public Policy Considerations

Public policy weighs heavily in favor of granting Lead Counsel's fee and expense application.   Public policy considerations strongly favor incentivizing skilled private attorneys— attorneys who could otherwise represent paying clients on an hourly or fixed-fee basis—to take contingent-fee class action cases to vindicate the legal rights of class members and the law enforcement function of private-action litigation.   *See Jenkins*, 300 F.R.D. at 309 ("Public policy

concerns—in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—support the requested fee."); *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02 Civ. 3400, 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010) (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook[]").  Those public policy considerations are particularly acute in securities cases like this one.  PSLRA actions are "indispensable" means for defrauded investors to "'recover their losses'–a matter crucial to the integrity of domestic capital markets."  *Tellabs*, 551 U.S. at 320 n.4.

## 2.    Lead Plaintiffs Support the Award of Attorney Fees

Each of the Lead Plaintiffs fully supports and approves the fee request.[10]  As set forth in the Lead Plaintiffs' Joint Declaration, the Lead Plaintiffs oversaw the prosecution and resolution of this Action, and had a sound basis for assessing the reasonableness of the fee request.  *See id*. ¶¶ 5-7.  Lead Plaintiffs' endorsement of the fee request supports its approval.  *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 1695, 2007 WL 4115808, *8 (S.D.N.Y. Nov. 7, 2007) ("public policy considerations support the award in this case because the Lead Plaintiff . . . conscientiously supervised the work of lead counsel and has approved the fee request[]"); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("[s]ignificantly, the Lead Plaintiffs[] . . . have reviewed and approved Lead Counsel's fees and expenses request[]").

## 3.    Reaction of the Settlement Class to the Fee Request

Although not formally noted in the case law for this jurisdiction as a factor for the Court's

---

[10] *See* Ex. D, Joint Declaration of Andrew Abernathey, Jay Abernathey, and Guy Abernathey in Support of Lead Plaintiffs' Motion for: (1) Final Approval of Class Action Settlement; (2) Approval of Plan of Allocation; (3) Award of Attorneys' Fees and Expenses; and (4) Award to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) at ¶¶ 11-14.

consideration in determining an award of attorneys' fees, courts throughout the country have found that relatively few or no objections from the class to the attorneys' fees requested supports the reasonableness of the requested attorneys' fees. *See, e.g.*, *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (even when 10% of the class objected, the response of the class as a whole "strongly favors [the] settlement[]"); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 515 (W.D. Pa. 2003) ("the absence of substantial objections by other class members to the fee application supports the reasonableness of Lead Counsels' request[]").[11]

Pursuant to the preliminary approval order issued on February 5, 2021, the Claims Administrator published the Summary Notice in *Investor's Business Daily* and transmitted it over the *PR Newswire*. Angeion Decl. Exs. D and E. In addition, 13,563 copies of the Postcard Notice were timely delivered to potential Class members and nominees. *Id.* ¶ 9. The Notice expressly stated that Lead Counsel would seek an award of attorneys' fee up to 33% of the Settlement Fund, reimbursement of litigation expenses in an amount up to $100,000, and an award of incentive awards to each of the Lead Plaintiffs of up to $5,000 each (or $20,000 in total). Angeion Decl. Ex. B, Notice at ¶¶ 5, 64. To date, no Settlement Class Member has objected to Lead Counsel's proposed request for attorneys' fees and expenses (or to the terms of the settlement). *See id.* ¶ 17. As discussed above (*see* n.2, *supra*), Lead Counsel will address any subsequently filed objections in connection with their reply papers that will be filed no later than July 30, 2021.

## III.   The Requested Expenses Are Reasonable and Were Necessary to Achieve the Benefit Obtained

Attorneys who create a common fund for the benefit of a class are entitled to payment from

---

[11] *See also In re Rite Aid*, 396 F.3d at 305 (district court did not abuse its discretion by finding that absence of substantial objections by class members to fee request weighed in favor of approval); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("The reaction by members of the Class is entitled to great weight by the Court.").

the fund of reasonable litigation expenses and charges.  *In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. 01 Civ. 3624, 2004 WL 1900294, at *3 (S.D. Tex. Aug. 5, 2004). *See DiGiacomo*, 2001 WL 34633373, at *13 (awarding litigation expenses in addition to 30% attorneys' fee, noting that "[n]o party has objected to the amount of the expenses" and that such expenses were reasonable); *Faircloth v. Certified Fin. Inc.*, No. 99 Civ. 3097, 2001 WL 527489, at *12 (E.D. La. May 16, 2001) (awarding costs in addition to the percentage fee).

Here, Lead Counsel request reimbursement of $60,618.84 in litigation expenses, which were reasonably and necessarily incurred to achieve the Settlement Recovery. *See* ¶ 89.  Given that Lead Counsel covered these expenses, it is fair and reasonable that they are reimbursed. *See Billitteri*, 2011 WL 3585983, at *10 ("Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement.").

The majority of the expenses are attributable to bankruptcy counsel, mediation services, investigator fees, and financial and accounting expert services. *See* ¶ 90.  The remaining expenses are those that are ordinarily and necessarily incurred in litigation. *Id.*  Such expenses include, *inter alia*, experts, federal express and delivery costs, filing fees, legal research, and travel and meals. *Id.*  Lead Counsel accounted for these litigation expenses separately from their hourly billing rates. *Id.*

Accordingly, all these expenses are reasonable and were necessarily incurred in the prosecution of the Litigation and therefore should be paid from the Settlement Fund.

## IV.   Lead Plaintiffs' Request for PSLRA Reimbursement

The PSLRA grants an incentive award to Lead Plaintiffs as compensation for their time and labor in representing the class.  Specifically, it allows an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."  15 U.S.C. §78u-4(a)(4).  While "[c]ourts

'commonly permit payments to class representatives above those received in settlement by class members generally[,]'" *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1089 (citation omitted), such awards must be reasonable under the circumstances and not unfair to other class members. *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 368 (S.D. Miss. 2003), *aff'd sub nom. on other grounds Smith v. Crystian*, 91 F. App'x 952 (5th Cir. 2004).

Relevant considerations in granting incentive awards for Plaintiffs include the steps taken to protect the interests of the Class, the extent in which the Class benefited from such actions, and the time and labor that Plaintiffs have rendered in their capacities as Lead Plaintiffs. *Slipchenko*, 2015 WL 338358, at *15 (granting the incentive award of $12,000 to be distributed among three class representatives); *Parmelee*, 2019 WL 2352837, at *2 (granting the incentive award of $14,500 to be distributed between two class representatives prior to class certification discovery).

As detailed in their Joint Declaration, Lead Plaintiffs stayed active throughout the litigation and were actively engaged in settlement negotiations. *See* Ex. D at ¶¶ 5-10. Lead Counsel filed a Settlement Notice that provided up to $5,000 as an incentive fee award to Plaintiffs, which would be subject to modification for a lower amount. To date, no Settlement Class member has objected to the proposed award to Lead Plaintiffs, which supports the conclusion that the fee request is fair. In connection with this motion, Lead Plaintiffs now respectfully request an incentive fee of $2,500 (or $10,000 in total). *See* 15 U.S.C. §78u-4(a)(4).

## CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully request that the Court enter the proposed Final Approval Order, granting Lead Plaintiffs' and Lead Counsel's: (i) award of attorneys' fees for 33% of the Settlement; (ii) reimbursement of litigation expenses; and (iii) award for Lead Plaintiffs in the amount of $2,500 (or $10,000 in total).

Dated: July 2, 2021

Respectfully submitted,

**SUSMAN GODFREY LLP**

/s/ *Barry Barnett*
Barry Barnett
Michael C. Kelso
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
bbarnett@susmangodfrey.com
mkelso@susmangodfrey.com

**KIRBY McINERNEY LLP**
Ira M. Press (admitted *pro hac vice*)
Thomas W. Elrod (admitted *pro hac vice*)
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: (212) 371-6600
ipress@kmllp.com
telrod@kmllp.com

*Lead Counsel for Plaintiffs*
*and the Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System.

*/s/ Barry Barnett*
Barry Barnett
