**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| IN RE BRISTOW GROUP INC. SECURITIES LITIGATION | Case No. 4:19-cv-00509 (KPE) |

**JOINT DECLARATION OF BARRY BARNETT AND THOMAS W. ELROD IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR: (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT; (2) APPROVAL OF PLAN OF ALLOCATION; (3) AWARD OF ATTORNEYS' FEES AND REIMBURSEMENTS OF EXPENSES; AND (4) AWARD TO LEAD PLAINTIFFS**

**SUSMAN GODFREY LLP**
Barry Barnett
Michael C. Kelso
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
bbarnett@susmangodfrey.com
mkelso@susmangodfrey.com

**KIRBY McINERNEY LLP**
Ira M. Press (admitted *pro hac vice*)
Thomas W. Elrod (admitted *pro hac vice*)
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: (212) 371-6600
ipress@kmllp.com
telrod@kmllp.com

*Lead Counsel for Plaintiffs and the Settlement Class*

**TABLE OF CONTENTS**

I.      Preliminary Statement: Overview of the Claims and the Significant
        Recovery Achieved ........................................................................................... 4

        A.      Overview of the Claims ....................................................................... 4

        B.      The Significant Results Achieved ....................................................... 5

II.     Procedural History of the Litigation and Settlement ..................................... 6

        A.      Procedural History of the District Court Litigation .......................... 6

        B.      Lead Plaintiffs' Efforts to Preserve Classwide Claims in the
                Bristow Bankruptcy ............................................................................ 9

III.    The Fairness and Reasonableness of the Settlement .................................... 13

IV.     The Court's Preliminary Approval Order and Lead Plaintiffs'
        Dissemination of Pre-Hearing Notice .......................................................... 17

V.      Summary of the Plan of Allocation .............................................................. 19

VI.     Lead Counsel's Application for an Award of Attorneys' Fees and
        Reimbursement of Expenses, and Request for Service Awards for
        Named Plaintiffs ........................................................................................... 22

        A.      Lead Counsel's Request for an Award of Attorneys' Fees.............. 22

                1.  Lead Counsel's Qualifications and Work to Date .................... 22

                2.  Lead Counsel's Request for a 33% Fee Award ........................ 24

        B.      Lead Counsel's Request for Litigation Expense Reimbursement ... 28

        C.      The Reaction of the Settlement Class to the Fee and Expense
                Application....................................................................................... 29

VII.    Service Award Request for the Exchange-Based Plaintiffs........................... 30

VIII.   Additional Exhibits ...................................................................................... 30

IX.     Conclusion .................................................................................................... 31

i

**TABLE OF EXHIBITS**

| Ex. | Description of Exhibit |
|---|---|
| A | Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements 2020 Review and Analysis*, Cornerstone Research (2021) ("Cornerstone Report") |
| B | Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*, NERA Economic Consulting ("NERA Report") |
| C | Declaration of Markham Sherwood of Angeion Group Regarding: (A) Mailing of Notice and Proof of Claim; (B) Publication of the Publication Notice; and (C) Report on Requests for Exclusion and Objections Received, dated June 30, 2021 with Exhibits A-F ("Angeion Decl.") |
| D | Joint Declaration of Andrew Abernathey, Jay Abernathey, and Guy Abernathey in Support of Lead Plaintiffs' Motion for: (1) Final Approval of Class Action Settlement; (2) Approval of Plan of Allocation; (3) Award of Attorneys' Fees and Expenses; and (4) Award to Lead Plaintiffs Pursuant to 15 U.S.C. § 78u-4(a)(4) ("Lead Plaintiffs Decl.") |
| E | Declaration of Barry Barnett in Support of Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Litigation Expense filed on behalf of Susman Godfrey L.L.P. with Exhibits 1 (lodestar report), 2 (expense report), and 3 (firm resume) ("Barnett Declaration") |
| F | Declaration of Thomas W. Elrod in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expense Filed on Behalf of Kirby McInerney LLP with Exhibits 1 (lodestar report), 2 (expense report), and 3 (firm resume) ("Elrod Declaration") |
| G | Declaration of Joseph G. Epstein in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expense Filed on Behalf of Joseph G. Epstein PLLC with Exhibits 1 (lodestar report), 2 (expense report), and 3 (firm resume) ("Epstein Declaration") |
| H | Table compiled by Settlement Class Counsel with: (1) billing rates for plaintiffs' firms in cases involving securities and other comparable complex class actions; and (2) billing rates of law firms that regularly defend securities and comparable class actions from fee applications submitted by such firms |
| I | Compendium of unreported cases, documents, and authorities, in alphabetical order by case name, cited in the accompanying final approval settlement brief and fee brief |

We, BARRY BARNETT and THOMAS W. ELROD, declare, pursuant to 28 U.S.C. § 1746, as follows:

1.      We, Barry Barnett and Thomas W. Elrod, are partners in the law firms of Susman Godfrey LLP ("Susman Godfrey") and Kirby McInerney LLP ("Kirby McInerney"), respectively. Susman Godfrey and Kirby McInerney are the Court-appointed Lead Counsel ("Lead Counsel") for the Court-appointed Lead Plaintiffs in this matter, Andrew Abernathey, Jay Abernathey, Guy Abernathey, and Meridian Investments I, LLC ("Lead Plaintiffs").[1] We have personal knowledge of the matters set forth herein based on our participation in the prosecution and settlement of the claims asserted on behalf of the Settlement Class in this Action.[2]

2.      We respectfully submit this Joint Declaration in support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, Approval of Plan of Allocation, and Certification of Settlement Class (the "Final Approval Motion").

3.      As explained in greater detail herein, this Settlement was reached only after comprehensive inquiry into the merits of the claims alleged and the likely damages that could be recovered by the Settlement Class, and arm's-length bargaining by experienced and knowledgeable counsel on both sides, under the supervision of a respected mediator, which resulted in an outstanding Settlement for the Settlement Class.  The Settlement confers a

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated January 27, 2021 (the "Stipulation"), which was previously filed with the Court on January 28, 2021 (ECF No. 56-1).

[2] As defined in ¶1(tt) of the Stipulation, the "Settlement Class" is "all Persons or entities who, between February 8, 2018 and February 12, 2019, inclusive, purchased or otherwise acquired Bristow's common stock and were damaged thereby. Excluded from the Settlement Class are the Settling Persons; members of the Settling Persons' Immediate Families; the Settling Persons' legal representatives, heirs, executors, administrators, predecessors, successors, assignees or assigns, and any entity in which they have or had a controlling interest; any trust of which any Settling Person is the settlor or which is for the benefit of any Settling Person and/or member(s) of his or her family; Defendants' liability insurance carriers; and the current and former officers and directors of the Company.  Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court." *See* Stipulation, ECF No. 56-1 at ¶1(tt).

1

substantial immediate benefit to the Settlement Class and is eminently fair, reasonable, and adequate given the legal hurdles and risks involved in proving liability and damages.  The Settlement also avoids the further risk, delay, and expense had this case continued through class certification, discovery, summary judgment, and to trial.  Lead Counsel respectfully submits that under the circumstances, the Settlement is in the best interest of the Settlement Class and should be approved.

4.      The Court preliminarily approved the Settlement in its Order Preliminarily Approving Settlement and Providing For Notice.  *See* ECF No. 61.

5.      We also submit this Joint Declaration in support of Lead Plaintiffs' proposed Plan of Allocation of the Settlement Fund.  The Plan of Allocation, which is set forth fully in the Notice, provides that Class Members who submit acceptable Proof of Claim Forms will receive a *pro rata* share of the Net Settlement Fund, *i.e.*, the Settlement consideration less specific court-approved fees and expenses.

6.      We also submit this Joint Declaration in support of Plaintiffs' Counsel's application for an award of attorneys' fees, reimbursement of Plaintiffs' Counsel's out-of-pocket litigation expenses, and service awards for Lead Plaintiffs.  Plaintiffs' Counsel includes Lead Counsel, Susman Godfrey and Kirby McInerney, in addition to Bankruptcy Counsel, Joseph G. Epstein PLLC ("Epstein" or "Bankruptcy Counsel").

7.      As discussed below, the requested fee represents a fair market rate for Plaintiffs' Counsel's services and is further supported by the contingent risk borne by Lead Counsel and the result obtained.  The fees fall within the maximum figure proposed in the Notice available to the Settlement Class and are well within the parameters recognized as appropriate in federal securities class actions such as this Litigation, both under a percentage of recovery analysis and under a

lodestar cross-check analysis. The expenses incurred were all reasonable and necessary for the prosecution of the Litigation and are considerably less than the maximum figure proposed in the Notice available to the Settlement Class.

8. Lead Plaintiffs and Lead Counsel have vigorously litigated this case on behalf of the Settlement Class since its inception. During that time, Lead Counsel committed a substantial amount of time and resources to this case. Lead Counsel reviewed thousands of pages of relevant public documents concerning Bristow to develop the facts and file the detailed amended complaint in this Action that withstood Defendants' motion to dismiss. Lead Counsel also conducted substantial legal research and consulted with experts in the fields of accounting and damages. Additionally, as part of the Settlement, Defendants agreed to provide Lead Counsel with the opportunity to engage in confirmatory discovery, including the review of internal Bristow documents and an interview of Defendant Miller. The confirmatory discovery coupled with the arguments raised in the mediation enabled Lead Counsel to fully assess the strengths and weaknesses of the Litigation and to conclude that settlement is appropriate here.

9. Lead Counsel has prosecuted this Action on a wholly contingent basis and, by doing so, assumed the risk of an unfavorable result. The nature of the alleged improprieties underlying the securities violations alleged here have been analyzed and pled by Lead Counsel. This fee request of 33% of the Settlement Fund is entirely appropriate in light of the benefits conferred to the Settlement Class, the nature of the legal services performed, and the contingent risk undertaken.

10. Significantly, following the distribution of over 13,560 Postcard Notices to potential Class Members, no objections have been filed to date to any aspect of the Settlement, Plan of Allocation, or Plaintiffs' Counsel's fee request. Additionally, to date, there has only been

3

a single request for exclusion from the Settlement Class. The deadline for Class Members to file objections to and requests for exclusions from the Settlement is July 16, 2021.

11. For these reasons and those discussed below, Lead Counsel respectfully submits that the $6.25 million Settlement is an excellent result for the Settlement Class and should be approved as fair, reasonable, adequate, and worthy of approval, that the proposed Plan of Allocation is equitable and just, and that the requested attorneys' fees of 33% of the $6.25 million Settlement Fund and expense reimbursement should be awarded in full.

## I. Preliminary Statement: Overview of the Claims and the Significant Recovery Achieved

### A. Overview of the Claims

12. Lead Plaintiffs' operative claims in this Action are stated in the Consolidated Amended Class Action Complaint (ECF No. 34) (the "Complaint"). The Complaint asserts claims against Defendants for violations of the federal securities laws, specifically Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder during the period between February 8, 2018 through and including February 12, 2019.

13. Bristow, at all relevant times, was a Delaware corporation headquartered in Houston, Texas that provided industrial aviation services, primarily through its fleet of approximately 400 rotary (helicopter) and fixed-wing aircraft. During the Settlement Class Period, shares of Bristow common stock traded on the NYSE. Settling Defendants include Jonathan Baliff (Bristow's CEO, and a member of Bristow's Board, throughout the Class Period) and L. Don Miller (Bristow's CFO during the Class Period and CEO following the Class Period).

14. The Complaint alleged that during the Settlement Class Period, Defendants made false and/or materially misleading statements concerning Bristow's internal controls relating to non-financial covenants, which inflated the price of Bristow's publicly traded common stock.

4

Lead Plaintiffs alleged, among other things, that artificial inflation was removed from the price of Bristow common stock as a result of the alleged corrective disclosures that occurred on February 6, 2019, February 11, 2019, and February 12, 2019.

### B.    The Significant Results Achieved

15.    After approximately two years of hard-fought litigation, Lead Plaintiffs have succeeded in obtaining a $6.25 million cash recovery for the Settlement Class from Defendants Jonathan Baliff and L. Don Miller, which has been deposited in an interest-bearing escrow account.

16.    As set forth in the Stipulation, in exchange for this payment, the proposed Settlement resolved all claims asserted by Lead Plaintiffs and the Settlement Class against released Defendants in the Action. *See* Section V, *infra*.

17.    The proposed Settlement was reached only after an intensive full-day Zoom mediation session under the auspices of Jed D. Melnick, Esq. (JAMS), a highly experienced and well-respected mediator. *See* Section III, *infra*. Although the mediation did not result in a settlement, Mr. Melnick continued to hold settlement discussions that resulted in the Parties accepting a mediator's proposal. *Id.*

18.    Before agreeing to the Settlement, Lead Counsel conducted a thorough and substantive factual investigation into the events and circumstances underlying the alleged claims in this Action. Lead Counsel also extensively researched the applicable law with respect to Lead Plaintiffs' claims and Defendants' potential defenses before agreeing to the Settlement. As a preliminary matter, Lead Counsel successfully preserved classwide claims following an attempt to release those claims in connection with the Bristow Bankruptcy (defined herein). *See* Section II.B, *infra*. Lead Counsel also successfully opposed Defendants' motion to dismiss, which included oral argument on May 22, 2020. *See* Section II.A, *infra*.

5

19.     As such, based on extensive experience with the facts and applicable law in this matter, at the time the Settlement was reached, Lead Counsel had a thorough understanding of the strengths and weaknesses of the Parties' positions.  *See* Section III, *infra*.

20.     As discussed further below, Lead Plaintiffs obtained a substantial recovery for the Settlement Class despite the significant risks they faced in prosecuting the Action against Defendants at trial.  The Settlement Amount of $6.25 million, when viewed in the context of the risks and uncertainties in this Litigation, and compared to other securities class action settlements, make the Settlement an outstanding result for the Settlement Class.  *See* Section III, *infra*.

## II.     Procedural History of the Litigation and Settlement

### A.     Procedural History of the District Court Litigation

21.     On February 14, 2019, the first of the putative securities-fraud class actions was filed in this Court against Bristow, Baliff, and Miller.  ECF No. 1.

22.     On March 21, 2019, the second of the putative securities-fraud class actions was filed against the same Defendants.  *See* Complaint, *Lilienfeld v. Bristow Group Inc.*, No. 19 Civ. 1064 (S.D. Tex. Mar. 21, 2019), ECF No. 1.

23.     On May 11, 2019, the Company filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas.  *See In re Bristow Group Inc.*, No. 19 BK 32713 (Bankr. S.D. Tex. May 11, 2019) (the "Bristow Bankruptcy" or "Bankr."), ECF No. 1; *see also* ECF No. 28.  Pursuant to the automatic bankruptcy stay, all claims against Bristow were stayed at that point.  In Section II.B, *infra*, we describe Lead Plaintiffs' efforts to preserve classwide claims against Defendants.

24.     On May 14, 2019, after full briefing, the Court appointed Plaintiffs Andrew Abernathey, Jay Abernathey, Guy Abernathey, and Meridian Investments I, LLC as Lead Plaintiffs

and appointed the law firms of Susman Godfrey and Kirby McInerney as Lead Counsel for the putative class.  ECF No. 29.

25.     On May 31, 2019, Lead Plaintiffs and Defendants made submissions to the Court detailing their respective positions with respect to the effect of Bristow's bankruptcy filing on scheduling of proceedings in this Action relating to Lead Plaintiffs' claims against Defendants Baliff and Miller.  *See* ECF Nos. 30 and 31.

26.     On July 22, 2019, the Parties submitted a Joint Stipulation and [Proposed] Order that set forth a proposed schedule for proceedings in this Action relating to Lead Plaintiffs' claims against Defendants Baliff and Miller.  *See* ECF No. 32.

27.     On September 5, 2019, the Court entered a Scheduling Order setting forth deadlines for Lead Plaintiffs to file an amended complaint and for Defendants Baliff and Miller to file a motion to dismiss.  *See* ECF No. 33.

28.     On November 4, 2019, Plaintiffs filed and served their Complaint (ECF No. 34). The Complaint asserted claims against Defendants under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder, alleging that Defendants made false and/or materially misleading statements concerning Bristow's internal controls relating to non-financial covenants, which inflated the price of Bristow's publicly traded common stock.

29.     On January 3, 2020, Defendants filed a motion to dismiss the Complaint, which Plaintiffs opposed on February 18, 2020.  Defendants filed a reply brief in further support of their motion on March 19, 2020.  ECF Nos. 36-37, 40-42.

30.     On May 22, 2020, the Court held telephonic oral argument on Defendants' motion to dismiss.  At the conclusion of the oral argument, the Court denied Defendants' motion in full.

Specifically, the Court acknowledged the strength of the Parties' advocacy and risk of establishing liability going forward.

> To both of you, I wish it were true that in every case I had advocacy of the quality we have heard this morning. I think it's a close call, but for now, I'm going to deny the motion to dismiss, and I may well take another look at it later in the narrative of the case. But for now, I think the facts -- the allegations are well pled and accepting those as true, I think the complaint satisfies the PSLRA and other securities laws.

*See* Transcript at 30:15-22 (ECF No. 53).

31.     On September 14, 2020, the Parties filed a joint motion for entry of order regarding an agreed scheduling order, confidentiality order, and ESI protocol order. *See* ECF No. 49. On September 15, 2020, the Court entered the approved confidentiality and ESI orders. *See* ECF Nos. 50-51. On September 16, 2020, the Court entered a pre-trial scheduling order. *See* ECF No. 52.

32.     In July of 2020, shortly after discovery commenced, the Parties agreed to enter into mediation. As discussed in greater detail herein (*see* Section III, *infra*), on October 15, 2020, the Parties engaged in a full-day Zoom mediation before Jed D. Melnick, Esq., a highly experienced mediator. In advance of that session, the Parties exchanged detailed mediation statements, which outlined their respective analyses of the claims and defenses in the Action, and provided the same to Mr. Melnick. The session was not successful. After continued negotiation, the Parties engaged in additional discussions facilitated by Mr. Melnick, which ultimately culminated in him issuing a mediator's recommendation on October 31, 2020 that the Action be settled for $6,250,000, which, after due consideration, the Parties accepted on November 3, 2020.

33.     On October 16, 2020, Lead Plaintiffs also served their first set of requests for production of documents to Defendants.

34.     On November 11, 2020, the Parties executed a term sheet setting forth all of the material deal points associated with the resolution of the Action. The Parties recognized that a

formal, final settlement agreement still needed to be drafted and executed by the Parties, but that the Parties concurred that all material settlement deal points were set forth therein.  Thereafter, the Parties negotiated and prepared additional Settlement documentation and engaged in confirmatory discovery.

35.     On December 29, 2020, the Parties informed the Court via email that they negotiated a class-wide settlement in principle, subject to additional documentation and Court approval.  The Parties also reported that they would file preliminary settlement approval papers within thirty (30) days.

36.     On January 13, 2021, the Parties participated in a confirmatory interview of Defendant Miller by Zoom.  Prior to this interview, Defendants produced to Lead Plaintiffs internal Bristow documents relating to the Complaint's allegations.  During the confirmatory interview, Lead Counsel had the opportunity to engage Defendant Miller in a full and frank discussion about the Complaint's factual allegations and the claims asserted in this Litigation.

37.     On January 28, 2021, Lead Plaintiffs filed their unopposed motion in support of preliminary approval of class action settlement, certification of the settlement class, and approval of notice of the settlement (the "Preliminary Approval Motion").  *See* ECF No. 55.

38.     On February 5, 2021, the Court held oral argument on Lead Plaintiffs' Preliminary Approval Motion.  Following oral argument, the Court granted Preliminary Approval and established the August 6, 2021 final approval conference.  *See* ECF Nos. 61-62.

**B.     Lead Plaintiffs' Efforts to Preserve Classwide Claims in the Bristow Bankruptcy**

39.     As discussed above, on May 11, 2019, the Company filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy

Court for the Southern District of Texas. *See* Bankr. ECF No. 1. Pursuant to the automatic bankruptcy stay, Lead Plaintiffs' claims against Bristow were stayed at that point.

40.     In connection with the Bristow Bankruptcy, a bankruptcy plan was proposed on or about August 1, 2019 (the "Bankruptcy Plan") (and further amended on or about August 20, 2019) that, if approved, would have released all claims against Bristow, as well as Defendants Baliff and Miller. *See* Bankr. ECF Nos. 498, 574.

41.     On August 19, 2019, with the assistance of Bankruptcy Counsel, Lead Plaintiffs prepared and filed an objection to the August 1, 2019 Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and its Debtor Affiliates (the "Disclosure Statement"). Bankr. ECF No. 557 (the "Disclosure Statement Objection").

42.     On September 23, 2019, Lead Plaintiffs filed an objection to the amended bankruptcy plan that provided for, *inter alia*, broad releases of Bristow's current and former directors and officers (as well as numerous other third parties). Bankr. ECF No. 693 (the "Bankruptcy Plan Objection").

43.     Lead Plaintiffs' Bankruptcy Plan Objection expanded upon the arguments asserted in their prior Disclosure Statement Objection. Lead Plaintiffs argued that the Bankruptcy Court should deny confirmation of the plan – as drafted – because it provided for broad releases of Bristow's current and former directors and officers (as well as numerous other third parties). Specifically, Lead Plaintiffs argued that the plan's Releases represented an attempt by Bristow to (1) extinguish the putative class's claims against the current and former Bristow officers named as Defendants in the securities class action, and (2) cut off access to the directors' and officers' liability insurance Bristow carried that provides a non-Debtor source of recovery for the stockholders Bristow allegedly defrauded – all without ever having to confront Lead Plaintiffs'

10

claims on the merits.  Lead Plaintiffs argued that the proposed third-party releases contravened controlling Fifth Circuit precedent insofar as the Fifth Circuit has "firmly pronounced its opposition to such releases[]" and held that "a non-consensual, non-debtor discharge would not be available in this circuit . . . ."  *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1062, 1060 (5th Cir. 2012).  Lead Plaintiffs also argued that the Fifth Circuit has unambiguously held that its opinions "seem broadly to foreclose non-consensual non-debtor releases and permanent injunctions[,]" explaining that "[t]he fresh start § 524(e) provides to debtors is not intended to serve this purpose."  *In re Pac. Lumber Co.*, 584 F.3d 229, 252–53 (5th Cir. 2009).

44.    Lead Plaintiffs and Bankruptcy Counsel actively participated in the Bankruptcy Plan confirmation hearing held before Chief United States Bankruptcy Judge David R. Jones on October 3 and 4, 2019.  Specifically, Lead Plaintiffs' Bankruptcy Counsel took the lead in examining Brian Allman, the Debtors' Senior Vice President, Chief Financial Officer, and the Debtors' principal witness in support of the proposed Bankruptcy Plan, and James Deloia, the Director of Solicitation and Public Securities with Prime Clerk and the Debtors' bankruptcy notice and plan solicitation agent during the hearings.  The examinations specifically concerned purported deficiencies in the bankruptcy notice program as well as the consideration (or lack thereof) provided by Individual Defendants in exchange for the proposed releases from the securities class action claims as contemplated by the proposed Bankruptcy Plan.  The examination also revealed the third-party releases provided to former officers of the Debtors (named defendants in the class litigation) notwithstanding their lack of any ongoing role with the business or any new consideration for such releases.  In addition, Lead Counsel, together with Bankruptcy Counsel, actively negotiated with Debtors to preserve classwide claims against the Individual Defendants.

11

Finally, Lead Bankruptcy Counsel addressed questions by the Bankruptcy Court and prepared to make closing arguments in support of Lead Plaintiffs' Bankruptcy Plan Objection.

45.     As a result of their efforts in the Bristow Bankruptcy, Lead Plaintiffs successfully preserved classwide claims against the Individual Defendants.   Pursuant to the "Order (I) Approving the Disclosure Statement, (II) Confirming the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Debtor Affiliates, as Further Modified and (III) Granting Related Relief[,]" only claims against Defendants were excluded from the third-party releases.  *See* Bankr. ECF No. 822-1 at ¶40 ("solely with respect to securities class action claims that have been asserted against the previously named Individual Defendants (the 'Named Defendants') in the securities litigation styled: *In re Bristow Group Inc. Securities Litigation*, Case No. 19-cv-00509 (KPE), in the United States District Court for the Southern District of Texas, Houston Division ('Securities Litigation'), the term 'Releasing Parties' shall not include Persons or Entities that purchased or otherwise acquired Existing Interests between February 8, 2018 and February 12, 2019, inclusive, that are seeking to pursue remedies under the Securities Exchange Act of 1934 . . . ."))  Further, liability was restricted to amounts covered by available D&O Policy limits.  *Id.*

46.     There was substantial risk that the Bristow Bankruptcy could have released all of the Settlement Class members' claims against Defendants.  Notably, in confirming the bankruptcy plan of Weatherford International PLLC on September 11, 2019, Judge Jones rejected attempts by an equityholder to preserve securities claims against defendants on a classwide basis.  Specifically, in confirming the Weatherford plan, the court overruled the objection from equityholder GAMCO Asset Management ("GAMCO").  *See In re: Weatherford Int'l PLC*, No. 19 BK 33694 (DRJ) (Bankr. S.D. Tex.), ECF No. 343.  The court agreed with the debtors' position that GAMCO did

12

not have standing to assert rights on behalf of potential participants in GAMCO's recently filed class action who did not themselves opt out of the releases. *Id.*

47.    Thus, Lead Plaintiffs and Lead Counsel conferred a substantial benefit upon the Settlement Class by securing a carveout of claims against Defendants through the Bristow Bankruptcy Proceeding.  In stark contrast, the Ad Hoc Equity Committee failed to secure any compensation for Equityholders through the Bristow Bankruptcy.  As such, this Settlement represents the only recovery source for Bristow shareholders who acquired shares of Bristow common stock during the Settlement Class Period.

### III.    The Fairness and Reasonableness of the Settlement

48.    Pursuant to the Stipulation, filed with this Court on January 28, 2021, *see* ECF No. 56-1, and preliminarily approved by the Court by Order dated February 5, 2021, *see* ECF No. 61, Defendants have caused the $6.25 million to be deposited into the Settlement Fund.  The Settlement Fund is in a money market mutual fund which invests in securities backed by the full faith and credit of the U.S. Government and has been earning interest for the benefit of the Settlement Class since February 26, 2021.

49.    Lead Plaintiffs believe that the Settlement, which obtains $6.25 million in cash for the Class, is a fair and reasonable recovery.  The Settlement was only reached after extensive arm's-length negotiations among counsel with significant experience in securities class action litigation, following vigorous litigation, including a carefully conducted investigation, settlement-related confirmatory discovery, and with the recommendation of Mr. Melnick of JAMS, who has substantial experience mediating the resolution of securities class action litigations.  Specifically, before the October 15, 2020 mediation session, the Parties exchanged detailed mediation statements.  During the mediation, the Parties gave thoughtful presentations on the perceived strengths and weaknesses of their respective claims and defenses and had frank discussions

concerning the merits. The negotiations focused on disputed issues of whether any of the Defendants acted with the requisite scienter, on loss causation, and on the appropriate amount of damages.

50. After the mediation ended without an agreement to settle, the Mediator facilitated further discussion with the Parties, which ultimately culminated in the Parties accepting the Mediator's proposal on November 3, 2020.

51. Lead Plaintiffs and Lead Counsel believe the asserted claims have considerable merit, but also recognize that the risks of continued litigation were substantial. Continued litigation would be complex, expensive, and lengthy, with a favorable outcome highly uncertain. The factors bearing on the amount of the compromise include, among other things, the following facts and risks:

a. Lead Counsel's extensive investigation, factual discovery, and legal research of the claims asserted in this Action, which helped to evaluate and sharpen the understanding of the strengths and weaknesses of these claims, including:

i. In drafting the Complaint and during the PSLRA automatic discovery stay, Lead Counsel conducted an extensive factual investigation, which included a detailed review of: (i) Bristow's SEC filings, press releases, conference calls, news reports, and Defendants' other public statements made prior to, during, and after the Class Period; (ii) public documents, reports, announcements, and news articles concerning Bristow; (iii) research reports by securities and financial analysts; (iv) economic analyses of stock price movement and pricing data; (v) through a private investigator, conducting fact interviews with former employees; and (vi) consulting with experts in the fields of accounting and loss causation and damages;

14

b.      Lead Plaintiffs have determined that there are obstacles to establishing Defendants' liability and any damages. These potential obstacles include, among other things:

i.      that Lead Plaintiffs may be unable to prove that any statements Defendants made concerning Bristow's internal controls were materially misleading and/or made with the requisite state of mind to support the securities fraud claim alleged;

ii.      that Lead Plaintiffs may be unable to prove that all of the statements challenged in the operative complaint are actionable under the federal securities laws, or that Lead Plaintiffs and members of the Settlement Class were damaged by those alleged statements;

iii.      that Lead Plaintiffs may be unable to prove that the February 6, 2019, February 11, 2019, and February 12, 2019 disclosures corrected any misrepresentations, and even if they did, that a substantial portion of the stock price declines that followed these disclosures were caused by disclosures relating to the alleged misrepresentations, as opposed to market or industry factors or disclosure of other information unrelated to the alleged fraud; and

iv.      that the class proposed by Lead Plaintiff would not be certified, and/or that it might only be certified for part of the Class Period for which certification was sought.

c.      Additionally, during the confirmatory discovery process, Lead Counsel heard Defendants' explanation of the basis and rationale for Bristow's internal control issues. While Lead Plaintiffs believe that there is evidence to support their claims, Lead Plaintiffs also believe that there is a substantial risk that a jury, upon hearing Defendants' testimony and seeing the evidence that Defendants would proffer, would conclude that Defendants did not act with scienter; and

15

d.    The significant time and expense necessary to continue to prosecute Lead Plaintiffs' claims against Defendants through class certification (including any 23(f) appeals), completion of fact and expert discovery, summary judgment, trial, and any subsequent appeals.

52.    Considering these risks, Lead Counsel believes that the percentage of recovery is substantial and well above the range of other securities class action settlements with similar total damage amounts. Lead Plaintiffs' consulting damages expert estimates that if Lead Plaintiffs had fully prevailed in each of their claims at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Lead Plaintiffs' damages theory, including proof of loss causation as to each of the three stock price drop dates alleged in this case – *i.e.*, under the best case scenario, Lead Plaintiffs' total maximum damages would be $36 million.[3] Thus, the $6.25 million Settlement Amount represents 17.36% of the total maximum damages potentially available in this Litigation. In comparison, in securities class actions in 2020 where estimated damages were between $25 million and $74 million, the median recovery was only 5.3% of estimated damages. *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements 2020 Review and Analysis*, Cornerstone Research (2021) ("Cornerstone Report"), attached as Exhibit A hereto at 6, Figure 5; *id.* at 20, Appendix 6 (reporting that the median recovery from 2011 – 2020 was 4.3% of damages for Section 10(b) class action cases in the Fifth Circuit).

53.    Additionally, according to a 2021 report by NERA Economic Consulting, the "median ratio of settlement value to . . . Investor Losses" was 5.2% for cases with investor losses between $20 million and $50 million. *See* Janeen McIntosh & Svetlana Starykh, *Recent Trends in*

---

[3] This estimate is predicated on a trading model that estimates the number of Bristow shares that traded during the Settlement Class Period and suffered losses following the February 6, 2019, February 11, 2019, and February 12, 2019 disclosures.

*Securities Class Action Litigation: 2020 Full-Year Review*, NERA Economic Consulting ("NERA Report") at 19, attached as Exhibit B.

54.     Lead Plaintiffs and Lead Counsel believe that this Settlement represents an excellent recovery for the Settlement Class, is in the best interests of the Settlement Class, is well within the range of reasonableness, and compares favorably with recoveries obtained in other securities-fraud related cases including in this Circuit.

## IV.     The Court's Preliminary Approval Order and Lead Plaintiffs' Dissemination of Pre-Hearing Notice

55.     In the Preliminary Approval Order, the Court made the following findings, determinations, and directives, among others:

(i)     Certifying the Litigation as a class action for purposes of the Settlement under Federal Rules of Civil Procedure 23(a) and (b)(3) a Settlement Class consisting of all persons or entities who, between February 8, 2018 and February 12, 2019, inclusive (the "Settlement Class Period"), purchased or otherwise acquired Bristow's common stock and were damaged thereby;

(ii)     Granting preliminary approval of the Settlement as fair, reasonable, and adequate to warrant dissemination of notice to the Settlement Class and a hearing on the fairness of the Settlement;

(iii)     Scheduling a hearing (the "Settlement Hearing") to consider, among other things: whether the proposed Settlement is fair, reasonable, and adequate, and should be finally approved; whether the proposed Plan of Allocation of the Net Settlement Fund is fair, reasonable, and adequate, and should be approved; whether the Order and Final Judgment as provided under the Stipulation should be entered; and whether Lead Counsel's application for an award of attorneys' fees and reimbursement expenses should be granted;

(iv)     Approving the form and content of the Postcard Notice, the Notice of (I)

Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Long Form Notice"), the Proof of Claim Form, and the Summary Notice;

(v)   Authorizing Lead Counsel to retain the Angeion Group ("Claims Administrator" or "Angeion") to supervise and administer the Notice and claims procedure, under the supervision of Lead Counsel, and directing that the Notice be disseminated; and

(vi)   Establishing procedures and deadlines for Settlement Class Members to exclude themselves or object to the Settlement, Plan of Allocation, and the attorneys' fees and reimbursement of expenses requested by Lead Counsel.

56.   Annexed hereto as Exhibit C is the Declaration of Markham Sherwood of Angeion Group Regarding: (A) Mailing of Notice and Proof of Claim; (B) Publication of the Publication Notice; and (C) Report on Requests for Exclusion and Objections Received, dated June 30, 2021 with Exhibits A-F ("Angeion Decl."). The Angeion Declaration attests to, among other things, the efforts made to disseminate the Postcard Notice, Long Form Notice, and Proof of Claim Form (collectively, the "Notice Materials"), and publication of the Summary Notice, all in compliance with the Preliminary Approval Order. *See* Angeion Decl. ¶¶ 2-11. The Long Form Notice, Proof of Claim Form, and other relevant case documents were also posted in downloadable form on a website created specifically in connection with the Settlement. *See id*. ¶ 12. The Summary Notice was also published once in Investor's Business Daily on March 15, 2021 and issued once over PR Newswire on March 15, 2021. *Id.* ¶ 11 & Exs. D and E thereto.

57.   As directed by the Court, Lead Counsel has actively monitored the progress of the notice program and administration of the Settlement through telephone conferences and email

18

communications with Angeion. This has enabled Lead Counsel to monitor the creation and distribution of Notice Materials by Angeion to Settlement Class Members.

58. Pursuant to Paragraph 7 of the Preliminary Approval Order, on March 8, 2021, a total of 372 Postcard Notices were disseminated to potential Settlement Class Members in the initial mailing. Angeion Decl. ¶¶ 4-5. After the initial mailing of the Postcard Notice to record holders, Angeion also received requests from brokers and other nominees to send a copy of the Postcard Notice directly to the broker or nominee's customers. *See id.* ¶¶ 6-7. As of June 30, 2021, a total of 13,563 Postcard Notices have been mailed to potential Settlement Class Members and their nominees. *See id.* ¶ 8. As of June 30, 2021, 243 were returned as undeliverable. *Id.* ¶ 9. Angeion has remailed 137 Postcard Notices to persons whose original mailings were returned by the U.S. Postal Service ("USPS") and for whom updated addresses were successfully found. *Id.* Additionally, as of June 30, 2021, Angeion has mailed 62 Long Form Notice and/or Claim Forms directly to Settlement Class Members that requested copies of those documents to be mailed to them. *Id.* ¶ 10. The Long Form Notice set out the essential terms of the Settlement including, *inter alia*, Class Members' right to exclude themselves from the Settlement Class or object to any aspect of the Settlement. *See id.* at Ex. B, Long Form Notice.

## V. Summary of the Plan of Allocation

59. As approved by the Court for Settlement purposes, the Settlement Class is defined as all Persons who purchased Bristow common stock during the period between February 8, 2018 and February 12, 2019, inclusive, (the "Settlement Class Period"), and who were damaged thereby.

60. Under the terms of the proposed Settlement, the Parties have agreed that Lead Plaintiffs and each of the other Settlement Class Members shall waive and release each and every Released Plaintiffs' Claim against the Defendants and the Defendants' Released Parties in

19

exchange for a payment by or on behalf of Defendants of $6.25 million for the benefit of the Settlement Class, as set forth in greater detail in paragraphs 4-6 of the Stipulation.

61.     As explained in the Notice, all Settlement Class Members wishing to participate in the Settlement are to file a valid Proof of Claim Form on or before July 6, 2021.  Angeion Decl. Exs. B and C.  After the Claims Administrator completes the claims administration process, Lead Counsel will file a distribution motion with the Court which will address, *inter alia*, the number of Settlement Class Members who submitted valid claims and who are eligible to receive a distribution from the Settlement Fund.

62.     As set forth in the Notice, Settlement Class Members who file timely and valid Proof of Claim Forms will receive distributions from the Net Settlement Fund, after deduction of fees and expenses approved by the Court, notice and administration costs, and taxes incurred on interest income earned by the Settlement Fund.  The distributions will be made in accordance with the Plan of Allocation set forth and described in detail in the Long Form Notice (Angeion Decl. Ex. B at 9-10).  The Plan of Allocation was developed by Lead Counsel in connection with the Claims Administrator.

63.     As explained in the Notice, the Plan of Allocation apportions the recovery among Settlement Class Members who acquired Bristow shares during the Settlement Class Period and were damaged thereby.  The Plan of Allocation is based on an out-of-pocket theory of damages consistent with Section 10(b) of the Exchange Act.  The Plan of Allocation reflects an assessment of the damages that may have been recovered in the Litigation, had liability been successfully established, based on the amount of inflation that was removed from the price of Bristow shares as a result of the corrective disclosures.  The Plan of Allocation calculates each Settlement Class Member's total Recognized Losses and allocates recovery based on the timing of each Settlement

20

Class Member's purchases and sales relative to the Bristow share price declines after the disclosures. Specifically, the Recognized Loss is applied to shares that were purchased during the Settlement Class Period and held through the time of the alleged corrective disclosures on February 6, 2019, February 11, 2019, and February 12, 2019.

64.    Each Settlement Class Member will receive his, her, or its *pro rata* share of the Net Settlement Fund based on the calculation of his, her, their, or its Recognized Loss. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

65.    An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including the number of valid claims filed by other Claimants, how many shares of Bristow common stock the Claimant purchased or sold during the Settlement Class Period, and when that Claimant bought or sold the shares. If a Claimant has an overall market gain with respect to his, her, or its overall transactions in Bristow stock during the Settlement Class Period, or if the Claimant purchased shares during the Settlement Class Period but did not hold any of those shares through at least one of the alleged corrective disclosures, the Claimant's recovery under the Plan of Allocation will be zero, as any loss suffered would not have been caused by the revelation of the alleged fraud. Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Class Members who submit valid claims.

66.    Lead Plaintiffs and Lead Counsel respectfully submit that the Plan of Allocation is fair and reasonable and should be approved by the Court.

VI.    **Lead Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Expenses, and Request for Service Awards for Named Plaintiffs**

67.    For their efforts on behalf of the Settlement Class, Lead Counsel seek an award of attorneys' fees of 33% of the Settlement Fund (*i.e.*, $2,062,500) to compensate them for the services they have rendered on behalf of the Settlement Class. *See* Section VI.A, *infra*. Lead Counsel also requests reimbursement of expenses incurred in connection with the prosecution of this Action in the amount of $60,618.84. *See* Section VI.B, *infra*. Lead Counsel respectfully requests service awards in the amount of $2,500 for each of the four Lead Plaintiffs (*i.e.*, an amount totaling $10,000). *See* Section VII, *infra*.

A.    **Lead Counsel's Request for an Award of Attorneys' Fees**

1.    **Lead Counsel's Qualifications and Work to Date**

68.    Susman Godfrey and Kirby McInerney are both law firms with extensive experience in complex class action litigation, including securities litigation. Those credentials are set forth in Lead Counsel's firm resumes. *See* Exhibit 3 in each of the attached declarations annexed hereto as Ex. E (Susman Godfrey declaration) and Ex. F (Kirby McInerney declaration).

69.    From the outset, Lead Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Lead Counsel ensured that sufficient resources were dedicated to the prosecution of the Action, and that funds were available to compensate staff and to cover the considerable litigation costs that a case like this requires. With an average lag time of several years for these cases to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Lead Counsel received no compensation during the course of the Action and have

22

collectively incurred significant Litigation Expenses in prosecuting the Action for the benefit of the Settlement Class.

70. As courts have recognized, it is in the public interest to have experienced and able counsel enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies. Congress has likewise recognized, through the passage of the PSLRA, that vigorous private enforcement of the federal securities laws can only occur if private investors take an active role in securities litigations and are represented by first-rate counsel that are adequately compensated for their work and for bearing the risks of prosecuting claims on a purely contingent-fee basis.

71. As discussed above, Lead Counsel prosecuted the Litigation vigorously against Defendants and expended substantial time and resources litigating this case. *See* Sections I.B, II.A and II.B, *supra*. Lead Counsel further worked diligently to finalize and document the Settlement through negotiations with Defendants, the motion for preliminary approval, and the motion for final approval. Lead Counsel also oversaw the Claims Administrator and the notice process. Furthermore, Lead Counsel will be appearing at the final Settlement Hearing and will continue to oversee the administration of the Settlement.

72. The quality of Lead Counsel's work in attaining the Settlement is notable in light of the quality of the opposition. Defense Counsel was equally well-informed regarding the case, and their representation of Defendants was no less rigorous than Lead Counsel's representation of the Settlement Class. Defendants in this Litigation were represented by King & Spalding LLP throughout the Litigation and settlement negotiations. King & Spalding is a prominent international defense-oriented firm with offices worldwide and over one thousand attorneys. Similarly, Baker Botts L.L.P., an international law firm comprised of over 700 lawyers,

23

represented Bristow in connection with the Bankruptcy Proceeding.  In the face of this experienced and formidable opposition of these defense firms, Lead Counsel was nonetheless able to develop a case that was sufficiently strong to: i) survive an attempt to release claims in connection with the Bristow Bankruptcy; ii) survive Defendants' motion to dismiss; and iii) persuade the Defendants to settle the case on terms favorable to the Settlement Class.

### 2.      Lead Counsel's Request for a 33% Fee Award

73.     Lead Counsel has represented the Settlement Class on a wholly contingent-fee basis for over two years, not receiving any payment for their services or the expenses incurred in prosecuting this Action against Defendants and negotiating the Settlement.  Throughout this time, Lead Counsel's dedication to recovering a favorable result for the Settlement Class has been expensive and challenging.

74.     Lead Counsel requests that the Court award a fee of thirty-three percent (33%) of the Settlement Fund, or $2,062,500.

75.     Lead Counsel intends to share part of any attorneys' fees awarded by the Court with other counsel in accordance with their level of contribution to the initiation, prosecution, and resolution of the Action, as provided for in paragraphs 16-18 of the Stipulation.  Specifically, Lead Counsel intends to compensate Bankruptcy Counsel, Joseph G. Epstein PLLC, for its contributions in opposing efforts to release all claims against Defendants in connection with the Bristow Bankruptcy.  *See* Section II.B, *supra*.

76.     As discussed in Lead Counsel's Memorandum of Law in Support of Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards for Lead Plaintiffs, filed concurrently herewith, the requested fee is within the range of reasonable fees awarded in common-fund cases, and is in accordance with the precedents of the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit.  The thirty-three percent (33%) fee is

also strongly supported and should be approved based on the facts of this case, including the superb result achieved for the Settlement Class, the skill required, the quality of work performed, and the risk of pursuing claims on a contingency basis.

77.     In addition, Lead Plaintiffs played an active role in supervising and participating in the prosecution and settlement of the Action and were approved by the Court to serve as Class Representatives.  Each of the Lead Plaintiffs has endorsed the requested attorneys' fee as fair and reasonable in light of the results achieved, the work counsel performed, and the risks of the litigation.  *See* Joint Declaration of Andrew Abernathey, Jay Abernathey, and Guy Abernathey in Support of Lead Plaintiffs' Motion for: (1) Final Approval of Class Action Settlement; (2) Approval of Plan of Allocation; (3) Award of Attorneys' Fees and Expenses; and (4) Award to Lead Plaintiffs Pursuant to 15 U.S.C. § 78u-4(a)(4) ("Lead Plaintiffs Decl.") at ¶¶ 5-14, attached hereto as Exhibit D.

78.     Annexed hereto as Exhibit E is the Declaration of Barry Barnett in Support of Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Litigation Expense filed on behalf of Susman Godfrey L.L.P. with Exhibits 1 (lodestar report), 2 (expense report), and 3 (firm resume) ("Barnett Declaration").

79.     Annexed hereto as Exhibit F is the Declaration of Thomas W. Elrod in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expense Filed on Behalf of Kirby McInerney LLP with Exhibits 1 (lodestar report), 2 (expense report), and 3 (firm resume) ("Elrod Declaration").

80.     Annexed hereto as Exhibit G is the Declaration of Joseph G. Epstein in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation

25

Expense Filed on Behalf of Joseph G. Epstein PLLC with Exhibits 1 (lodestar report), 2 (expense report), and 3 (firm resume) ("Epstein Declaration").

81.     As described in the Epstein Declaration, Lead Counsel retained the law firm of Joseph G. Epstein PLLC to serve as Bankruptcy Counsel in connection with the Bristow Bankruptcy. Epstein Decl. ¶¶ 4, 6. The terms of the retention specified a hybrid compensation model. Specifically, Lead Counsel agreed to pay the first thirty (30) hours of Joseph G. Epstein PLLC's time at the law firm's then current hourly rate. *Id.* ¶ 5. The retention specified that the remainder of Joseph G. Epstein PLLC's time in connection with this matter would be compensated on a wholly contingent basis – namely, Lead Counsel agreed to compensate Joseph G. Epstein PLLC for its additional work from any Court-awarded attorneys' fees following a settlement of this Action. Epstein Decl. *Id*. As set forth in the Barnett and Elrod Declarations, Lead Counsel already compensated Joseph G. Epstein PLLC a total of $15,000 for services rendered in connection with the Bristow Bankruptcy. *See* Barnett Declaration, Ex. 2 (specifying $5,250 in payments made by Susman Godfrey to Bankruptcy Counsel); Elrod Declaration, Ex. 2 (specifying $9,750 in payments made by Kirby McInerney to Bankruptcy Counsel). Lead Counsel respectfully submits the $15,000 in prior payments to Joseph G. Epstein PLLC for reimbursement as litigation expenses. Lead Counsel respectfully incorporates Joseph G. Epstein PLLC's additional, uncompensated lodestar as part of its attorneys' fee request. *See* Table 1, *infra*; Epstein Decl. ¶¶ 5, 9.

82.     As set forth in their Declarations, Plaintiffs' Counsel's lodestar figures for time submitted in connection with the attorneys' fee request are based upon the firms' current billing rates (subject to annual increases) and do not include charges for expense items. For personnel who are no longer employed by the firms, the lodestar calculation is based on the billing rates for

such personnel in his or her final year of employment by the firm. In addition, time expended on Lead Counsel's application for attorneys' fees and reimbursement of litigation expenses has also been excluded. Each firm also reviewed its time and expenses for accuracy, necessity, and reasonableness. *See* Exs. E-G, Plaintiffs' Counsel's declarations.

83. The declarants from each firm comprising Plaintiffs' Counsel attest that the hourly rates for the attorneys and professional support staff are in line with the rates by other lawyers at law firms handling large, complex class action litigation and/or which have been accepted in other complex or class action litigation, subject to subsequent annual increases.

84. From inception of the Action, the total number of hours expended by Plaintiffs' Counsel is 1,936.80 hours. The total lodestar is $1,349,618.00, consisting of $1,139,188.00 for attorneys' time and $210,430.00 for professional support staff time. *See* Table 1, *infra*. The requested fee of $2,062,500 (or 33% of the Settlement Fund) results in a multiplier of approximately 1.53 to Plaintiffs' Counsel's total submitted lodestar of $1,349,618.00. Additional time will be expended during the administration of the Settlement, however, Lead Plaintiffs' Counsel will not seek a fee for that work.

85. The following chart summarizes the aggregate hours, lodestar, and expenses of Plaintiffs' Counsel set forth in the attached declarations. *See* Exs. 1 and 2 in each of Plaintiffs' Counsel's attached declarations (Exs. E-G).

| TABLE 1: Plaintiffs' Counsel's Summary Hours, Lodestar, and Expenses | | | |
|---|---|---|---|
| FIRM NAME | HOURS | LODESTAR | EXPENSES |
| Susman Godfrey L.L.P. | 282.40 | $210,122.50 | $8,092.30 |
| Kirby McInerney LLP | 1,562.40 | $1,084,755.50 | $52,453.57 |
| Joseph G. Epstein PLLC[4] | 92.00 | $54,740.00 | $72.97 |
| TOTAL: | 1,936.80 | $1,349,618.00 | $60,618.84 |

---

[4] *See* n. 81, *supra*.

27

86.     Based upon the attached declarations, we believe that Lead Counsel's requested fee award is fair, reasonable, and justified, whether calculated as a percentage of the fund or as a multiple of counsel's lodestar.

87.     Annexed hereto as Exhibit H is a table created to reflect billing rates for partners and non-partners for plaintiffs' firms in cases involving securities and other comparable complex class actions.  The information in this chart is taken from court records in the cases referenced in the chart.

88.     Annexed hereto as Exhibit H is a table created to reflect billing rates of law firms that regularly defend securities and comparable class actions compiled by Settlement Class Counsel from fee applications submitted by such firms.  This chart includes rates for attorneys employed by King & Spalding LLP (Defendants' counsel in this Action) as well as Baker Botts L.L.P. (Bristow's Bankruptcy Counsel).

**B.      Lead Counsel's Request for Litigation Expense Reimbursement**

89.     Our statements and summaries in this section are based on the Declarations set forth in Exhibits E through G.  Through the pendency of this Litigation, Lead Counsel has sought to ensure that sufficient resources were dedicated to prosecuting Plaintiffs' claims.  Lead Counsel advanced the litigation expenses required to pursue and complete such complex litigation with no guarantee of repayment.  Based on the attached declarations, Plaintiffs' Counsel have incurred a total of $60,618.84 in unreimbursed expenses in connection with the prosecution of this Action. We believe these expenses were reasonably necessary to the prosecution of this Action and are of the type that Plaintiffs' Counsel normally incurs in litigation and that would be reimbursed by clients under fee arrangements where the client was paying expenses.

28

90.    The following schedule was prepared from Exhibit 2 in each of the attached declarations.  Out of town travel, hotels, meals, internal copying, and online research charges were all subject to caps.

| TABLE 2: CUMULATIVE EXPENSES BY CATEGORY ||
| EXPENSE CATEGORY | CUMULATIVE EXPENSES |
| --- | --- |
| Bankruptcy Counsel | $15,000.00 |
| Court Filing Fees & Hearing Transcripts | $908.10 |
| Experts | $6,785.00 |
| Investigative Services | $16,143.20 |
| Document Retrieval (Including Pacer) | $7,888.61 |
| Mediation Fees | $12,132.00 |
| Telephones/Faxes | $297.67 |
| Transportation, Hotels & Meals | $1,432.71 |
| Messenger/Delivery Services | $14.95 |
| Copies | $16.60 |
|  |  |
| **TOTAL EXPENSES** | **$60,618.84** |

### C.    The Reaction of the Settlement Class to the Fee and Expense Application

91.    The Notice informed Settlement Class Members that Class Counsel would apply for attorneys' fees in the amount of thirty-three percent (33%) of the Settlement Fund, plus reimbursement of expenses up to $100,000.  Angeion Decl. Ex. B, Notice at ¶¶ 5, 64.

92.    To date, no Settlement Class Member has objected to the attorneys' fees requested or the maximum amount of expenses disclosed in the Notice.  Meanwhile, the fee application does not exceed the maximum amount set forth in the Notice, and the expense application is below the $100,000 that Settlement Class Members were notified could be sought.  The deadline for Settlement Class Members to file objections is July 16, 2021.  As discussed above, Lead Counsel will address any objections filed by Settlement Class Members in connection with the Reply Papers.

## VII.　Service Award Request for the Exchange-Based Plaintiffs

93.　Lead Counsel are respectfully requesting a $2,500 service award for each of the four representative plaintiffs: Andrew Abernathey, Jay Abernathey, Guy Abernathey, and Meridian Investments I, LLC, to be paid from the Settlement Fund. To date, no member of the Settlement Class has objected to the amount of the proposed incentive award. *See*, *e.g.*, Angeion Decl. ¶ 17. Notably, the proposed $2,500 incentive award reflects a discount to the $5,000 incentive award per Lead Plaintiff described in the Settlement Notice. *See* Angeion Decl. Ex. B, Notice at ¶¶ 5, 64.

94.　To the best of our knowledge, we believe that the Lead Plaintiffs have consistently contributed time for the benefit of the class. In particular, the Lead Plaintiffs have: (a) communicated with Lead Counsel regarding the posture and progress of the case; (b) compiled their trading data and completed their certifications in connection with their motion to be appointed Lead Plaintiffs; (c) reviewed significant pleadings and other papers filed in this Action; (d) consulted with Lead Counsel regarding the settlement negotiations and mediation; and (e) evaluated and approved the proposed Settlement. *See* Lead Plaintiff Decl. ¶¶ 5-7. The Lead Plaintiffs, in the opinion of Lead Counsel, are deserving of the requested incentive award having worked with Lead Counsel to obtain a terrific result which warrants approval of the requested award.

## VIII.　Additional Exhibits

95.　Annexed hereto as Exhibit I is a compendium of unreported cases, documents, and authorities, in alphabetical order by case name, cited in the accompanying final approval settlement brief and fee brief.

30

## IX.    Conclusion

96.    In view of the recovery to the Settlement Class and the substantial risks of this Action, Lead Counsel respectfully submit that:  the Settlements should be approved as fair, reasonable and adequate; the Plan of Allocation should be approved as fair and reasonable; and the Settlement Class should be certified for settlement purposes.

97.    Plaintiffs' Counsel respectfully seek an award of attorneys' fees in the amount of 33% of the Settlement Fund ($2,062,500) and reimbursement of litigation expenses in the amount of $60,618.84.  We also respectfully request service awards of $2,500 for each of the four Lead Plaintiffs (totaling $10,000) to be paid from the Settlement Fund.

We certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 2, 2021.

Respectfully submitted,

**SUSMAN GODFREY LLP**

*/s/ Barry Barnett*
Barry Barnett
Michael C. Kelso
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
bbarnett@susmangodfrey.com
mkelso@susmangodfrey.com

**KIRBY McINERNEY LLP**

*/s/ Thomas W. Elrod*
Ira M. Press (admitted *pro hac vice*)
Thomas W. Elrod (admitted *pro hac vice*)
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: (212) 371-6600
ipress@kmllp.com
telrod@kmllp.com

*Lead Counsel for Plaintiffs and the*

31

*Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System.

*/s/ Barry Barnett*
Barry Barnett
