# EXHIBIT B



25 January 2021



# Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review

COVID-19-Related Filings Accounted for 10% of Total Filings
Filings Declined, Driven Primarily by Fewer Merger Objections Filed
Even After Excluding "Mega" Settlements, Recent Settlement Values Remained High

By Janeen McIntosh and Svetlana Starykh

Insight in Economics™

## Foreword

I am excited to share NERA's Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review. This year's edition builds on work carried out over many years by members of NERA's Securities and Finance Practice. In this year's report, we continue our analyses of trends in filings and resolutions and present information on new developments, including case filings related to COVID-19. Although space does not permit us to present all the analyses the authors have undertaken while working (remotely!) on this year's edition, we hope you will contact us if you want to learn more about our work in and related to securities litigation. On behalf of NERA's Securities and Finance Practice, I thank you for taking the time to review our work and hope you find it informative.

Dr. David Tabak
Managing Director



# Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review

## COVID-19-Related Filings Accounted for 10% of Total Filings
## Filings Declined, Driven Primarily by Fewer Merger Objections Filed
## Even After Excluding "Mega" Settlements, Recent Settlement Values Remained High

By Janeen McIntosh and Svetlana Starykh[1]

25 January 2021

## Introduction and Summary

There were 326 federal securities class actions filed in 2020, a decline of 22% from 2019.[2] Despite this decline, filings for 2020 remained higher than pre-2017 levels, with the exception of 2001, when numerous IPO laddering cases were filed. In addition to a decline in the aggregate number of new cases filed, there was also a decline within each of the five types of cases we consider, though the decline within each category of cases was not consistent in magnitude. As a result, the percentage of new filings that were Rule 10b-5, Section 11, and/or Section 12 cases increased to 64% in 2020. As in 2019, in 2020, the electronic technology and technology services sector had the most securities class action filings. Of cases filed in 2020, 23% were filed against defendants in this sector, followed closely by defendants in the health technology and services sector, which accounted for 22% of new filings. For the first time in the five years ending December 2020, claims related to accounting issues, regulatory issues, or missed earnings guidance were not the most common allegation included in federal securities class action complaints. Instead, for cases filed in 2020, 35% of complaints included an allegation related to misled future performance. The Second, Third, and Ninth Circuits continue to represent a significant proportion of new cases filed in 2020, accounting for more than three-fourths of filings.

The emergence of the COVID-19 pandemic has led to associated filings. Since March 2020, when the first such lawsuit was filed, there have been 33 cases filed with COVID-19-related claims included in the complaint through December 2020. Nearly 25% of these COVID-19 case filings were against defendants in the health technology and health services sector—the highest for any sector—and 21% were filed against defendants in the finance sector.

In 2020, 320 cases were resolved, marking a slight increase from the total number of cases resolved in 2019, but remaining below the number of cases resolved in 2017 and 2018. Despite 2020 aggregate resolutions falling within the historical range for 2011–2019, both the number of cases settled and the number of cases dismissed reached 10-year record levels—settled cases reaching a record low and dismissed cases reaching a record high.

The average settlement value in 2020 was $44 million, more than a 50% increase over the 2019 average of $28 million but still below the 2018 value. Limiting to settlements under $1 billion, the 2020 average settlement value was $30 million, which is lower than the overall average of $44

million after excluding the American Realty Capital Properties settlement of $1.025 billion. Excluding the American Realty Capital Properties settlement, the median annual settlement value for 2020 was $13 million, the highest recorded median value in the last 10 years.

## Trends in Filings

### Trend in Federal Cases Filed

For the first time since 2016, annual new securities class action filings declined to less than 400 cases.[3] Between 2015 and 2017, new filings grew significantly, by approximately 80%, and remained stable with between 420 and 430 annual filings from 2017 to 2019. There were 326 new case filed in 2020, which, despite the decline, is still higher than the average of 223 observed in the 2010–2015 period. Whether this decline in new filings is the end of the general higher level of filings observed in recent years or a short-term byproduct of the implications of the COVID-19 pandemic is yet to be determined. See Figure 1.

As of October 2020, there were 5,720 companies listed on the NYSE and Nasdaq exchanges.[4] The increase in the number of listed companies in 2020 is a continuation of a general growth trend since 2017. As a result of the decline in the number of new filings and the growth in the number of listed companies in 2020, the ratio of new filings to listed companies declined to 5.7%, the lowest ratio in the last five years. However, this ratio remains higher than the ratios in the first 20 years following the implementation of the PSLRA in 1995.

Figure 1. **Federal Filings and Number of Companies Listed in the United States**
January 1996–December 2020



Note: Listed companies include those listed on the NYSE and Nasdaq. Listings data obtained from World Federation of Exchanges (WFE). The 2020 listings data is as of October 2020.

### Federal Filings by Type

The decline in federal cases differed by type of case with the largest percentage decline observed among the Rule 10b-5 and Section 11 or Section 12 category of cases. Despite differences in the magnitude of change over the past 12 months, collectively and within each individual category, federal filings of securities class action (SCA) suits decreased. New filings of Rule 10b-5 and Section 11 or Section 12 cases in 2020 declined by more than 65% when compared to 2019. Filings of merger objections, other securities class action cases, and Section 11/Section 12 cases each declined by between 25% and 35%, while Rule 10b-5 cases declined by less than 10%. As a result of the relatively low level of decline in Rule 10b-5 cases, the proportion of new filings that were Rule 10b-5, Section 11, and/or Section 12 cases (standard cases) increased from 58% of new filings in 2019 to 64% of new filings in 2020. See Figure 2.

Figure 2. **Federal Filings by Type**
January 2011–December 2020



## Federal Filings by Sector

Over the 2015–2018 period, the largest proportion of SCA suits filed were against defendants in the health technology and services sector. Because of a gradual downward trend in the proportion of cases filed against companies of this sector between 2016 and 2019, and an accompanying growth in the proportion of cases filed against defendants in the electronic technology and technology sector, in 2020, the electronic technology and technology services sector represented the largest proportion of new cases filed. In 2020, 23% of filings were against defendants in this sector, followed closely by defendants in the health technology and services sector, which accounted for 22% of new filings.

The finance sector observed an increase in the proportion of cases filed against defendants in this sector, from 12% in 2019 to 15% in 2020, while defendants in the consumer durables and non-durables sector observed a decline from 10% to 7%. The energy and non-energy minerals, consumer and distribution services, and process industries sectors each accounted for at least 5% of cases filed in 2020. See Figure 3.

Figure 3. **Percentage of Federal Filings by Sector and Year**
Excludes Merger Objections
January 2016–December 2020



Note: This analysis is based on the FactSet Research Systems, Inc. economic sector classification. Some of the FactSet economic sectors are combined for presentation.

## Federal Filings by Circuit

Historically, the Second Circuit—which includes Connecticut, New York, and Vermont—has received the highest number of cases filed. In 2019, we observed a spike in new non-merger-objection filings in the Second Circuit, a pattern that did not persist in 2020. Over the last 12 months, only 69 new cases were filed in the Second Circuit, the lowest level of new cases since 2017. The Third and Ninth Circuits continue to be high-activity jurisdictions for SCA cases, with 25 and 79 cases filed in 2020 in these circuits, respectively. While the number of cases filed in the Second and Third Circuits declined, the Ninth Circuit observed a 41% increase in filings. Taken together, these trends resulted in the Ninth Circuit accounting for the highest proportion of new filings for the first time in the last five years. Combined, the Second, Third, and Ninth Circuits continue to account for a significant proportion of new cases filed, increasing slightly to 79% of all the new non-merger-objection cases filed in 2020. See Figure 4.

Figure 4. **Federal Filings by Circuit and Year**
Excludes Merger Objections
January 2016–December 2020



**Allegations**

Over the past three years, there has been year-to-year variation in the most frequently occurring allegation in shareholder class action suits filed.[5] In 2018, the most common allegation included in complaints was related to accounting issues, with 26% of cases including such a claim. This pattern is consistent with the distributions observed in recent years; claims related to accounting issues remain one of the most common and frequent allegations included in complaints. In 2019, we observed a spike in cases involving allegations of missed earnings guidance, with over 30% of cases involving a related claim. However, the proportion of cases alleging claims related to missed earnings guidance decreased to 23% in 2020. For cases filed in 2020, there emerged a new common allegation; 35% of the complaints included a claim related to misled future performance. This is the first time in the last five years that this allegation has been included in more complaints than those alleging accounting issues, missed earnings guidance, or regulatory issues. Although there was an upward trend in the frequency of cases involving allegations related to merger integration issues between 2016 and 2019, this pattern did not continue in 2020, with this category falling to only 5% of cases from 11% in 2019. See Figure 5.

Figure 5. **Allegations**

Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2016–December 2020



## Recent Developments in Federal Filings[6]

### COVID-19

In March of 2020, the COVID-19 pandemic changed the way individuals work, the way they live, and how companies operate. The pandemic's impact on filings has not yet been fully determined and it will likely take time to evaluate if it was the underlying driver of the lower level of cases filed in 2020. On the other hand, the pandemic brought about a new category of event-driven cases, with the first such case filed in March. Since then, there have been 33 cases filed with claims related to COVID-19 included in the complaint. See Figure 6.

Figure 6. **Number of 2020 COVID-19-Related Federal Filings by Month**
March 2020–December 2020



The distribution of these COVID-19-related cases across sectors reveals a pattern similar to the distribution across total cases filed in 2020. The proportion of filings against defendants in the combined health technology and health services sectors was 24%. Approximately 21% of the COVID-19 cases were filed against defendants in the finance sector and the consumer services and technology services sectors each accounted for approximately 15% of cases. See Figure 7.

Figure 7. **Percentage of 2020 COVID-19-Related Federal Filings by Sector**
March 2020–December 2020



Unlike for the universe of total filings, the top three circuits for most COVID-19 filings were the Ninth, Second, and Eleventh Circuits. Over one-third of the COVID-19-related cases filed were presented in the Ninth Circuit, followed closely by the Second Circuit. See Figure 8.

Figure 8. **Number of 2020 COVID-19-Related Federal Filings by Circuit**



The claims alleged in the complaints for these COVID-19-related filings varied. For example, within the NERA database, we identified three cases filed against defendants in the cruise line industry—namely, Norwegian Cruise Line Holdings, Carnival Corporation, and Royal Caribbean Cruises. The complaint filed against Norwegian Cruise Line Holdings alleges the company made false and/or misleading statements and/or failed to disclose that it was providing customers with false statements about COVID-19 to entice them to purchase cruises. The Carnival Corporation lawsuit alleged that the company's misstatements concealed the increasing presence of COVID-19 on the company's ships. In the complaint against Royal Caribbean Cruises, plaintiffs allege there was a failure to disclose material facts related to the company's decrease in bookings outside of China.

In addition to tracking COVID-19-related filings, we have also monitored federal securities class action filings in a number of recent development areas. See Figure 9 for a summary of filings in these areas for 2019 and 2020.

Figure 9. **Event-Driven and Other Special Cases by Filing Year**
January 2019–December 2020



### Bribery/Kickbacks

Securities class action suits related to claims of bribery have remained fairly stable over the 2019–2020 period, with six such cases filed in 2019 and five filed in 2020. Of the 11 cases filed in the last two years, all remain pending as of December 2020. These cases span a range of sectors, with the electronic technology and technology services sector accounting for the highest proportion. In addition, cases filed with claims related to kickbacks are still being brought to the courts, with one case filed in both 2019 and 2020. Both of these cases include claims related to regulatory issues.

### Cannabis

In last year's report, we identified filings against companies in the cannabis industry as a development area. In 2020, filings within this industry have continued with six new cases. The allegations included in these recent complaints were related to accounting issues, misled future performance, and missed earnings guidance. The majority of cases continue to be presented in the Second Circuit and all defendants but one are in the process industries sector.

**Cybersecurity Breach Cases**

In 2020, like 2019, there were three new filings related to a cybersecurity breach. The Ninth Circuit continues to be a common venue for these cases. Among the six cases filed between 2019 and 2020, four have included allegations related to missed earnings guidance or misleading future performance, with only one case alleging regulatory issues.

**Environment-Related**

Similar to bribery-related cases, filings pertaining to environment-related claims have continued to be presented at a steady pace, with five cases filed in 2020 and four cases filed in 2019. Four of the nine cases recently filed include allegations related to regulatory issues and five were filed in the Second and Ninth Circuits.

**#MeToo**

Following the surge of #MeToo cases filed in 2018, only two such cases have been filed in the last year. Both cases were filed in the second half of 2020.

**Opioid Crisis**

Only two cases related to the opioid crisis have been filed since 2018, both of which were filed in the Third Circuit and include allegations related to accounting and regulatory issues.

**Money Laundering**

Cases with claims of money laundering also continue to be filed, with three such cases filed in both 2019 and 2020. All six of these cases included an allegation related to regulatory issues.

## Trend in Resolutions

**Number of Cases Settled or Dismissed**

Following a decline in the total number of cases resolved in 2019, resolutions rose in 2020, returning to a level relatively in line with 2017 and 2018. In 2020, 247 cases were resolved in favor of the defendant and 73 cases were settled, for a total of 320 resolutions for the year. This represents an increase of approximately 4% in resolved suits over the 309 cases resolved in 2019.

Despite the aggregate increase in resolutions, the trend observed in dismissals and settlements differed. While there was a decline of 25% in the number of settled cases, there was an increase in the number of dismissed cases.[7] The number of cases settled in 2020 is the lowest recorded number of settled cases in the most recent 10-year period and is more than 40% lower than the average number of settled cases (122) observed between 2016 and 2018. At this time, there is insufficient evidence to determine whether this lower number of settlements is connected to COVID-19-related factors. The increase in the number of dismissed cases was sufficient to not only offset the decrease in settlements but also to increase the overall number of resolved cases. The number of cases dismissed in 2020 also set a new 10-year record with approximately 6% more cases dismissed than in 2018, the second highest year in the period.

Starting in 2015, there has been a gradual decline in the proportion of cases that were closed due to settling. Of the cases resolved in 2014, 58% were settled. In each subsequent year, this proportion has declined, falling to 44% for cases resolved in 2017. For cases resolved in 2020, the

proportion of resolved cases that were settled is the lowest in recent history, with less than 25% of the cases settling. It is not surprising the proportion declined to a new low given the decrease in the number of cases settled combined with the increase in dismissals that occurred in 2020. See Figure 10.

Although 2020 was a record-setting low year for total settled cases, the magnitude of the decrease in settled cases differed for standard cases and merger-objection cases. Settled non-merger-objection cases decreased by less than 15%, falling to 70 cases, though still within the historical 10-year range. On the other hand, settled merger-objection cases declined by more than 80% to merely three cases, which is substantially lower than the number of such cases settled in any single year in the last 10 years.

There was a 26% increase in dismissals of standard cases and a 9% increase in dismissals of merger-objection cases. For non-merger-objection and for merger-objection cases, the increase in dismissals was enough to establish 2020 as the year with the highest number of dismissals within each category in recent years.

Figure 10. **Number of Resolved Cases: Dismissed or Settled**
January 2011–December 2020



### Case Status by Filing Year

A review of the current status of securities class action suits filed after 2014 reveals that within each filing year a greater proportion of cases have been dismissed than have been settled. For cases filed between 2015 and 2017, dismissal rates range from 44% to 49% each year while settlement rates range from 22% to 35%. The difference in current case outcome is even more stark for cases filed in 2018 and 2019. Of the cases filed in 2018, as of December 2020, 35% were resolved in favor of the defendant, 11% were settled, and 53% remained pending. For cases filed in 2019, only 1% were resolved for positive payment, while 27% were dismissed, and 72% were still unresolved. However, the current resolution distribution of cases may not necessarily be an indication of the final outcome for all resolved cases as historical evidence indicates that a larger proportion of the pending cases will result in a positive settlement because settlements typically occur in the latter phases of litigation, whereas motions for summary judgment or dismissal typically occur in the earlier stages. See Figure 11.

Figure 11. **Status of Cases as Percentage of Federal Filings by Filing Year**
Excludes Merger Objections and Verdicts
January 2011–December 2020



Note: Dismissals may include dismissals without prejudice and dismissals under appeal.

### Time From First Complaint Filing to Resolution

A review of the cases filed between 1 January 2002 and 31 December 2016 reveals that a significant proportion of cases are resolved in under four years.[8] Looking at the time from the filing of the first complaint through the resolution of the case, whether a dismissal or a settlement, shows that more than 80% of suits are resolved within four years, and 65% within the first three years. The most common resolution periods in the data are between one and two years (28% of cases) and between two and three years (23% of cases). Within the first year of filing, 14% of cases are resolved. See Figure 12.

Figure 12. **Time from First Complaint Filing to Resolution**
Cases Filed January 2002–December 2020 and Resolved January 2002–December 2020



## Trend in Settlement Values

### Average and Median Settlement Value

To analyze recent trends in settlement values, we calculate and evaluate settlements using multiple alternative measures.[9] First, we evaluate trends by reviewing the annual average settlement value for non-merger-objection cases with positive settlement values. Given that these average settlement values may be impacted by a few high "outlier" settlements, we also review the median settlement value and average settlement for cases under $1 billion, again on an annual basis.

The average settlement value in 2020 was $44 million for non-merger objection cases with settlements of more than $0 to the class. This is a more than 50% increase over the 2019 inflation-adjusted average of $29 million but still below the 2018 inflation-adjusted average of $73 million. Historically, the average settlement value has shown year-to-year variation partly due to the presence or absence of one or two "outlier" settlements. Between 2011 and 2020, the annual inflation-adjusted average settlement value has ranged from a low of $26 million in 2017 to a high of $95 million in 2013. As such, the 2020 average is well within the range observed within the last 10 years. See Figure 13.

Figure 13. **Average Settlement Value**
Excludes Merger Objections and Settlements for $0 to the Class
January 2011–December 2020



The second measure of trends in settlement values evaluated is the annual average settlement excluding merger objections, settlements for $0 to the class, and individual cases with settlements of $1 billion or greater. Given the infrequency of cases with settlements of $1 billion or greater and the impact these "outlier" settlements can have on the annual averages, this second measure seeks to evaluate the general trend in settlements absent these cases. For example, for 2020 settlements, this measure evaluates the settlement values excluding the American Realty Capital Properties

settlement of $1.025 billion. Figure 14 illustrates that once these cases are removed, the annual average settlement values have been stable in recent years, ranging from $26 million to $31 million within the last four years. Though the 2020 average settlement value of $30 million is 3% higher than the 2019 average, it is still substantially lower than the average values for cases settled for under $1 billion in 2015 and 2016, which are $58 million and $49 million respectively.

Figure 14. **Average Settlement Value**
Excludes Settlements over $1 Billion, Merger Objections, and Settlements for $0 to the Class
January 2011–December 2020



The median annual settlement value for 2020 was $13 million, the highest recorded median value in the last 10 years (the median settlement value for cases settled in 2018 was also $13 million). Though the median settlement value for 2020 is less than 10% higher than the inflation-adjusted median in 2019, the 2020 value is nearly twice the inflation-adjusted median settlement value for cases settled in 2017. The general increasing trend in annual median settlement values indicates an upward shift in individual settlement values. In other words, a higher proportion of cases has settled for higher values in the last three years when compared to settlements that occurred in 2017 or before. See Figure 15.

Figure 15. **Median Settlement Value**
Excludes Settlements over $1 Billion, Merger Objections, and Settlements for $0 to the Class
January 2011–December 2020



An evaluation of the change in the distribution of settlement values over the past five years further supports this notion. There has been a downward trend in the proportion of cases with individual settlements less than $10 million and a corresponding increase in the proportion of cases found in the higher settlement ranges. More specifically, in 2017, 61% of cases resolving for positive payment had settlement values of less than $10 million compared to 44% of 2020 cases settled within this category. Similarly, 24% of 2017 settled cases had settlement values between $10 million and $50 million while 40% of the 2020 settled cases had individual settlements within this range. This pattern of a greater proportion of settled cases within the $10–$50 million range in the last three years aligns with the higher annual median settlement values observed in these years.

### Top Settlements for 2020

Table 1 summarizes the 10 largest securities class action settlements in 2020. Between 1 January 2020 and 31 December 2020, there was one "mega" settlement—an individual case with a settlement for $1 billion or greater—for a suit against American Realty Capital Properties. This case involved allegations related to accounting issues, including claims that the defendants made materially false and misleading statements. All 10 of the top settlements were reached between January and July of 2020 and accounted for 75% of the total settlements reached in 2020.

The economic sectors of defendants associated with the top 10 settlements varied, with the commercial services and utilities sectors having the highest frequency, with two cases in each category. Eight of the top 10 settlements were cases filed in the Second, Ninth, and Eleventh Circuits. The average and most frequent length of time between first complaint filing and settlement for the top 10 settlements in 2020 was five years and three years, respectively.

Table 1. **Top 10 2020 Securities Class Action Settlements**

| Rank | Defendant | Filing Date | Settlement Date | Total Settlement Value ($Million) | Plaintiffs' Attorneys' Fees and Expenses ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|
| 1 | American Realty Capital Properties Inc.* | 30 Oct 14 | 22 Jan 20 | $1,025.0 | $105.2 | 2nd | Finance |
| 2 | First Solar, Inc. | 15 Mar 12 | 30 Jun 20 | $350.0 | $72.5 | 9th | Electronic Technology |
| 3 | Signet Jewelers Limited | 25 Aug 16 | 21 Jul 20 | $240.0 | $63.1 | 2nd | Retail Trade |
| 4 | SCANA Corporation | 27 Sep 17 | 17 Jun 20 | $192.5 | $28.2 | 4th | Utilities |
| 5 | Equifax Inc. | 8 Sep 17 | 26 Jun 20 | $149.0 | $30.8 | 11th | Consumer Services |
| 6 | SunEdison, Inc. | 4 Apr 16 | 25 Feb 20 | $139.6 | $29.7 | 2nd | Utilities |
| 7 | SeaWorld Entertainment, Inc. | 9 Sep 14 | 22 Jul 20 | $65.0 | $16.4 | 9th | Consumer Services |
| 8 | Community Health Systems, Inc. | 9 May 11 | 19 Jun 20 | $53.0 | $6.3 | 6th | Health Services |
| 9 | HD Supply Holdings, Inc. | 10 Jul 17 | 21 Jul 20 | $50.0 | $15.3 | 11th | Distribution Services |
| 10 | FleetCor Technologies, Inc. | 14 Jun 17 | 14 Apr 20 | $50.0 | $13.0 | 11th | Commercial Services |
| | **Total** | | | **$2,314.1** | **$380.4** | | |

*Note: Now called VEREIT, Inc.

Despite the presence of one "mega" settlement for $1.025 billion in 2020, the top 10 settlements since the passage of PLSRA remains unchanged. This list last changed in 2018 due to the Petrobras settlement of $3 billion and includes settlements ranging from $1.1 billion to $7.2 billion. See Table 2.

Unlike the 2020 top 10 settlements, the all-time top 10 settlements are more concentrated in specific circuits, with six of the 10 cases in the Second Circuit. The most common economic sector of defendants associated with the top settlements was finance. While there are a few common economic sectors in the top 2020 and all-time lists, some of the economic sectors represented in the 2020 top 10 list are not included in the all-time list, such as utilities and commercial services.

Table 2. **Top 10 Federal Securities Class Action Settlements**
　　　　As of 31 December 2020

| Rank | Defendant | Filing Date | Settlement Year(s) | Codefendant Settlements | | | | Circuit | Economic Sector |
| | | | | Total Settlement Value ($Million) | Financial Institutions Value ($Million) | Accounting Firm Value ($Million) | Plaintiffs' Attorneys' Fees and Expenses ($Million) | | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | ENRON Corp. | 22 Oct 01 | 2003–2010 | $7,242 | $6,903 | $73 | $798 | 5th | Industrial Services |
| 2 | WorldCom, Inc. | 30 Apr 02 | 2004–2005 | $6,196 | $6,004 | $103 | $530 | 2nd | Communications |
| 3 | Cendant Corp. | 16 Apr 98 | 2000 | $3,692 | $342 | $467 | $324 | 3rd | Finance |
| 4 | Tyco International, Ltd. | 23 Aug 02 | 2007 | $3,200 | No codefendant | $225 | $493 | 1st | Producer Mfg. |
| 5 | Petroleo Brasileiro S.A. - Petrobras | 8 Dec 14 | 2018 | $3,000 | $0 | $50 | $205 | 2nd | Energy Minerals |
| 6 | AOL Time Warner Inc. | 18 Jul 02 | 2006 | $2,650 | No codefendant | $100 | $151 | 2nd | Consumer Services |
| 7 | Bank of America Corp. | 21 Jan 09 | 2013 | $2,425 | No codefendant | No codefendant | $177 | 2nd | Finance |
| 8 | Household International, Inc. | 19 Aug 02 | 2006–2016 | $1,577 | Dismissed | Dismissed | $427 | 7th | Finance |
| 9 | Nortel Networks | 2 Mar 01 | 2006 | $1,143 | No codefendant | $0 | $94 | 2nd | Electronic Technology |
| 10 | Royal Ahold, NV | 25 Feb 03 | 2006 | $1,100 | $0 | $0 | $170 | 2nd | Retail Trade |
| | **Total** | | | **$32,224** | **$13,249** | **$1,017** | **$3,368** | | |

## NERA-Defined Investor Losses

As a proxy to measure the aggregate loss to investors from the purchase of a defendant's stock during the alleged class period, NERA relies on its own proprietary variable, NERA-Defined Investor Losses.[10] This measure of the aggregate amount lost by investors is estimated using publicly available data and is calculated assuming an investor had alternatively purchased stocks that performed similarly to the S&P 500 index during the class period. NERA has reviewed and examined more than 1,000 settlements and found that this proprietary variable is the most powerful predictor of settlement amount. Although losses are highly correlated with settlement values, we have found that settlements do not increase one for one with losses but rather at a slower rate.

For cases settled between 2012 and 2020, the ratio of settlement to Investor Losses is higher for cases with lower settlement values than for cases with higher settlement values. In other words, smaller cases (measured based on the computed Investor Losses) commonly settle for a larger fraction of the estimated Investor Losses than larger cases, though the decline is not linear. In fact, the most dramatic decline occurs between cases with Investor Losses of less than $20 million and cases with Investor Losses of between $20 million and $50 million.  More specifically, the median ratio of settlement value to NERA-defined Investor Losses was 24.5% for cases with Investor Losses below $20 million and 5.2% for cases with Investor Losses between $20 million and $50 million. For cases with Investor Losses between $1 billion and $5 billion, the median ratio was 1.2%, and falls below 1% for cases with Investor Losses of $5 billion and higher.

### Median Investor Losses and Median Ratio of Actual Settlements to Investor Losses

Following a spike in the median Investor Losses in 2013, the median Investor Losses showed only minor year-to-year fluctuations through 2019. In 2020, the median Investor Losses rose dramatically, reaching a record-setting high of $805 million. This median is nearly 70% higher than the median value for 2019 of $478 million and 7% higher than the 2013 median value of $750 million. For all years between 2017 and 2019, the median ratio of settlement to Investor Losses was above 2%, a higher ratio than was observed in any of the prior five years. Despite the increase in settlement values in 2020, the increase in Investor Losses led to a decline in the median ratio of settlement to Investor Losses. For 2020, the median ratio of settlement to Investor Losses was 1.7%, one of the lowest ratios observed in the last nine years. See Figure 16.

Figure 16. **Median NERA-Defined Investor Losses and Median Ratio of Settlement to Investor Losses by Settlement Year**
January 2012–December 2020



**Predicted Settlement Model**

In addition to Investor Losses, NERA identified several other key factors that drive settlement amounts. These factors, when combined with Investor Losses, account for a substantial fraction of the variation observed in actual settlements in our database.

Using the measure of Investor Losses as discussed above in the predicted model, some of the factors that influence settlement values are:

- NERA-Defined Investor Losses (a proxy for the size of the case);
- The market capitalization of the issuer immediately after the end of the class period;
- The types of securities, in addition to common stock, alleged to have been affected by the fraud;
- Variables that serve as a proxy for the merit of plaintiffs' allegations (such as whether the company has already been sanctioned by a governmental or regulatory agency or paid a fine in connection with the allegations);
- The stage of the litigation at the time of settlement; and
- Whether an institution or public pension fund is lead or named plaintiff.

These factors account for a substantial amount of the variation in settlement amounts for the sample of cases in our model with a settlement date between December 2011 and June 2020. In addition, as evidenced in Figure 17, there is significant correlation between the median predicted settlement and actual settlement values for the more than 375 cases in our current model.

Figure 17. **Predicted vs. Actual Settlements**
Investor Losses Using S&P 500 Index



## Trends in Plaintiffs' Attorneys' Fees and Expenses

In addition to tracking settlements to plaintiffs, NERA's SCA database also tracks the compensation to plaintiffs' attorneys working on these suits.[11] Plaintiffs' attorneys are commonly compensated for their work related to a lawsuit, specifically in fees, as part of a settlement, if one is reached. This compensation is often determined as a fixed percentage of the settlement amount. Additionally, plaintiffs' attorneys also typically receive reimbursement out of the settlement for any out-of-pocket costs incurred in relation to work performed in connection with the case.

Over the 10-year period ending 31 December 2020, the annual aggregate amount of plaintiffs' attorneys' fees and expenses has varied significantly, ranging from a low of $467 million in 2017 to a high of $1,552 million in 2016. In 2020, the aggregate plaintiffs' attorneys' fees and expenses was $613 million, an approximate 6% increase over the 2019 amount but still below the 2018 amount of $1,202 million. This increase in 2020 was driven by the presence of the American Realty Capital Properties settlement, which accounted for $105 million of the aggregate fees and expenses for the year. Given that plaintiffs' attorneys' compensation is a function of settlement amount, the presence of "mega" settlements— settlements of $1 billion or higher—will result in higher aggregate fees and expenses than settlements for lower values. Although there was an increase in 2020 in the aggregate fees and expenses associated with settlements of $1 billion or higher, there was a decrease in the aggregate fees and expenses related to settlements under $500 million. The increase in the higher settlement range was sufficient to more than offset the decrease in the lower settlement ranges, resulting in an overall increase in aggregate fees and expenses for settlements in 2020. See Figure 18.

Figure 18. **Aggregate Plaintiffs' Attorneys' Fees and Expenses by Settlement Size**
January 2011–December 2020



Figure 19 examines the median of plaintiffs' attorneys' fees and expenses as a percentage of settlement value for cases settled between 1996 and 2010 and between 2011 and 2020. As indicated in the chart, plaintiffs' attorneys' fees and expenses represent a declining percentage of settlement value as settlement size increases. This pattern is consistent in settlements reached in the last 10 years and settlements reached between 1996 and 2010. More specifically, for settlements of $5 million and less, attorneys' fees and expenses represent 35% and 34% of the settlement amount for the 1996–2010 and 2011–2020 periods, respectively. In both periods, median plaintiffs' attorneys' fees and expenses as a percentage of settlement size is approximately 24% for settlements between $100 million and $500 million. As settlement size increases to $1 billion or greater, the percentage associated with attorneys' fees and expenses falls to 11% for settlements in the 2011–2020 period and 8% for settlements reached during the 1996–2010 period.

Figure 19. **Median of Plaintiffs' Attorneys' Fees and Expenses by Size of Settlement**
Excludes Merger Objections and Settlements for $0 to the Class



## Conclusion

In 2020, there was a decline in total federal filings, resulting from a decrease within each of the five types of case categories we examine. Of these newly filed cases, the percentage that were Rule 10b-5, Section 11, and/or Section 12 increased to 64%, one of the highest proportions in recent years. The electronic technology and technology services sector represented the largest proportion of 2020 new securities class action filings and misled future performance was the most common allegation included in complaints. The Second, Third, and Ninth Circuits continue to account for a substantial proportion of new cases filed, representing more than 75% of the 2020 filings.

Since our 2019 report, the COVID-19 pandemic developed, impacting business operations, performance, revenue, and outlook. In March, the first securities class action lawsuit related to COVID-19 was filed, and another 32 COVID-19-related suits were filed through 31 December 2020. At this time, the pandemic's impact on securities class action litigation has not yet been fully determined and it will likely take months before it is fully revealed.

Between 1 January 2020 and 31 December 2020, 320 cases were resolved, a slight increase from the total number of cases resolved in 2019. Although this number of resolutions is well within the historical range for 2011–2019, the number of settled cases hit a record low while the number of dismissed cases reached a record high for the 10-year period.

For the non-merger-objection cases settled for positive values in 2020, the average settlement value was $44 million. This average value was more than 50% higher than the 2019 average of $28 million. Excluding settlements of $1 billion and higher, the 2020 average settlement value was $30 million, which is within $1 million of the average values in 2018 and 2019. The median annual settlement value for 2020 was $13 million, tying with 2018 for the highest recorded median value in the last 10 years.

## Notes

1  This edition of NERA's report on Recent Trends in Securities Class Action Litigation expands on previous work by our colleagues Lucy P. Allen, Dr. Vinita Juneja, Dr. Denise Neumann Martin, Dr. Jordan Milev, Robert Patton, Dr. Stephanie Plancich, and others. The authors thank Dr. David Tabak for helpful comments on this edition. We thank Zhenyu Wang and other researchers in NERA's Securities and Finance Practice for their valuable assistance. These individuals receive credit for improving this report; any errors and omissions are those of the authors. NERA'S proprietary securities class action database and all analyses reflected in this report are limited to federal case filings and resolutions.

2  Data for this report were collected from multiple sources, including Institutional Shareholder Services, complaints, case dockets, Dow Jones Factiva, Bloomberg Finance, FactSet Research Systems, Nasdaq, Intercontinental Exchange, US Securities and Exchange Commission (SEC) filings, and public press reports.

3  NERA tracks class actions involving securities that have been filed in federal courts. Most of these cases allege violations of federal securities laws; others allege violations of common law, including breach of fiduciary duty, as with some merger-objection cases; still others are filed in federal court under foreign or state law. If multiple actions are filed against the same defendant, are related to the same allegations, and are in the same circuit, we treat them as a single filing. However, the first two actions filed in different circuits are treated as separate filings. If cases filed in different circuits are consolidated, we revise our count to reflect the consolidation. Therefore, case counts for a particular year may change over time. Different assumptions for consolidating filings would probably lead to counts that are directionally similar but may, in certain circumstances, lead observers to draw a different conclusion about short-term trends in filings.

4  Due to a recent revision to the methodology used to gather data on the number of listed companies on the NYSE and Nasdaq, the historical counts may differ from the counts presented in prior reports.

5  Most securities class actions complaints include multiple allegations. For this analysis, all allegations from the complaint are included, and as such, the total number of allegations exceeds the total number of filings.

6  It is important to note that due to the small number of cases in some of these categories, the findings summarized here may be driven by one or two cases.

7  Here the word "dismissed" is used as shorthand for all cases resolved without settlement; it includes cases where a motion to dismiss was granted (and not appealed or appealed unsuccessfully), voluntary dismissals, cases terminated by a successful motion for summary judgment, or an unsuccessful motion for class certification.

8  Analyses in this section exclude IPO laddering cases and merger-objection cases.

9  Unless otherwise noted, tentative settlements (those yet to receive court approval) and partial settlements (those covering some but not all non-dismissed defendants) are not included in our settlement statistics. We define "settlement year" as the year of the first court hearing related to the fairness of the entire settlement or the last partial settlement. Analyses in this section exclude merger-objection cases and cases that settle with no cash payment to the class. All charts and statistics reporting inflation-adjusted values are estimated as of November 2020.

10  NERA-Defined Investor Losses is only calculable for cases involving allegations of damages to common stock over a defined class period. As such, we have not calculated this metric for cases such as merger objections.

11  Analyses in this section exclude merger-objection cases and cases that settle with no cash payment to the class.

## About NERA

NERA Economic Consulting (**www.nera.com**) is a global firm of experts dedicated to applying economic, finance, and quantitative principles to complex business and legal challenges. For over half a century, NERA's economists have been creating strategies, studies, reports, expert testimony, and policy recommendations for government authorities and the world's leading law firms and corporations. We bring academic rigor, objectivity, and real-world industry experience to bear on issues arising from competition, regulation, public policy, strategy, finance, and litigation.

NERA's clients value our ability to apply and communicate state-of-the-art approaches clearly and convincingly, our commitment to deliver unbiased findings, and our reputation for quality and independence. Our clients rely on the integrity and skills of our unparalleled team of economists and other experts backed by the resources and reliability of one of the world's largest economic consultancies. With its main office in New York City, NERA serves clients from more than 25 offices across North America, Europe, and Asia Pacific.

## Contacts

For further information, please contact:



**Janeen McIntosh**
Senior Consultant
New York City: +1 212 345 1375
janeen.mcintosh@nera.com



**Svetlana Starykh**
Senior Consultant
White Plains, NY: +1 914 448 4123
svetlana.starykh@nera.com



*The opinions expressed herein do not necessarily represent the views of NERA Economic Consulting or any other NERA consultant.*



To receive publications, news, and insights from NERA, please visit **www.nera.com/subscribe**.





Visit **www.nera.com** to learn more about our practice areas and global offices.

© Copyright 2021
National Economic Research Associates, Inc.

All rights reserved.
Printed in the USA.